

**SOP / ALL**
**Transmittal Number: 24690347**
**Date Processed: 03/30/2022**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Bruce Buttaro; Hm Office Lgl SOP Paralegal<br>Liberty Mutual Insurance Company<br>175 Berkeley St<br>Boston, MA 02116-5066 |

| | |
|---|---|
| **Entity:** | Ironshore Specialty Insurance Company<br>Entity ID Number  2720000 |
| **Entity Served:** | Ironshore Specialty Insurance Company |
| **Title of Action:** | Bell Canyon Association, Inc. vs. Ironshore Specialty Insurance Company |
| **Matter Name/ID:** | Bell Canyon Association, Inc. vs. Ironshore Specialty Insurance Company (12143247) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Ventura County Superior Court, CA |
| **Case/Reference No:** | 56-2022-00563049-CU-IC-VTA |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 03/29/2022 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Roxborough, Pomerance, Nye & Adreani LLP<br>818-788-7007 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**Electronically**
# FILED
by Superior Court of California
County of Ventura
**02/08/2022**
Brenda L. McCormick
Executive Officer and Clerk

Mariana Suazo
Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

IRONSHORE SPECIALTY INSURANCE COMPANY; and DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

BELL CANYON ASSOCIATION, INC., a California nonprofit corporation

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Ventura County Superior Court<br><br>800 South Victoria Avenue<br>Ventura, CA 93009 | CASE NUMBER:<br>*(Número del Caso):*<br>56-2022-00563049-CU-IC-VTA |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Drew E. Pomerance, Roxborough, Pomerance, et.al., 5900 Canoga Ave., Ste. 450, Woodland Hills, CA 91367

DATE: **02/08/2022** Brenda L. McCormick Clerk, by _____ Mariana Suazo , Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* IRONSHORE SPECIALTY INSURANCE COMPANY

   under: [X] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Drew E. Pomerance (SBN 101239), Vincent S. Gannuscio (SBN 207396)
Roxborough, Pomerance, Nye & Adreani, LLP
5900 Canoga Avenue, Suite 450
Woodland Hills, CA 91367
TELEPHONE NO.: (818) 992-9999   FAX NO.: (818) 992-9991
ATTORNEY FOR *(Name):* Bell Canyon Association, Inc.

**Electronically FILED**
by Superior Court of California
County of Ventura
**02/08/2022**
Brenda L. McCormick
Executive Officer and Clerk
*M Suazo*
Mariana Suazo
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Ventura
STREET ADDRESS: 800 South Victoria Avenue
MAILING ADDRESS: Same
CITY AND ZIP CODE: Ventura, CA 93009
BRANCH NAME: Ventura Hall of Justice

CASE NAME:
Bell Canyon Association, Inc. vs. Ironshore Specialty Insurance Co.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ✓ Unlimited (Amount demanded exceeds $25,000) | Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 56-2022-00563049-CU-IC-VTA |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
✓ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ✓ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✓ monetary   b. ✓ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* Two (2)
5. This case ☐ is ✓ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: February 8, 2022
Drew E. Pomerance
_____
(TYPE OR PRINT NAME)

*Drew C. Pomerance*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 *www.courtinfo.ca.gov* |
|---|---|---|

OUTDATED

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF VENTURA

**800 South Victoria Avenue**
**Ventura , CA 93009**
**(805) 289-8525**
WWW.VENTURA.COURTS.CA.GOV

## NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

Case Number: 56-2022-00563049-CU-IC-VTA

Your case has been assigned for all purposes to the judicial officer indicated below.
**A copy of this Notice of Case Assignment and Mandatory Appearance shall be served by the filing party on all named Defendants/Respondents with the Complaint or Petition, and with any Cross-Complaint or Complaint in Intervention that names a new party to the underlying action.**

| ASSIGNED JUDICIAL OFFICER | COURT  LOCATION | DEPT/ROOM |
|---|---|---|
| Hon. Henry Walsh | Ventura | 42 |
| **HEARING** | | |

| EVENT DATE | EVENT TIME | EVENT DEPT/ROOM |
|---|---|---|
| | | |

## SCHEDULING INFORMATION

**Judicial Scheduling Information**
   **APPEARANCE AT THE ABOVE HEARING IS MANDATORY.**
   **Each party must file a Case Management Statement no later than 15 calendar days prior to the hearing and serve it on all parties.  If your Case Management Statement is untimely, it may NOT be considered by the court (CRC 3.725).**
   **If proof of service and/or request for entry of default have not been filed:  At the above hearing you are ordered to show cause why you should not be compelled to pay sanctions and/or why your case should not be dismissed  (CCP 177.5, Local Rule 3.17).**

**Advance Jury Fee Requirement**
   At least one party demanding a jury trial on each side of a civil case must pay a non-refundable jury fee of $150. The non-refundable jury fee must be paid timely pursuant to Code of Civil Procedure section 631.

**Noticed Motions/Ex Parte Matters**
   To set an ex parte hearing, contact the judicial secretary in the assigned department.  Contact the clerk's office to reserve a date for a law and motion matter.

**Telephonic Appearance**
   Telephonic appearance at the Case Management Conference is permitted pursuant to CRC 3.670.  In addition, see Local Rule 7.01 regarding notice to the teleconference provider.  The court, through the teleconference provider, will contact all parties and counsel prior to the hearing.

Date:  03/04/2022

Clerk of the Court,
By: *MSuazo*
Mariana Suazo, Clerk

VEN-FNR082

**NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE**

**Electronically FILED**
by Superior Court of California
County of Ventura
**02/08/2022**
Brenda L. McCormick
Executive Officer and Clerk

*M Suazo*
Mariana Suazo
Deputy Clerk

1  Drew E. Pomerance, State Bar No. 101239
   Vincent S. Gannuscio,  State Bar No. 207396
2  **ROXBOROUGH, POMERANCE, NYE & ADREANI LLP**
   5900 Canoga Avenue, Suite 450
3  Woodland Hills, California 91367
   Telephone:  (818) 992-9999
4  Facsimile:  (818) 992-9991

5  Attorneys for Plaintiff,
   Bell Canyon Association, Inc

6

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                        **COUNTY OF VENTURA**

9

10  BELL CANYON ASSOCIATION, INC., a          Case No. 56-2022-00563049-CU-IC-VTA
    California nonprofit corporation,
11
                          Plaintiffs,          **COMPLAINT FOR:**
12                                             **(1) BREACH OF CONTRACT**
    vs.                                        **(2) DECLARATORY RELIEF**
13
    IRONSHORE SPECIALTY INSURANCE
14  COMPANY; and DOES 1 through 50,
    inclusive,
15                                             **DEMAND FOR JURY TRIAL**
                          Defendants.
16

17

18

19        PLAINTIFF, BELL CANYON ASSOCIATION, INC. (hereafter "BCA"), hereby alleges

20  against IRONSHORE SPECIALTY INSURANCE COMPANY (hereinafter "IRONSHORE") and

21  DOES 1 through 50, inclusive (collectively, hereafter "Defendants"), as follows:

22                                    **THE PARTIES**

23        1.    Plaintiff BELL CANYON ASSOCIATION, INC. ("BCA") is incorporated as a

24  common interest development association pursuant to the Davis-Stirling Common Interest

25  Development Act, *Cal. Civ. Code §4000 et seq*, with its principal place of business in Bell

26  Canyon, Ventura County.   At all relevant times, Plaintiff has overseen the development,

27  maintenance, preservation, and architectural control of the Bell Canyon development in Bell

28  Canyon, CA.

                                        - 1 -
                                     **COMPLAINT**

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

2.    Defendant IRONSHORE SPECIALTY INSURANCE COMPANY is a corporation formed under the laws of the State of Arizona.  At all relevant times, IRONSHORE has been doing business in the State of California and within this judicial district as a liability insurer.

3.    Plaintiff is ignorant of the true names and capacities of defendants sued as DOES 1 through 50, inclusive, and therefore sues those defendants by fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believe, and thereon allege, that each of these fictitiously-named defendants is legally responsible in some manner for the actions herein alleged, and that Plaintiffs' damages were proximately caused by their conduct.

4.    At all relevant times, Defendants, and each of them, acted as the agent of every other Defendant, and in doing the things herein alleged were acting within the course and scope of their authority.

## GENERAL ALLEGATIONS

5.    On or about February 1, 2018 BCA obtained a policy of Directors and Officers ("D&O") insurance through IRONSHORE, Policy No. PRO0073838, with dates of coverage February 1, 2018-February 1, 2019 (hereinafter the "POLICY").  BCA paid all premiums due and otherwise fully performed all conditions required of it under the POLICY.  A true and correct copy of the policy is attached hereto as Exhibit "A".

6.    Section I of the POLICY contains the following insuring agreement:

A. The Insurer shall pay on behalf of an Insured Person all Loss which the Insured Person shall be legally obligated to pay as a result of a Claim (including an Employment Practices Claim) first made against the Insured Person during the Policy Period or the Discovery Period for a Wrongful Act, and reported to the Insurer pursuant to Section VII, except for any Loss which the Not-For-Profit Entity actually pays as indemnification.

B. The Insurer shall pay on behalf of the Not-For-Profit Entity all Loss which the Not-For-Profit Entity shall be legally obligated to pay as a result of a Claim (including an Employment Practices Claim) first made against an Insured Person during the Policy Period or the Discovery Period for a Wrongful Act, and reported to the Insurer pursuant to Section VII, but only to the extent the Not-For-Profit Entity is required or permitted by law, to the fullest extent possible, to indemnify the Insured Person.

C. The Insurer shall pay on behalf of the Not-For-Profit Entity all Loss which the Not-For-Profit Entity shall be legally obligated to pay as a result of a Claim (including an Employment Practices Claim) first made against the Not-For-Profit Entity during the Policy Period or the Discovery Period for a Wrongful Act, and reported to the Insurer pursuant to Section VII.

7.     Plaintiff BCA is the Not-For-Profit Entity identified in the above insuring clause. Various BCA Board and Architectural committee members are "Insured Persons" within the meaning of the POLICY's insuring clause.

8.     IRONSHORE inserted into the POLICY a Special Endorsement, titled "SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT OR ACT EXCLUSION" (hereinafter the "ENDORSEMENT") which purports to exclude from coverage matters arising from certain enumerated pre-existing claims against BCA (each identified in the ENDORSEMENT as an "Event) . Specifically, the endorsement states that it excludes coverage for any "Claim arising from an Event; or any Claim alleging the same Wrongful Act or related Wrongful Acts, or any fact, circumstance, or situation in any way relating to any Event." A true and correct copy of the ENDORSEMENT is attached hereto as Exhibit "B".

9.     One of the enumerated Events is a claim for "Breach of fiduciary duties" by one Nissim David-Chai ("Chai") bearing a date of loss of September 19, 2016. On that date, Chai filed a lawsuit against BCA and certain of its board members, titled *Nissim David-Chai v. Bell Canyon Association, Inc. et al.*, Case No. 56-2016-00486775, in the Superior Court in and for Ventura County (herein "Chai Litigation"). Chai is a building contractor and property owner within the Bell Canyon development. The complaint, a true and correct copy of which is attached as Exhibit "C", alleges that he was improperly denied approvals by the BCA Architectural Committee for various projects on which he was either an owner/developer or contractor on behalf of other Bell Canyon owners.

10.     On April 24, 2018, Leon and Marina Reingold, filed a lawsuit, titled *Leon Reingold and Marina Reingold v. Bell Canyon Association, Inc. et al.*, Case No. 56-2018-00510717 against the Plaintiff herein as well as three individuals in the Superior Court in and for Ventura County (herein "Reingold Litigation"). A true and correct copy of the complaint in the Reingold

- 3 -
**COMPLAINT**

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

1  Litigation is attached hereto as Exhibit "D". The Reingold Litigation alleges that they were

2  improperly denied approval by the BCA Architectural Committee for improvements on their

3  property in the Bell Canyon development. The Reingold Litigation alleges claims for breach of

4  fiduciary duty and declaratory relief.

5        11.    The property owned by the Reingolds at issue in the Reingold Litigation is not one

6  of the properties at issue in the Chai Litigation. The Reingold Litigation does allege, on

7  information and belief, that the denial of their proposed improvements was in retaliation for Leon

8  Reingold potentially giving deposition testimony favorable to Chai in the Chai Litigation.

9        12.    The Reingold Litigation is a "Claim" that alleges acts that constitute a "Wrongful

10 Act" as defined by the POLICY. Accordingly, the Reingold Litigation was timely and

11 appropriately tendered to IRONSHORE. On May 17, 2108, by letter from Senior Claims

12 Specialist Anny Mok, IRONSHORE denied any obligation to defend or indemnify the Claim. A

13 true and correct copy of that denial letter is attached as Exhibit "E".

14       13.    In the denial letter, IRONSHORE relied solely on the above-described

15 ENDORSEMENT. IRONSHORE claimed that because the Reingolds allege, on information and

16 belief, that the Architectural Committee's denial of approvals was motivated by "coercion or in

17 retaliation" for Leon Reingold's deposition testimony in the Chai Litigation, that the Reingold

18 Litigation therefore is a "fact, circumstance or situation in any way relating to any Event". This

19 position was reiterated by an attorney representing IRONSHORE in response to follow up by

20 BCA's counsel; true and correct copies of those letters are attached hereto as Exhibits "F" and

21 "G").

22       14.    On July 18, 2018, BCA's counsel provided IRONSHORE with evidence that the

23 deposition of Leon Reingold in the Chai Litigation had not even been scheduled or noticed until

24 after the events giving rise to Reingold's complaint took place, meaning that BCA's allegedly

25 wrongful conduct could not have been motivated by any anticipated deposition testimony, and that

26 the Reingolds would potentially be required to amend their complaint. The letter requested that

27 IRONSHORE "re-evaluate its coverage decision" in accordance with its obligations under the

28 implied covenant of good faith and fair dealing. A true and correct copy of that correspondence is

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/04/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1 attached hereto as Exhibit "H". To date, IRONSHORE has neither reconsidered nor changed its

2 coverage position, and continues to assert that the Reingold Litigation arises from the Chai

3 Litigation.

4    15. In so doing, IRONSHORE has misapplied the coverage limitation of its

5 ENDORSEMENT, which is itself impermissibly vague, overbroad, and inconsistent with

6 California law regarding application of insurance policy exclusions. Moreover, IRONSHORE has

7 willfully failed and refused to consider facts, of which it has been made aware, that demonstrate

8 that the ENDORSEMENT actually or potentially does not apply, such that the case is potentially

9 covered under the POLICY and IRONSHORE had a duty to defend.

10    16. BCA filed suit against Ironshore over its denial of coverage in the Superior Court,

11 County of Ventura, Case No. 56-2020-00547326, and shortly thereafter, the parties reached a

12 resolution of that lawsuit whereby Ironshore agreed to pay to BCA $700,000 of the $1 million

13 policy limits, and in exchange, BCA agreed to thereafter seek further coverage under an

14 excess/umbrella policy with Greenwich Insurance Company. The parties further agreed, however,

15 that in the event the excess carrier denied coverage because the full underlying $1 million policy

16 limits had not been paid, BCA could re-file suit against Ironshore to seek coverage and pursue the

17 remaining $300,000 in limits under the Policy. When BCA thereafter tendered its claim to

18 Greenwich and sought coverage under the excess policy, Greenwich denied coverage on the

19 grounds that the underlying $1 million policy limits had not been exhausted. Accordingly, this

20 lawsuit is specifically authorized  pursuant to the terms of the BCA-Ironshore settlement

21 agreement.

22    17. Plaintiff has fully complied with all conditions precedent to the filing of this

23 lawsuit.

24        **FIRST CAUSE OF ACTION**

25        **(For Breach of Contract)**

26    18. Plaintiff restates the allegations of paragraphs 1 through 17 as though fully set forth

27 herein.

28    19. BCA paid all premiums due and otherwise fully performed all conditions required

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

1    of it under policy no. PRO0073838 and under the Settlement Agreement.  Specifically, BCA

2    provided IRONSHORE with due and timely notice of the claim in accordance with the policy

3    provisions and demanded that IRONSHORE defend and indemnify it and the other three insured

4    persons.  Following payment by IRONSHORE of $700,000 in defense fees and costs in the

5    Reingold litigation, Plaintiff incurred an additional $300,000 in out-of-pocket defense costs, thus

6    exhausting the Policy Limit, which Ironshore has refused to pay.

7        20.    Defendant has breached policy no. PRO0073838 and the Settlement Agreement by

8    failing to pay Plaintiffs an additional $300,000 in defense costs as required under the POLICY.

9    Specifically, Defendant has breached its contract of insurance by improperly relying on the

10    coverage limitation of the ENDORSEMENT, which is itself impermissibly vague and overbroad,

11    and applying the ENDORSEMENT in a manner which was not intended at the time it was issued.

12    IRONSHORE'S reliance on the ENDORSEMENT was premised solely on the grounds that

13    BCA's conduct was, on the Reingolds' information and belief, potentially motivated by their

14    anticipated deposition testimony in the Reingold Litigation.  The mere allegation on information

15    and belief that the claimed wrongful conduct was motivated by anticipated deposition testimony

16    does not eliminate all possibilities of coverage; as a result, even if the ENDORSEMENT were

17    held to be properly drafted and not impermissibly vague and overbroad, IRONSHORE still owes

18    Plaintiff a duty to indemnify it for all losses incurred in the defense of the Reingold Litigation,

19    particularly the $300,000 in additional defense fees and costs that Ironshore has refused to pay.

20        21.    As a result of Defendant's breach of the POLICY and the Settlement Agreement,

21    Plaintiff has been damaged in the sum of $300,000, representing covered unreimbursed defense

22    costs incurred in the defense of the Reingold Litigation.

23

24                         **SECOND CAUSE OF ACTION**

25                           **(For Declaratory Relief)**

26        22.    Plaintiff restates the allegations of paragraphs 1 through 30 as though fully set forth

27    herein.

28        23.    An actual controversy has arisen between the Plaintiff on the one hand, and

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1  Defendant IRONSHORE on the other hand.  Plaintiff contends that IRONSHORE had at all times

2  a duty to indemnify Plaintiff for losses incurred in the Reingold Litigation, including defense

3  costs, in that the exclusionary language in the ENDORSEMENT is impermissibly vague,

4  overbroad and misleading under California law and must be disregarded.  Plaintiff further

5  contends that the exclusionary language of the ENDORSEMENT is inapplicable to the Reingold

6  Litigation in that the allegations do not arise from or relate to the Chai Litigation.  Plaintiff further

7  contends that the allegations of the Reingold Litigation are at least potentially covered under the

8  IRONSHORE POLICY because the complaint potentially alleges "Wrongful Conduct" on the part

9  of Plaintiff within the meaning of the POLICY'S insuring clause.  Therefore, Plaintiff is entitled to

10  reimbursement of an additional $300,000 it has incurred in defense costs in excess of

11  IRONSHORE's payment to date. IRONSHORE, on the other hand, has claimed that the

12  exclusionary language of the ENDORSEMENT defeats any duty to defend or indemnify Plaintiff

13  for those sums.

14      24.    A declaration of this court is necessary to ascertain the rights and duties of the

15  respective parties under the contract of insurance.

16  **WHEREFORE, PLAINTIFF PRAYS FOR JUDGMENT AS FOLLOWS:**

17  1.    For compensatory damages in the amount of $300,000, plus interest thereon as

18      allowed by law;

19  2.    For a declaration of the rights and obligations of Plaintiff and IRONSHORE;

20  3.    For costs of suit incurred herein; and

21  4.    For such other and further relief as this court deems appropriate.

22

23  DATED:  February 8, 2022        ROXBOROUGH, POMERANCE, NYE & ADREANI LLP

24

25

26

27              By:_____

28                 DREW E. POMERANCE
               VINCENT S. GANNUSCIO
               Attorneys for Plaintiff

- 7 -
**COMPLAINT**

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

## DEMAND FOR JURY TRIAL

Plaintiff BELL CANYON ASSOCIATION, INC. hereby demands a jury trial.

DATED:  February 8, 2022        ROXBOROUGH, POMERANCE, NYE & ADREANI LLP

By: _____
        DREW E. POMERANCE
        VINCENT S. GANNUSCIO
        Attorneys for Plaintiff

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

- 8 -
**COMPLAINT**

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

# EXHIBIT A

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



# IRONSHORE
### A Liberty Mutual Company

## IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**NOTICE:**

1. THE INSURANCE POLICY THAT YOU (HAVE PURCHASED) (ARE APPLYING TO PURCHASE) IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.
2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.
3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.
4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.
5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.
6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.
7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.
8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS

NFP.003
(10/07 Ed.)

DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

Date: _____

Insured: _____

NFP.003
(10/07 Ed.)

Page 2 of 5

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 12203040B86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



# IRONSHORE
## A Liberty Mutual Company

## IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Policy #:**  003047801
**Expiring Policy #:**  003047800

# NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY INCLUDING EMPLOYMENT PRACTICES CLAIMS COVERAGE WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY

# DECLARATIONS

This is a Claims Made and Reported Policy, please read it carefully. Amounts incurred as Costs of Defense shall reduce the limit of liability available to pay judgments or settlements and shall also be applied against the retention. This Policy does not provide for any duty by the Insurer to defend those Insured under the Policy.

| ITEM 1:   NOT-FOR-PROFIT ENTITY NAME AND PRINCIPAL ADDRESS:<br><br>Bell Canyon Association<br>30 Hackamore Lane, Suite 8<br>Bell Canyon, CA  91307 | ITEM 2:   POLICY PERIOD:<br><br>(a) Inception Date - February 01, 2018<br><br>(b) Expiration Date - February 01, 2019<br><br>at 12:01 a.m. both dates at the Principal Address in ITEM 1. |
|---|---|

**ITEM 3. LIMIT OF LIABILITY** (inclusive of Costs of Defense):

$1,000,000  aggregate limit of liability for all Claims made or deemed made during the Policy Period.

**ITEM 4. RETENTIONS:**

(a) **Claim** other than an **Employment Practices Claim**: $75,000

(b) **Employment Practices Claim**: $75,000

(c) A Retention shall not apply to a Non Indemnifiable Loss.

**ITEM 5.**

Premium:

| | | |
|---|---|---|
| Premium: | $31,424.00 | |
| Total Amount Due: | $31,424.00 | |

*Compliance with all surplus lines placement requirements, including stamping the Policy and collection and payment of surplus lines taxes, is the responsibility of the broker.*

*See Invoice for the date Premium is due and payable. Failure to pay the premium in full may result in voidance of coverage.*

NFP.003
(10/07 Ed.)

Page 3 of 5

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

**ITEM 6. FORMS AND ENDORSEMENTS ATTACHED AT ISSUANCE:**

1. IRON.PN.001 (0513) OFAC Compliance Notice
2. IRON.END.ALL.004 (0317) Service of Suit Endorsement
3. IRON.END.ALL.016 (0317) Insurer Street Address Change
4. NFP.END.003 (0614) Bankruptcy Insolvency and Creditor Exclusion
5. NFP.END.022 (0614) Regulatory Exclusion
6. NFP.END.027 (0614) Professional Services Exclusion
7. NFP.END.052 (0615) Sexual Misconduct and Child Abuse Exclusion
8. NFP.END.054 (1111 Ed.) Specific Investigation Claim Litigation Event or Act Exclusion
9. NFP.END.055 (1111 Ed.) Third Party Coverage Deleted
10. NFP.END.057 (0614) Pollution Coverage Amended (Insuring Agreement A Only)
11. NFP.END.060 (0614) Definition of Not-For-Profit Entity (Named Insured Only)
12. NFP.END.067 (0614) Bond Exclusion
13. NFP.END.068 (0614) Definition of Loss (Punitive Damages Deleted)
14. NFP.END.081 (0614) Condo, Co-op, Homeowners Association Amendatory
15. NFP.END.090 (1014) Worldwide Provision Amended (US Claims Only)
16. NFP.EX.002 (1007 Ed.) Advertising Broadcasting and Publishing Exclusion
17. NFP.EX.005 (1007 Ed.) Captive Insurance Entity Exclusion
18. NFP.EX.006 (1007 Ed.) Commission Exclusion
19. NFP.EX.021 (1007 Ed.) Medical Malpractice Exclusion
20. NFP.EX.023 (1007 Ed.) Nuclear Energy Liability Exclusion
21. NFP.END.064 (0614) Definition of Employee (Delete Independent Contractor and Leased Person)
22. NFP.MANU.047-8 (0217) Lenders Liability Exclusion

**ITEM 7. PENDING AND PRIOR DATE: February 14, 2001**

**ITEM 8. INSURER ADDRESS:**

c/o Ironshore Insurance Services, LLC
One State Street Plaza
8th Floor
New York, NY 10004

**ITEM 9. BROKER ADDRESS:**

Thomas Rockland Roginson
USI Insurance Services
21250 Hawthorne Boulevard, 6th Floor,
Torrance, CA  90503

**ITEM 10. SURPLUS LINES BROKER & MAILING ADDRESS:**

??Value

The Declarations, the signed and completed **Application** and the Policy, with endorsements, will constitute the contract between the **Insured** and the **Insurer** and this Policy is not valid unless signed below by a duly authorized representative of the Insurer.

Date: __March 9, 2018__                    By: _____

                                              **Authorized Representative**

NFP.003
(10/07 Ed.)                                                    Page 4 of 5

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 12203040B86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

# CALIFORNIA CONSUMER SERVICES NOTICE

Your policy has been issued by:

**Ironshore Specialty Insurance Company**
**75 Federal Street**
**5th Floor**
**Boston, MA 02110**

If you are having problems, you can contact **Ironshore Specialty Insurance Company** at the following address and telephone number:

**75 Federal Street**
**5th Floor**
**Boston, MA 02110**
**(877) IRON-411**

**THE FOLLOWING ADDRESS AND TOLL-FREE TELEPHONE NUMBER ARE AVAILABLE FOR YOUR USE IN THE EVENT A SATISFACTORY SOLUTION CANNOT BE OBTAINED FROM YOUR INSURANCE AGENT OR COMPANY REGARDING ANY PROBLEMS YOU MAY EXPERIENCE:**

**THE DEPARTMENT OF INSURANCE**
**CONSUMER SERVICES**
**300 SOUTH SPRING STREET**
**LOS ANGELES, CA 90013**
**1-800-927-HELP**

NFP.003
(10/07 Ed.)

Page 5 of 5

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

# OFFEREE DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
**(new policies and renewals with no terrorism
exclusion or sublimit and no premium charge)**

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, we are making available to you insurance for losses arising out of certain acts of international terrorism.   The policy you are purchasing already includes insurance for such acts. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.


You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.  Under this formula, the United States pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage.  The portion of the offered policy's annual premium that is attributable to insurance for acts of terrorism is: **$ -0-.**


If you have any questions about this notice, please contact your agent or broker.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



# IRONSHORE
### A Liberty Mutual Company

## IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Insured Name:** Bell Canyon Association
**Policy Number:** 003047801

**THIS IS A CLAIMS MADE AND REPORTED POLICY WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY
PLEASE READ THE ENTIRE POLICY CAREFULLY**

# NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY

### INCLUDING EMPLOYMENT PRACTICES CLAIMS COVERAGE WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the **Insurer** shown in the Declarations, including the statements made in the **Application**, and subject to all terms, conditions and limitations of this Policy, the **Insureds** and **Insurer** agree:

**SECTION I      INSURING AGREEMENTS**

A.   The **Insurer** shall pay on behalf of an **Insured Person** all **Loss** which the **Insured Person** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim**) first made against the **Insured Person** during the **Policy Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** pursuant to Section VII, except for any **Loss** which the **Not-For-Profit Entity** actually pays as indemnification.

B.   The **Insurer** shall pay on behalf of the **Not-For-Profit Entity** all **Loss** which the **Not-For-Profit Entity** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim**) first made against an **Insured Person** during the **Policy Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** pursuant to Section VII, but only to the extent the **Not-For-Profit Entity** is required or permitted by law, to the fullest extent possible, to indemnify the **Insured Person**.

C.   The **Insurer** shall pay on behalf of the **Not-For-Profit Entity** all **Loss** which the **Not-For-Profit Entity** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim**) first made against the **Not-For-Profit Entity** during the **Policy Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** pursuant to Section VII.

**SECTION II      DEFINITIONS**

A.   "**Application**" shall mean each and every signed application submitted to the **Insurer** for consideration of insurance together with any attachments to such applications, other materials submitted therewith or incorporated therein, and any other documents submitted in connection with the underwriting of this Policy.

NFP.002 (10/07 Ed.)                                                                                    Page 1 of 14

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

"**Application**" shall also mean any public documents filed by the **Not-For-Profit Entity** within the past 36 months with any federal, state, local or foreign governmental entity.

B.   "**Claim**" shall mean a civil, criminal, governmental, regulatory, administrative, or arbitration proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt or filing of notice of charges or similar document, including any proceeding initiated against any **Insured** before the Equal Employment Opportunity Commission or any similar governmental body or other written demand for monetary or non-monetary relief made against any **Insured**. However, in no event shall the term "**Claim**" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

C.   "**Costs of Defense**" shall mean reasonable and necessary legal fees, costs and expenses incurred in the investigation, defense or appeal of any **Claim**, including the costs of an appeal bond, attachment bond or similar bond (but the **Insurer** shall not have any obligation to apply for or furnish such bonds); provided, however, **Costs of Defense** shall not include salaries, wages, overhead or benefit expenses associated with any **Insured**.

D..   "**Domestic Partners**" shall mean any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Not-For-Profit Entity**.

E.   "**Employee**" shall mean any past, present or future employee of the **Not-For-Profit Entity**, whether such **Employee** is a supervisor, co-worker or subordinate position, including any full-time, part-time, seasonal and temporary employee in their capacity as such. Any person leased to the **Not-For-Profit Entity** shall also be an **Employee**, but only if the **Not-For-Profit Entity** indemnifies such leased person in the same manner as is provided to its permanent employees. Any person hired by contract to perform work for the **Not-For-Profit Entity**, or who is an independent contractor for the **Not-For-Profit Entity**, shall also be an **Employee**, but only if the **Not-For-Profit Entity** indemnifies the person in the same manner as is provided to the permanent employees of the **Not-For-Profit Entity**.

F.   "**Employment Practices Claim**" shall mean any **Claim** brought by or on behalf of any past, present or future **Employee** of the **Not-For-Profit Entity** or **Outside Entity**, or any applicant for employment with the **Not-For-Profit Entity** or **Outside Entity** alleging an **Employment Practices Wrongful Act**. **Employment Practices Claim** shall also mean a **Claim** brought by any student, patient, member, customer, client or supplier of the **Not-For-Profit Entity** alleging discrimination, sexual harassment or violation of the civil rights of an individual relating to such discrimination or sexual harassment.

G.   "**Employment Practices Wrongful Act**" shall mean:

   (1)   adverse or unfair reprimand of an **Employee**;

   (2)   denial of interview or position;

   (3)   denial of training to an **Employee**;

   (4)   derogatory or disparaging remarks to an **Employee**;

   (5)   discrimination;

   (6)   employment-related misrepresentations

   (7)   employment-related libel, slander, defamation, or invasion of privacy;

   (8)   failure to grant tenure;

   (9)   failure to provide an adequate workplace, or employment policy or procedure for **Employees**;

NFP.002 (10/07 Ed.)                                                                 Page 2 of 14

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

(10)   imposing mandatory arbitration of an **Employment Practices Claim;**

(11)   improper denial of time off or vacation time to an **Employee;**

(12)   improper disciplinary action of an **Employee;**

(13)   improper performance review of an **Employee;**

(14)   improper transfer, change of position or change of work hours or shift of an **Employee;**

(15)   improper treatment of an **Employee** for his/her actions as a whistleblower;

(16)   negligent evaluation of an **Employee;**

(17)   negligent release of medical information of an **Employee;**

(18)   **Retaliation** against an **Employee;**

(19)   sexual or workplace harassment of any kind;

(20)   violation of the Equal Pay Act;

(21)   wrongful deprivation of career opportunity of an **Employee,** including defamatory statements made in connection with an **Employee** reference;

(22)   wrongful dismissal, discharge or termination of employment, whether actual or constructive, of an **Employee;**

(23)   wrongful failure to promote, transfer or employ; and

(24)   violation of an **Employee's** civil rights relating to any of the above.

H.   **"Financial Insolvency"** shall mean the **Not-For-Profit Entity** becoming a debtor in possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Not-For-Profit Entity.**

I.   **"Insured"** shall mean an **Insured Person** and the **Not-For-Profit Entity.**

J.   **"Insured Person"** shall mean a past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, executive director, department head, committee member (of a duly constituted committee of the **Not-For-Profit Entity),** staff or faculty member (salaried or non-salaried), **Employee** or volunteer of the **Not-For-Profit Entity.** Coverage will automatically apply to all new persons who become **Insured Persons** after the inception date of this Policy.

K.   **"Insurer"** shall mean the company stated in Item 8 of the Declarations.

L.   **"Loss"** shall mean compensatory damages (including back pay and front pay), punitive or exemplary damages, the multiple portion of any multiplied damage award, judgments, settlements, pre- and post-judgment interest, and **Costs of Defense.** It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award.

**Loss** shall not include: (1) civil or criminal fines or penalties imposed by law; **(2)** taxes; (3) any amount for which the **Insured** is not financially liable or which is without legal recourse to the **Insured;** (4) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages



orbonus compensation; **(5)** any liability or costs incurred by any **Insured** to modify any buildings or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an **Employment Practices Claim**; or **(6)** matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

**M.** "**Management Control**" shall mean: **(1)** owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of the Board of Directors of a corporation, organization, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or **(2)** having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an organization, to elect, appoint or designate a majority of the Board of Directors of a corporation, organization, the management committee of a joint venture or partnership or the management board of a limited liability company.

**N.** "**Not-For-Profit Entity**" shall mean the **Not-For-Profit Entity** named in Item 1 of the Declarations and any **Subsidiary**.

**O.** "**Outside Entity**" shall mean any not-for-profit entity other than the **Not-For-Profit Entity** named in Item 1 of the Declarations and any for-profit entity but only if such for-profit entity is specifically added by written endorsement to this Policy.

**P.** "**Policy Period**" shall mean the period from the inception date of this Policy to the expiration date of this Policy as set forth in Item 2 of the Declarations, or its earlier termination if applicable.

**Q.** "**Pollutants**" shall mean any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on any list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

**R.** "**Pollution**" shall mean the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere.
**Pollution** shall also mean any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

**S.** "**Related Wrongful Acts**" shall mean **Wrongful Acts** which are the same, related or continuous, or **Wrongful Acts** which arise from a common nucleus of facts. **Claims** can allege **Related Wrongful Acts** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

**T.** "**Retaliation**" shall mean a **Wrongful Act** of an **Insured** relating to or alleged to be in response to any of the following activities: **(1)** the disclosure or threat of disclosure by an **Employee** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; **(2)** the actual or attempted exercise by an **Employee** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; **(3)** the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or **(4) Employee** strikes.

**U.** "**Subsidiary**" shall mean:

    **(1)**    any not-for profit entity and any for-profit organization of which the **Not-For-Profit Entity** has **Management Control** ("Controlled Entity") on or before the inception of the **Policy Period,** either directly or indirectly, through one or more other Controlled Entities;

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

**(2)** automatically any not-for-profit organization whose assets total less than 30% of the total consolidated assets of the **Not-For-Profit Entity** as of the inception date of this Policy which the **Not-For-Profit Entity** first had **Management Control** during the **Policy Period**, either directly or indirectly, through one or more other Controlled Entities. The **Not-For-Profit Entity** shall provide the **Insurer** with full particulars of the new **Subsidiary** before the end of the **Policy Period**; or

**(3)** automatically any for-profit entity whose assets total less than 20% of the total consolidated assets of the **Not-For-Profit Entity** as of the inception date of this Policy which the **Not-For-Profit Entity** first had **Management Control** during the **Policy Period**, either directly or indirectly, through one or more other Controlled Entities. The **Not-For-Profit Entity** shall provide the **Insurer** with full particulars of the new **Subsidiary** before the end of the **Policy Period**; or

**(4)** an organization which the **Not-For-Profit Entity** first had **Management Control** during the **Policy Period** (other than an organization described in paragraph (2) or (3) above), either directly or indirectly, through one or more other Controlled Entities, but only upon the condition that within 90 days of its becoming a **Subsidiary**, the **Not-For-Profit Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium or amendment of the provisions of this Policy required by the **Insurer** relating to such new **Subsidiary**. Further, coverage as shall be afforded to the new **Subsidiary** is conditioned upon the **Not-For-Profit Entity** paying when due any additional premium required by the **Insurer** relating to such new **Subsidiary**.

**(5)** An organization becomes a **Subsidiary** when the **Not-For-Profit Entity** has **Management Control** of such **Subsidiary**, either directly or indirectly, through one or more of its Controlled Entities. An organization ceases to be a **Subsidiary** when the **Not-For-Profit Entity** ceases to have **Management Control** in such **Subsidiary**, either directly, or indirectly through one or more of its Controlled Entities.

**(6)** In all events, coverage as is afforded under this Policy with respect to a **Claim** made against any **Subsidiary** and/or any **Insured Person** shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time the **Not-For-Profit Entity** obtained **Management Control** of such **Subsidiary**, and prior to the effective time that the **Not-For-Profit Entity** no longer has **Management Control** over such **Subsidiary**.

**X.** "Wrongful Act" shall mean:

**(1)** any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty, or **Employment Practices Wrongful Act**, by any **Insured Person** in their capacity as such with the **Not-For-Profit Entity**;

**(2)** any matter claimed against any **Insured Person** solely by reason of their capacity as such with the **Not-For-Profit Entity**;

**(3)** any matter claimed against any **Insured Person** arising out of their service as a director, officer, trustee or governor of an **Outside Entity**, but only if such service is at the request of the **Not-For-Profit Entity**; or

**(4)** any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty, or **Employment Practices Wrongful Act**, by the **Not-For-Profit Entity**.

**(5)** Wrongful Act shall specifically include:

(a) Non-Employment Discrimination;

(b) violation of the Sherman Antitrust Act or similar federal, state or local statutes or rules;

(c) libel, slander, defamation or publication or utterance in violation of an individual's right of privacy;

(d) wrongful entry or eviction or other invasion of the right of occupancy;

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



(e)     false arrest or wrongful detention;

(f)     plagiarism; and

(g)     infringement of copyright or trademark or unauthorized use of title.

**SECTION III      EXCLUSIONS**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.     alleging, arising out of, based upon or attributable to:

(1)     an **Insured** gaining any profit, advantage or remuneration to which they were not legally entitled; provided however, this exclusion shall only apply where it is finally adjudicated that such conduct occurred; or

(2)     the deliberately fraudulent or criminal acts of an **Insured**; provided, however, this exclusion shall only apply where it is finally adjudicated that such conduct occurred.

Provided, however, for the purpose of determining the applicability of Exclusion A.(1) and (2) it is understood and agreed that the **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured**.

B.     alleging, arising out of, based upon or attributable to, any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice or **Claim** given under any other policy of which this Policy is a renewal or replacement;

C.     alleging, arising out of, based upon or attributable to, any pending or prior civil, criminal, administrative or investigative proceeding involving the **Not-For-Profit Entity** and/or any **Insured Person** as of the Pending and Prior date stated in Item 7 of the Declarations, or any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation underlying or alleged in such proceeding;

D.     for any actual or alleged:

(1)     bodily injury, sickness, disease, or death of any person;

(2)     damage to or destruction of any tangible property, including the loss of use thereof; or

(3)     mental anguish, emotional distress, or malicious prosecution, however, this subsection (D) (3) does not apply to an **Employment Practices Claim.**

E.     for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a **Claim** for **Retaliation**;

F.     for any **Claim** arising out of, based upon, or attributable to the refusal, failure or inability of any **Insured** to pay wages or overtime pay for services rendered (hereinafter, "Earned Wages") (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee**, including, but not limited to, (i) any unfair business practice claim alleged because of the failure to pay Earned Wages, or (ii) any **Claim** seeking earned Wages because any **Employee** or purported employee was improperly classified or mislabeled as "exempt";

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

G.  alleging, arising out of, based upon or attributable to, any **Wrongful Act** of any **Insured Person** serving as a director, officer, trustee, governor or employee of any entity other than the **Not-For-Profit Entity** or an **Outside Entity**, even if such service is at the direction of the **Not-For-Profit Entity**, unless otherwise endorsed on this Policy;

H.  for any **Wrongful Act** of any **Insured Person** serving as a director, officer, trustee or governor of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee or governor thereof; provided, however, this exclusion shall not apply to any **Employment Practices Claim**;

I.  which is brought by or on behalf of the **Not-For-Profit Entity** or by any **Insured Person**; provided however, this exclusion shall not apply to:

   (1)  any **Employment Practices Claim** brought by an **Insured Person,** other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of the **Not-For-Profit Entity**;

   (2)  any **Claim** brought by an **Insured Person** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this Policy;

   (3)  any **Claim** brought by the examiner, trustee, receiver, liquidator, rehabilitator or creditors' committee (or any assignee thereof) of the **Not-For-Profit Entity,** in any bankruptcy proceeding by or against the **Not-For-Profit Entity**;

   (4)  any **Claim** made on behalf of the **Not-For-Profit Entity** by a member, an attorney general or other such representative party unless such **Claim** is instigated and continued with the solicitation of, or assistance of, or active participation of, or intervention of, the **Not-For-Profit Entity** or any **Insured Person**;

   (5)  any **Claim** brought by any past director or officer of the **Not-For-Profit Entity** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for the **Not-For-Profit Entity** for at least four (4) years prior to such **Claim** being first made against any person;

   (6)  any **Claim** brought by a director or officer (or equivalent position) of a **Company** formed and operating in a foreign jurisdiction against such **Company** or any **Insured Person**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof); or

   (7)  any **Claim** brought against an **Insured Person** arising out of or based upon any protected activity specified in any "whistleblower" protection pursuant to any state, local or foreign laws.

J.  alleging, arising out of, based upon or attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, **Pollution**, including but not limited to, any **Claim** for financial loss to the **Not-For-Profit Entity**, its members or its creditors;

K.  for any **Wrongful Act** of any **Subsidiary** or the **Insured Person** of such **Subsidiary** or any entity that merges with the **Not-For-Profit Entity** or the **Insured Person** of such entity that merges with the **Not-For-Profit Entity** occurring:

   (1)  prior to the date such entity becomes a **Subsidiary** or is merged with the **Not-For-Profit Entity**;

   (2)  subsequent to the date such entity became a **Subsidiary** or was merged with the **Not-For-Profit Entity** which, together with a **Wrongful Act** occurring prior to the date such entity became a



Subsidiary or was merged with the **Not-For-Profit Entity**, would constitute **Related Wrongful Acts**; or

**(3)** subsequent to the date the **Not-For-Profit Entity** ceased to own, directly or indirectly, more than fifty percent (50%) of the voting stock of such **Subsidiary**;

**L.** which is insured in whole or in part by another valid policy or policies, (except with respect to any excess beyond the amount or amounts of coverage under such other policy or policies), whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise.

**M.** alleging, arising out of, based upon or attributable to any public offering of securities by the **Not-For-Profit Entity**, an **Outside Entity** or an affiliate or alleging a purchase or sale of such securities subsequent to such public offering; provided, this exclusion will not apply to the sale or offer to sell tax exempt bonds;

**N.** alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Not-For-Profit Entity** or any **Insured Person** under any express contract or agreement. This exclusion shall not apply to an **Employment Practice Claim** to the extent liability does not arise under an express contract or agreement;

**O.** alleging, arising out of, based upon or attributable to, any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law;

**SECTION IV**    **LIMIT OF LIABILITY**

**A.** The **Insurer** shall be liable to pay **Loss** in excess of the applicable Retention amount stated in Item 4 of the Declarations up to the Limit of Liability stated in Item 3 of the Declarations.

**B.** **Costs of Defense** shall be part of, and not in addition to, the Limit of Liability stated in Item 3 of the Declarations. Such **Costs of Defense** shall serve to reduce the Limit of Liability.

**C.** The liability of the **Insurer** for all **Loss** arising from any and all **Claims** first made and reported pursuant to Section VII of the Policy shall be the amount shown in Item 3 of the Declarations which shall be the maximum aggregate Limit of Liability of the **Insurer** for the **Policy Period** and Discovery Period, if applicable, regardless of the time of payment or the number of **Claims**.

**SECTION V**    **RETENTION.**

**A.** The Retention stated in Item 4 of the Declarations shall apply to all covered **Loss**, including **Costs of Defense**.

**(1)** The Retention specified in Item 4 of the Declarations shall apply as follows:

**a.** Item 4(a) Retention is applicable to **Loss** as a result of a **Claim** other than an **Employment Practices Claim**;

**b.** Item 4(b) Retention is applicable to **Loss** resulting from an **Employment Practices Claim**.

**B.** One Retention shall apply to **Loss** arising from each **Claim** alleging the same **Wrongful Act** or **Related Wrongful Acts**. The **Not-For-Profit Entity** shall be responsible for, and shall hold the **Insurer** harmless from, any amount within the Retention.

**C.** More than one **Claim** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** shall be considered a single **Claim**, and only one Retention shall be applicable to such single **Claim**. All such claims constituting a single **Claim** shall be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

such **Wrongful Act** or **Related Wrongful Act** were reported under this Policy or any other policy providing similar coverage.

**D.**   For the purposes of the application of the Retention, **Loss** applicable to Insuring Agreement I.B. includes that for which indemnification is legally permissible, whether or not actual indemnification is granted. In the event the **Not-For-Profit Entity** is unable to indemnify an **Insured Person** solely by reason of its **Financial Insolvency**, the Insurer shall, pursuant to the terms and conditions of Section VI.F., advance **Costs of Defense** incurred by an **Insured Person** without first requiring payment of the Retention applicable to a **Claim** covered by Insuring Agreement I.B.

The certificate of incorporation, charter or other organization documents of the **Not- For-Profit Entity**, including by-laws and resolutions, shall be deemed to require indemnification and advancement of **Loss** to the **Insured Person** to the fullest extent permitted by law.

**SECTION VI.**   **COSTS OF DEFENSE AND SETTLEMENTS**

**A.**   The **Insured** shall not incur **Costs of Defense**, or admit liability, offer to settle, or agree to any settlement in connection with any **Claim** without the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld.

The **Insured** shall provide the **Insurer** with all information and particulars it may reasonably request in order to reach a decision as to such consent. Any **Loss** resulting from any admission of liability, agreement to settle, or **Costs of Defense** incurred prior to the consent of the **Insurer**, shall not be covered hereunder.

**B.**   Notwithstanding Section VI. A. above, if all **Insureds** are able to settle all **Claims** that are subject to an applicable Retention for an amount that, together with the **Costs of Defense**, does not exceed the applicable Retention, the **Insured** may agree to such a settlement without the prior written consent of the **Insurer**.

**C.**   The **Insured**, and not the **Insurer**, have the duty to defend all **Claims**, provided that the **Insured** shall only retain counsel as is mutually agreed upon with the **Insurer**. The **Not-For-Profit Entity** may at its option tender to the **Insurer** the defense of a **Claim**. Such a tender of the defense of a **Claim** shall not be made more than 90 days following notice of the **Claim** pursuant to Section VII. Upon such a tender of the defense of a **Claim**, the **Insurer** shall assume the duty to defend.

**D.**   The **Insurer** shall at all times have the right, but not the duty, to associate with the **Insured** in the investigation, defense or settlement of any **Claim** to which coverage under this Policy may apply. The **Insured** shall cooperate with the **Insurer** and provide the **Insurer** such information as it may reasonably require in the investigation, defense or settlement of any **Claim**.

**E.**   If a **Claim** made against any **Insured** includes both covered and uncovered matters, or is made against any **Insured** and others not insured, the **Insured** and the **Insurer** recognize that there must be an allocation between covered and uncovered **Loss**. The **Insured** and the **Insurer** shall use their best efforts to agree upon a fair and proper allocation between covered and uncovered **Loss**, taking into account the relative legal and financial exposures, and the relative benefits obtained by each **Insured** as a result of the covered and uncovered matters and/or such benefits to an uninsured party using the same measure. If the **Insured** and the **Insurer** are not able to come to some agreement regarding the amount of the allocation, then the **Insurer** shall pay only those amounts, excess of the applicable retention amount, which the **Insurer** deems to be fair and equitable until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and the above standards.

**F.**   The **Insurer** shall advance **Costs of Defense** prior to the final disposition of any **Claim**, provided such **Claim** is covered by this Policy. Any advancement shall be on the condition that:

**(1)**   the appropriate Retention has been satisfied, provided, however, this condition shall not apply in the event of the **Financial Insolvency** of the **Not-For-Profit Entity**;

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

**(2)**    any amounts advanced by the **Insurer** shall serve to reduce the Limit of Liability stated in Item 3 of the Declarations to the extent they are not in fact repaid;

**(3)**    the **Not-For-Profit Entity** and **Insured Person** and the **Insurer** have agreed upon the portion of the **Costs of Defense** attributable to covered **Claims** against the **Insured**, provided, however, if there is no such agreement, the **Insurer** shall pay, excess of the retention, what it determines fair and reasonable until such is otherwise established; and

**(4)**    in the event it is finally established that the **Insurer** has no liability under the Policy for such **Claim**, the **Not-For-Profit Entity** and **Insured Person** will repay the **Insurer** all **Costs of Defense** advanced by virtue of this provision.

**SECTION VII**    **NOTICE OF CLAIM**

**A.**    The **Insured** shall, as a condition precedent to their rights under this Policy, give the **Insurer** notice in writing of any **Claim** which is made during the **Policy Period**. Such notice shall be given as soon as practicable but in no event later than thirty (30) days after the end of the **Policy Period** or Discovery Period, if applicable. If notice is provided pursuant to this Section, any **Claim** subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the prior noticed **Claim** or alleging any **Related Wrongful Act**, shall be considered related to the prior **Claim** and made at the time notice of the prior **Claim** was first provided.

**B.**    If during the **Policy Period** or during the Discovery Period (if applicable) the **Not-For-Profit Entity** or an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Related Wrongful Act**, shall be considered made at the time such notice of such circumstances was given. Notice of any such subsequent **Claim** shall be given to the **Insurer** as soon as practicable.

**C.**    In addition to furnishing the notice as provided in Section VII, the **Insured** shall, as soon as practicable, furnish the **Insurer** with copies of reports, investigations, pleadings and other papers in connection therewith.

**D.**    Notice to the **Insurer** as provided in Section VII shall be given to the **Insurer** identified in, and at the address set forth in, Item 8 of the Declarations;

**SECTION VIII**    **DISCOVERY PERIOD**

**A.**    In the event the **Insurer** or the **Not-For-Profit Entity** refuses to renew this Policy, the **Not-For-Profit Entity** shall have the right, upon payment of one hundred percent (100%) of the annual premium, (or if the **Policy Period** is other than annual, one hundred percent (100%) of the annualized premium), to an extension of the coverage provided by this Policy with respect to any **Claim** first made against any **Insured** during the period of twelve (12) months after the end of the **Policy Period** and reported to the **Insurer** pursuant to the provisions of this Policy, but only with respect to any **Wrongful Act** committed or alleged to have been committed before the end of the **Policy Period**. This twelve (12) month period shall be referred to in this Policy as the Discovery Period.

**B.**    As a condition precedent to the right to purchase the Discovery Period, the total premium for this Policy must have been paid and a written request, together with payment of the appropriate premium for the Discovery Period, must be provided to the **Insurer** no later than thirty (30) days after the end of the **Policy Period**.

NFP.002 (10/07 Ed.)                            Page 10 of 14

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:°1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL :°435.00 TYPE : EFT

**C.** The fact that the coverage provided by this Policy may be extended by virtue of the purchase of the Discovery Period shall not in any way increase the Limit of Liability stated in Item 3 of the Declarations. For purposes of the Limit of Liability, the Discovery Period is considered to be part of, and not in addition to, the **Policy Period.**

**SECTION IX**     **GENERAL CONDITIONS**

**A.** Cancellation or Non-Renewal

(1) This Policy may be cancelled by the **Not-For-Profit Entity** at any time by written notice to the **Insurer.** Upon cancellation, the **Insurer** shall retain the customary short rate portion of the premium, unless this Policy is converted to Run-Off pursuant to Section IX.D. wherein the entire premium for this Policy shall be deemed earned.

(2) This Policy may only be cancelled by the **Insurer** if the **Not-For-Profit Entity** does not pay the premium when due. The **Insurer** shall mail or deliver notice of cancellation to the **Not-For-Profit Entity** at least ten (10) days before the effective date of cancellation.

(3) If the **Insurer** elects not to renew this Policy, the **Insurer** shall provide the **Not-For-Profit Entity** with no less than sixty (60) days advance notice thereof.

**B.** Application

It is agreed by the **Not-For-Profit Entity** and the **Insured Person** that the particulars and statements contained in the **Application** and any information provided therewith (which shall be on file with the **Insurer** and be deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the **Not-For-Profit Entity** and all **Insured Persons** that the statements in the **Application** or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations. Knowledge of any **Insured Person** of a misstatement or omission in the **Application,** shall not be imputed to any other **Insured Person** for purposes of determining the validity of this Policy as to such other **Insured Person.**

**C.** Action Against the Insurer

(1) No action shall be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the obligation of the **Insured** to pay shall have been finally determined by an adjudication against the **Insured** or by written agreement of the **Insured,** claimant and the **Insurer.**

(2) No person or organization shall have any right under this Policy to join the **Insurer** as a party to any **Claim** against the **Insured** nor shall the **Insurer** be impleaded by any **Insured** or their legal representative in any such **Claim.**

**D.** Conversion to Run-Off Coverage

If, during the **Policy Period,** a transaction occurs wherein the **Not-For-Profit Entity** shall change to a for-profit entity or another entity gains control of the **Not-For- Profit Entity** through the ownership of more than fifty percent (50%) of the voting stock or membership interest of the **Not-For-Profit Entity,** or the **Not-For-Profit Entity** merges into another entity or consolidates with another entity such that the **Not-For-Profit Entity** is not the surviving entity, then:

(1) this Policy shall only apply to **Wrongful Acts** actually or allegedly committed on or before the effective date of such transaction; and

(2) the entire premium for this Policy shall be deemed earned as of the date of such transaction.

NFP.002 (10/07 Ed.)                                                                 Page 11 of 14

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 122030408368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



E.   Outside Entity Provision

In the event a **Claim** is made against any **Insured Person** arising out of their service as a director, officer, trustee or governor of an **Outside Entity**, coverage as may be afforded under this Policy shall be excess of any indemnification provided by the **Outside Entity** and any insurance provided to the **Outside Entity** which covers its directors, officers, trustees or governors

F.   Coverage Extensions

(1)   Lawful Spouse or Domestic Partner Provision

The coverage provided by this Policy shall also apply to the lawful spouse or **Domestic Partner** of an **Insured Person**, but only for **Claims** arising out of any actual or alleged **Wrongful Acts** of such **Insured Person**.

(2)   Worldwide Provision

The coverage provided under this Policy shall apply worldwide. The term **Insured Person** is deemed to include individuals who serve in equivalent positions in foreign Subsidiaries.

(3)   Estates and Legal Representatives

a.   The coverage provided by this Policy shall also apply to the estates, heirs, legal representatives or assigns of any **Insured Person** in the event of their death, incapacity or bankruptcy, but only for **Claims** arising out of any actual or alleged **Wrongful Acts** of any **Insured Person**.

b.   In the event a bankruptcy proceeding shall be instituted by or against the **Not-For-Profit Entity**, the resulting debtor-in-possession (or equivalent status outside the United States of America) shall be deemed to be the **Not-For-Profit Entity**, but only with respect to coverage provided under Insuring Agreements I. B. and C.

G.   Priority of Payments

(1)   In the event of **Financial Insolvency**, or the refusal of the **Not-For-Profit Entity** to indemnify or advance the indemnification of an **Insured Person** and there is **Loss** arising from one or more covered **Claims** for which payment is due under this Policy, the **Insurer** shall:

a.   first pay such **Loss** for which coverage is provided under Section I.(A) of this Policy; then

b.   with respect to whatever remaining amount of the Limit of Liability is available after payment of Section G.(1)(a) above, pay such **Loss** for which coverage is provided under any other Insuring Agreements of this Policy.

(2)   Subject to the provisions of paragraph (1) above, the **Insurer** shall, at the written request of the **Not-For-Profit Entity**, delay payment of **Loss** for which coverage is provided under any Insuring Agreement other than Section I.(A) until such time as the **Not-For-Profit Entity** designates; provided the liability of the **Insurer** with respect to such delayed payment shall not be increased, and shall not include any interest as a result of such delay. The **Not-For-Profit Entity** shall provide written notice to the **Insurer** when such delayed payment shall be made. Such written notice shall be deemed consent from all **Insureds**, including all **Insured Persons**, to release such payment and the **Insurer** shall have no further obligation under this Policy with respect to such funds.

NFP.002 (10/07 Ed.)                                                                                                    Page 12 of 14

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

**H.**      Subrogation

In the event of any payment under this Policy, the **Insurer** shall be subrogated to all of the rights of recovery of the **Insured**. The **Not-For-Profit Entity** and **Insured Person** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the **Insurer** to effectively bring suit in the name of any **Insured Person** or the **Not-For-Profit Entity**.

**I.**      Dispute Resolution

In the event any dispute arises in connection with this Policy that cannot be resolved, the **Insurer** and the **Insured** shall participate in a non-binding mediation in which the **Insurer** and the **Insured** shall attempt in good faith to resolve such dispute. Either the **Insured** or the **Insurer** shall have the right to commence a judicial proceeding or, if the parties agree, a binding arbitration, to resolve such dispute. However, no judicial proceeding or arbitration shall be commenced until termination of the mediation and until at least 90 days has passed from the termination of the mediation. Each party will bear its own legal fees and expenses. The costs and expenses of a mediation, or an arbitration, shall be split equally by the parties.

**J.**      Assignment

Assignment of interest under this Policy shall not bind the **Insurer** until its consent is endorsed hereon.

**K.**      Conformity to Statute

Any terms of this Policy which are in conflict with the terms of any applicable laws are hereby amended to conform to such laws.

**L.**      Entire Agreement

By acceptance of this Policy, the **Insured** and the **Insurer** agree that this Policy (including the Declarations, Application submitted to the **Insurer** and any information provided therewith) and any written endorsements attached hereto constitute the entire agreement between the parties. The terms, conditions and limitations of this Policy can be waived or changed only by written endorsement.

**M.**      Corporation Represents Insured

By acceptance of this Policy, the **Not-For-Profit Entity** shall be designated to act on behalf of all **Insureds** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

**N.**      Representative of the Insurer

Ironshore Insurance Services, LLC, One State Street Plaza, 7th Floor, New York, NY 10004 shall act on behalf of the **Insurer** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, provided, however, notice of **Claims** shall be given pursuant to Section VII. of the Policy.

**O.**      Service of Suit

In the event of the failure of the **Insurer** to pay any amount claimed to be due hereunder, the **Insurer** at the request of the **Insured**, will submit to the jurisdiction of any court of competent jurisdiction within the United States. Nothing in this condition constitutes or shall be understood to constitute a waiver of the right of the **Insurer** to commence an action in any court of competent jurisdiction within the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Service of process in any such suit may be made upon Ironshore Insurance Services, LLC, One State Street Plaza, 7th Floor, New York, NY 10004. In any suit instituted against the **Insurer** upon this Policy the **Insurer** will abide by the final decision of such court or of any appellate court in the event of any appeal.

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the **Insurer** hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served lawful process in any action, suit or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this Policy, and hereby designates the above named Ironshore Insurance Services, LLC, One State Street Plaza, 7th Floor, New York, NY 10004 as the entity to whom said officer is authorized to mail such process or a true copy thereof.

P.      Bankruptcy

Bankruptcy or insolvency of the **Not-For-Profit Entity** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations under this Policy.

Q.      Headings

The descriptions in the headings of this Policy form no part of the terms and conditions of the coverage under this Policy.

Ironshore Specialty Insurance Company by:

Secretary                                                        President

NFP.002 (10/07 Ed.)                                                        Page 14 of 14

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 1**

**Policy Number:** 003047801
**Insured Name:**  Bell Canyon Association

**Effective Date of Endorsement:** February 01, 2018

# OFAC COMPLIANCE NOTICE

Payment of Loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



## IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

Endorsement # 2

**Policy Number:** 003047801                          **Effective Date of Endorsement:** February 01, 2018
**Insured Name:** Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT ENDORSEMENT

It is hereby understood and agreed as follows:

SERVICE OF SUIT

In the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States.  Nothing in this condition constitutes or shall be understood to constitute a waiver of the right of the Insurer to commence an action in any court of competent jurisdiction within the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Service of process in any such suit may be made upon Ironshore Insurance Services LLC., 28 Liberty, 4th Floor, New York, NY 10005.  In any suit instituted against the Insurer upon this Policy the Insurer will abide by the final decision of such court or of any appellate court in the event of any appeal.

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this Policy, and hereby designates the above named Ironshore Insurance Services LLC., 28 Liberty, 5th Floor, New York, NY 10005 as the entity to whom said officer is authorized to mail such process or a true copy thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

March 9, 2018
Date

IRON.END.ALL.004 (0317)                                                                                          Page 1 of 1

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



## IRONSHORE
### A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

Endorsement # 3

**Policy Number:** 003047801                     **Effective Date of Endorsement:** February 01, 2018
**Insured Name:** Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INSURER STREET ADDRESS CHANGE

There is no change in the mailing address or telephone number shown above.

It is hereby understood and agreed that the street address of the Insurer's main administrative office is changed to:
28 Liberty Street, 5th Floor
New York, NY 10005

The street address for delivery of any Notice to Insurer, Representative of the Insurer and Notice of Claim reporting is changed to:

c/o Ironshore Insurance Services LLC.
28 Liberty Street, 5th Floor
New York, NY 10005

The street address for the Service of Process/Suit provision in this policy is changed to:
c/o Ironshore Insurance Services LLC.
28 Liberty Street, 4th Floor
New York, NY 10005

For the purposes of this endorsement:

1.   "Insurer" means the "Insurer", "Underwriter" or "Company" or other name specifically ascribed in this policy as the insurance company or underwriter for this policy.

2.   "Notice of Claim reporting" means any "notice of claim/circumstance", "notice of loss", "notice of wrongful act", or other such reference in the policy designated for the reporting of claims, loss, acts, occurrences or situations that may give rise or result in loss under this policy.

3.   "Policy" means the policy, bond or other insurance product to which this endorsement is added.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

<u>March 9, 2018</u>
Date

IRON.END.ALL.016 (0317)                                          Page 1 of 1

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



### IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

Endorsement # 4

**Policy Number:** 003047801                                    **Effective Date of Endorsement:** February 01, 2018
**Insured Name:** Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BANKRUPTCY, INSOLVENCY AND CREDITOR EXCLUSION

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is understood and agreed that **Section III Exclusions** is amended to include the following exclusions:

1.  alleging, arising out of, based upon, or attributable to:

    (i)   any **Wrongful Act** which is alleged to have led to or caused, directly or indirectly, wholly or in part, the bankruptcy or insolvency of the **Not-For-Profit Entity**, or to the **Not-For-Profit Entity** filing a petition, or a petition being filed against the **Not-For-Profit Entity**, pursuant to the federal Bankruptcy Code or any similar state law, or the **Not-For-Profit Entity** assigning its assets for the benefit of its creditors; or

    (ii)  the **Not-For-Profit Entity** having sustained a financial loss due, directly or indirectly, wholly or in part, to a **Wrongful Act** of the **Insured**, but only if such **Claim** is made after the **Not-For-Profit Entity** has been determined to be insolvent, or has filed a petition for bankruptcy, or a petition has been filed against it, or the **Not-For-Profit Entity** has assigned its assets for the benefit of its creditors; or

2.  brought by or on the behalf of any creditor or debt-holder of the **Not-For-Profit Entity**, or arising out of any liability (whether alleged or actual) to pay or collect accounts, including but not limited to a **Claim** alleging misrepresentation in connection with the extension of credit or purchase of a debt instrument, or a **Claim** alleging any deterioration in the value of the debt as a result of (wholly or in part) the bankruptcy or insolvency of the **Not-For-Profit Entity**.

3.  brought by or on the behalf of any creditor or debt-holder of the **Not-For-Profit Entity**, or arising out of any liability (whether alleged or actual) to pay or collect accounts, including but not limited to a **Claim** alleging misrepresentation in connection with the extension of credit or purchase of a debt instrument, or a **Claim** alleging any deterioration in the value of the debt as a result of (wholly or in part) the bankruptcy or insolvency of the **Not-For-Profit Entity**.

It is further understood and agreed that **Section III Exclusions**, I. shall be deleted in its entirety and replaced with the following:

I.   which is brought by or on behalf of the **Not-For-Profit Entity** or by any **Insured Person**; provided however, this exclusion shall not apply to:

NFP.END.003 (0614)                                                          Page 1 of 2

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

**(1)** any **Employment Practices Claim** brought by an **Insured Person**, other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of the **Not-For-Profit Entity**;

**(2)** any **Claim** brought by an **Insured Person** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this Policy;

**(3)** any **Claim** made on behalf of the **Not-For-Profit Entity** by a member, an attorney general or other such representative party unless such **Claim** is instigated and continued with the solicitation of, or assistance of, or active participation of, or intervention of, the **Not-For-Profit Entity** or any **Insured Person**;

**(4)** any **Claim** brought by any past director or officer of the **Not-For-Profit Entity** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for the **Not-For-Profit Entity** for at least four (4) years prior to such **Claim** being first made against any person;

**(5)** any **Claim** brought by a director or officer (or equivalent position) of a Not-For-Profit Entity formed and operating in a foreign jurisdiction against such Not-For-Profit Entity any **Insured Person**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof); or

**(6)** any **Claim** brought against an **Insured Person** arising out of or based upon any protected activity specified in any "whistleblower" protection pursuant to any state, local or foreign laws.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

<u>March 9, 2018</u>
Date

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

NFP.END.003 (0614)



## IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 5**

**Policy Number:** 003047801
**Insured Name:** Bell Canyon Association

**Effective Date of Endorsement:** February 01, 2018

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# REGULATORY EXCLUSION

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed that **Section III Exclusions** is amended to include the following exclusion:

alleging, arising out of, based upon, or attributable to any violation of any local, state or federal administrative or regulatory statute, code, rule or regulation, or procedure as well as any **Claim** brought by any local, state or federal governmental body and/or any agency or subdivision thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

March 9, 2018
Date

NFP.END.022 (0614)

Page 1 of 1

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



## IRONSHORE
### A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement # 6**

**Policy Number:** 003047801                                              **Effective Date of Endorsement:** February 01, 2018
**Insured Name:** Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PROFESSIONAL SERVICES EXCLUSION

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed that **Section III Exclusions** is amended to include the following exclusion:

alleging, arising out of, based upon or attributable to the **Not-For-Profit Entity's** or any **Insured Person's** performance of or failure to perform professional services for others, or any act, error or omission relating thereto.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

March 9, 2018
Date

NFP.END.027 (0614)                                                                                    Page 1 of 1



# IRONSHORE
### A Liberty Mutual Company

## IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 7**

Policy Number: 003047801                                          **Effective Date of Endorsement: February 01, 2018**
Insured Name: Bell Canyon Association

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed the following exclusion is added to Section III. Exclusions:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to any **Sexual Misconduct**, child abuse or neglect, including but not limited to the employment, supervision, reporting to the proper authorities, failure to so report or retention of any person.

Section II. Definitions is amended to include the following definition:

"**Sexual Misconduct**" means any lewd, lascivious, licentious, immoral or sexual behavior, sexual conduct, sexual abuse, sexual assault, sexual act or molestation of any kind, intended or unintended, that does or may lead to or culminate in any sexual act against any individual(s).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____                 March 9, 2018
Authorized Representative                                        Date

NFP.END.052 (0615)                                                                    Page 1 of 1



### IRONSHORE
A Liberty Mutual Company

## IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 8**

Policy Number: 003047801
Insured Name: Bell Canyon Association

**Effective Date of Endorsement:** February 01, 2018

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT OR ACT EXCLUSION

It is hereby understood and agreed that, without limiting the effectiveness of exclusions B or C of the Policy, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**, notice, event, investigation or action referred to below (hereinafter "Event"); the prosecution, adjudication, settlement, disposition, resolution or defense of any Event; any **Claim** arising from an Event; or any **Claim** alleging the same Wrongful Act or Related Wrongful Acts, or any fact, circumstance or situation in any way relating to any Event.

Event:

| Claim Number | Claimant Name | Date of Loss | Loss Type | Status |
|---|---|---|---|---|
| 7030101855 | Segal, Aman | 4/18/2016 | Claimaint suing Insured for libel | Closed |
| 7030104537 | David, Chai, Nissim | 9/19/2016 | Breach of fiduciary duties | Open |
| 7030079919 | Abuemeira, Yasser & Artem, Daria | 8/30/2014 | Breach of Contract/Fiducary duty, slander, fraud | Closed |
| 7030071073 | Henderson, Carol | 11/18/2013 | Claimant harassed and hostile work environment | Closed |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative

March 9, 2018
Date

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D863368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



## IRONSHORE
### A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

Endorsement # 9

Policy Number: 003047801                          **Effective Date of Endorsement:** February 01, 2018
Insured Name: Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## THIRD PARTY COVERAGE DELETED

It is hereby understood and agreed that Section II, Definitions, F., is deleted in its entirety and replaced with the following:

F.     "**Employment Practices Claim**" shall mean any **Claim** brought by or on behalf of any past, present or future **Employee** of the **Not-For-Profit Entity** or an **Outside Entity**, or any applicant for employment with the **Not-For-Profit Entity** or an **Outside Entity** alleging an **Employment Practices Wrongful Act**.

It is further understood and agreed that Section III, Exclusions, is amended to include the following:

P.     The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured, brought by or on behalf of any student, patient, member, customer, client or supplier of the Not-For-Profit Entity alleging an Employment Practices Wrongful Act.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



_____          March 9, 2018
Authorized Representative                                 Date

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

NFP.END.055 (11/11 Ed.)                                                         Page 1 of 1



## IRONSHORE
A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement # 10**

Policy Number: 003047801                              **Effective Date of Endorsement:** February 01, 2018
**Insured Name:** Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLLUTION COVERAGE AMENDED
# (INSURING AGREEMENT A ONLY)

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed as respects any **Claim** under **Insuring Agreement A.** of this Policy only, this Policy is amended as follows:

1.  **Section II Definitions** is amended to include the following definitions:

    aa.  **"Cleanup"** means to test for, monitor, clean up, remove, contain, treat, neutralize, detoxify or assess the effects of **Pollutants**.

    bb.  **"Cleanup Costs"** means expenses (and legal and professional fees) incurred in **Cleanup**.

    cc.  **"Continuity Date"** means the effective date of this endorsement.

    dd.  **"Governmental Authority"** means any federal, state or local authority, agency or body in the United States of America, its territories or possessions or any political subdivision thereof, other than the Securities and Exchange Commission, Commodities Futures Trading Commission or any other authority which regulates securities or commodities markets.

    dd.  **"Pollution Condition"** means the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** into or upon, or the presence of **Pollutants** in or upon land, the atmosphere or any watercourse or body of water.

2.  **Section III Exclusions** is amended as follows:

    (a)  Paragraph J. is amended to include the following paragraphs at the end of thereof:

        This exclusion shall not apply to any non-indemnifiable **Loss** arising from a **Claim** made against an **Insured Person**, other than non-indemnifiable **Loss** constituting **Cleanup Costs**, but only if such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured** or the **Not-For-Profit Entity**, or any affiliate of the **Not-For-Profit Entity**.

NFP.END.057 (0614)                                                              Page 1 of 2

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Further provided that for the purposes of the applicability of the coverage provided for a **Claim under Insuring Agreement A.**, the **Not-For-Profit Entity** will be conclusively deemed to have indemnified the **Insured Persons** to the fullest extent that the **Not-For-Profit Entity** is permitted or required to grant such indemnification pursuant to law, common or statutory, or contract or the Charter or By-laws of the **Not-For-Profit Entity** (which are hereby deemed to adopt the broadest provisions of the law which determines or defines such rights of indemnity). The **Not-For-Profit Entity** hereby agrees to indemnify the **Insured Persons** to the fullest extent permitted by law including the making in good faith of any required application for court approval. In no event shall this endorsement be construed to apply to any **Claim** in which the **Not-For-Profit Entity** has indemnified or is permitted or required to indemnify the **Insured Persons**.

(b) It is further understood and agreed that solely in regard to the coverage provided by this endorsement, **Section III Exclusions** shall be amended to include the following exclusions:

    **aa.** alleging, arising out of, based upon, or attributable to the liability of others for a **Pollution Condition** assumed by the **Not-For-Profit Entity** or any **Insured** under any contract or agreement unless such liability would attach in the absence of such contract or agreement;

    **bb.** alleging, arising out of, based upon or attributable to: (1) asbestos or asbestos-containing materials, or (2) acid rain conditions;

    **cc.** for **Cleanup** of **Pollutants** or to recover **Cleanup Costs**;

    **dd.** alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly:

        **(1)** any **Wrongful Act** occurring or **Pollution Condition** existing prior to the **Continuity Date** if as of the **Continuity Date**, the **Not-For-Profit Entity**, any **Insured** or any **Employee** of the **Not-For-Profit Entity** with managerial responsibilities over environmental affairs, control or compliance, knew or could reasonably have foreseen that such **Pollution Condition** or **Wrongful Act** could give rise to any **Claim** against the **Not-For-Profit Entity** or any director, officer or **Employee** thereof; or

        **(2)** any **Pollution Condition** at or originating from a site any part of which, on or before the **Continuity Date**, was listed on the United States Environmental Protection Agency's Comprehensive Environment Response Compensation and Liability Information System ("CERCLIS") or final or proposed National Priorities List or any similar system or list maintained by a **Governmental Authority**.

3.   The coverage provided by this endorsement is specifically excess over any other valid or collectible insurance, and shall only drop down and become primary insurance in the event of exhaustion of such other insurance due to losses paid thereunder.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

March 9, 2018
Date

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D863368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



## IRONSHORE
### A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 11**

**Policy Number:** 003047801                           **Effective Date of Endorsement:** February 01, 2018
**Insured Name:** Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEFINITION OF NOT-FOR-PROFIT ENTITY AMENDED
# (NAMED INSURED ONLY COVERAGE)

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed that **Section II Definitions, N. "Not-For-Profit Entity"** is deleted in its entirety and replaced with the following:

**N.** "Not-For-Profit Entity" shall mean solely the **Not-For-Profit Entity** named in ITEM 1 of the DECLARATIONS.

It is further understood and agreed that **Section III Exclusions** is amended to add the following exclusion:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** which is made or brought by or on the behalf of any **Subsidiary** or any directors or officers thereof or any employees thereof or which is brought by any member, securities holder, an attorney general or other such representative party of any **Subsidiary**, whether directly, derivatively or by class action, unless such **Claim** is instigated and continued totally without the solicitation of, or assistance of, or intervention of, any **Insured Person**, the **Not-For-Profit Entity**, any **Subsidiary** or any directors or officers or employees of such **Subsidiary**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____                    March 9, 2018
Authorized Representative                           Date

NFP.END.060 (0614)                                                      Page 1 of 1



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

Endorsement # 12

**Policy Number:** 003047801
**Insured Name:** Bell Canyon Association

**Effective Date of Endorsement:** February 01, 2018

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BOND EXCLUSION

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is understood and agreed that **Section III Exclusions** is amended to include the following exclusion:

alleging, based upon, arising out of or attributable to the failure to pay any bond, interest on any bond, any debt, financial guarantee or debenture.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
**Authorized Representative**

March 9, 2018
Date

NFP.END.067 (0614)                                                          Page 1 of 1

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D863368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

Endorsement # 13

Policy Number: 003047801                                    Effective Date of Endorsement: February 01, 2018
Insured Name: Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## DEFINITION OF LOSS AMENDED (PUNITIVE DAMAGES DELETED)

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed that **Section II Definitions, L. "Loss"** is deleted in its entirety and replaced with the following:

L.   "**Loss**" shall mean compensatory damages (including back pay and front pay), judgments, settlements, pre-and post-judgment interest, and **Costs of Defense.**

**Loss** shall not include: **(1)** civil or criminal fines or penalties imposed by law; **(2)** taxes; **(3)** any amount for which the **Insured** is not financially liable or which is without legal recourse to the **Insured**; **(4)** employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; **(5)** any liability or costs incurred by any **Insured** to modify any buildings or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an **Employment Practices Claim**; or **(6)** matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

March 9, 2018
Date

NFP.END.068 (0614)                                                                                       Page 1 of 1

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

Endorsement # 14

Policy Number: 003047801                                        Effective Date of Endorsement: February 01, 2018
Insured Name: Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONDOMINIUM, COOPERATIVE, HOMEOWNERS ASSOCIATION AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed that this Policy is amended as follows:

I.   AMENDMENTS TO DEFINITIONS

   A.   **Section II Definitions, E. "Employee"** is deleted in its entirety and replaced with the following:

   "**Employee**" shall mean any past, present or future employee of the **Not-For-Profit Entity**, whether such **Employee** is a supervisor, co-worker or subordinate position, including any part-time, seasonal and temporary employee in their capacity as such. Any person leased to the **Not-For-Profit Entity** shall also be an **Employee**, but only if the **Not-For-Profit Entity** indemnifies such leased person in the same manner as is provided to its permanent employees. Any person hired by contract to perform work for the **Not-For-Profit Entity**, or who is an independent contractor for the **Not-For-Profit Entity**, shall also be an **Employee**, but only if the **Not-For-Profit Entity** indemnifies the person in the same manner as is provided to the permanent employees of the **Not-For-Profit Entity**.  Provided, however, coverage as is afforded under this endorsement with respect to a **Claim** made against an independent contractor shall only apply if such **Claim** is also made and continuously maintained against the **Not-For-Profit Entity**.

   It is further understood and agreed that the coverage provided by this endorsement for independent contractors and leased employees shall not apply to any **Claim** occurring at any time when the independent contractor or leased employee was not contracted to perform work for the **Not-For-Profit Entity**.

   B.   **Section II Definitions, F. "Employment Practices Claim"** is deleted in its entirety and replaced with the following:

   "**Employment Practices Claim**" shall mean any **Claim** brought by or on behalf of any past, present or future **Employee** of the **Not-For-Profit Entity** or **Outside Entity**, or any applicant for employment with the **Not-For-Profit Entity** or **Outside Entity** alleging an **Employment Practices Wrongful Act**. **Employment Practices Claim**

NFP.END.081 (0614)                                                                                  Page 1 of 2

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

shall also mean a **Claim** brought by any customer, supplier, invitee, potential renter or purchaser of apartments or units of the of the **Not-For-Profit Entity**, alleging discrimination, sexual harassment or violation of the civil rights of an individual relating to such discrimination or sexual harassment.

C.  **Section II Definitions, L. "Loss"** shall be amended to include any "Excess Benefit" penalty assessed in the amount of ten percent (10%) by the Internal Revenue Service ("IRS") against any **Insured** for the involvement of management in the award of an Excess Benefit and the **Costs of Defense** attributable thereto. **Loss** shall specifically exclude: (1) any twenty-five percent (25%) penalty assessed by the IRS against an **Insured** deemed to have received an Excess Benefit; (2) **Costs of Defense** incurred to defend any **Insured** if it has been in fact determined that such individual received an Excess Benefit; and (3) any two hundred percent (200%) penalty assessed by the IRS for failure to correct the award of an Excess Benefit. In all events, the assessment by the IRS of a two hundred percent (200%) penalty against any **Insured** shall void ab initio all coverage afforded pursuant to this paragraph.

For purposes of this endorsement, the term "Excess Benefit" means an excess benefit as defined in the Taxpayer Bill of Rights Act, 2, 26 U.S.C. 4958.

II.  AMENDMENTS TO EXCLUSIONS

A.  **Section III Exclusions, D.** is deleted in its entirety and replaced with the following:

alleging, arising out of, based upon or attributable to bodily injury, sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

B.  **Section III Exclusions, M.** is deleted in its entirety and replaced with the following:

alleging, arising out of, or in any way relating to any purchase or sale of securities by the **Not-For-Profit Entity**, **Subsidiary** or affiliate or any **Claim** brought by any securities holder of the **Not-For-Profit Entity** in their capacity as such;

C.  **Section III Exclusions** is amended to include the following exclusions:

1.  brought by, against, or on behalf of the developer of the condominium units, cooperative corporation property or other real or personal property managed by the **Insured** (hereafter the Property), which are brought by or on behalf of the sponsor for conversion of the Property to cooperative or condominium ownership; or alleging any **Wrongful Act** occurring prior to the date of first election of a Board of Directors of which the sponsor or developer of the Property does not elect or appoint a controlling number of Board members;

2.  alleging, arising out of, based upon, attributable to any failure or omission on the part of any **Insured** to effect or maintain adequate insurance;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____          March 9, 2018
Authorized Representative                 Date

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



**IRONSHORE**
A Liberty Mutual Company

## IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 15**

Policy Number: 003047801                                         Effective Date of Endorsement: February 01, 2018
Insured Name: Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WORLDWIDE PROVISION AMENDED
# (US CLAIMS ONLY)

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed that **Section IX General Conditions, F.(2)** Worldwide Provision is deleted in its entirety and replaced with the following:

(2)  Worldwide Provision

The coverage provided by this Policy shall apply to any **Wrongful Act** anywhere in the world, provided however, the **Claim** is made in the United States of America, its territories or possessions.  The term **Insured Person** is deemed to include individuals who serve in equivalent positions in foreign **Subsidiaries**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

March 9, 2018
Date

NFP.END.090 (1014)                                                                                    Page 1 of 1

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



# IRONSHORE
### A Liberty Mutual Company

## IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 16**

**Policy Number:** 003047801
**Insured Name:** Bell Canyon Association

**Effective Date of Endorsement:** February 01, 2018

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADVERTISING, BROADCASTING AND PUBLISHING EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that Section II, Definitions X. **"Wrongful Act"** is amended by deleting subparagraph (5), subsections (c), (d), (e),(f) and(g) thereof in their entirety.

It is further  understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, or attributable to advertising, publishing, or broadcasting activities, including, but not limited to, any **Claim** alleging plagiarism, infringement of copyright, patent, title or slogan, piracy, unfair  competition  and idea misappropriation under an implied  contract, false arrest, detention, imprisonment and malicious prosecution, wrongful entry, eviction or any other invasion of the right of private occupancy, the publication or utterance of a libel or slander or of any other defamatory or disparaging material, or a publication or utterance in violation of the right of privacy of an individual.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

March 9, 2018
Date

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



## IRONSHORE
### A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

Endorsement # 17

Policy Number: 003047801                                       **Effective Date of Endorsement:** February 01, 2018
Insured Name: Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CAPTIVE INSURANCE ENTITY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to the ownership, management, operation or control by the **Not-For-Profit Entity** of any captive insurance entity, including but not limited to any **Claim** alleging the insolvency or bankruptcy of the **Not-For-Profit Entity** was a result of such ownership, management, operation or control.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____                    March 9, 2018
Authorized Representative                             Date

NFP.EX.005
(10/07 Ed.)                                                          Page 1 of 1

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement # 18**

**Policy Number:** 003047801                              **Effective Date of Endorsement:** February 01, 2018
**Insured Name:** Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COMMISSION EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, or attributable to any:

(i)     Payment, commission, gratuity, benefit or any other favor to or for the benefit of any full or part-time domestic or foreign government or any armed services official, agent, representative, employee or any member of their family or any entity with which they are affiliated; or

(ii)    Payment, commission, gratuity, benefit or any other favor to or for the benefit of any full or part-time official, director, agent, partner, representative, principal shareholder, or owner or employee, or "affiliate" (as that term is defined in The Securities Exchange Act of 1934, including any officer, director, agent, owner, partner, representative, principal shareholder or employee of such affiliate) of any customer of the **Not-For-Profit Entity** or any member or any entity with which they are affiliated; or

(iii)   Political contribution, whether domestic or foreign.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative

March 9, 2018
Date

NFP.EX.006
(10/07 Ed.)

Page 1 of 1

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 19**

Policy Number: 003047801                                   **Effective Date of Endorsement:** February 01, 2018
**Insured Name:** Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MEDICAL MALPRACTICE EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to medical or professional malpractice including, but not limited to, the rendering or failure to render of medical or professional service, treatment or advice.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____              <u>March 9, 2018</u>
Authorized Representative                              Date

NFP.EX.021                                                          Page 1 of 1
(10/07 Ed.)

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 12203040B63368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



## IRONSHORE
### A Liberty Mutual Company

**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement # 20**

**Policy Number:** 003047801                                    **Effective Date of Endorsement:** February 01, 2018
**Insured Name:** Bell Canyon Association

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.      alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly the hazardous properties of nuclear material, including but not limited to:

(1)      nuclear material located at any nuclear facility owned by, or operated by or on behalf of, any **Insured**, or discharged or dispersed therefrom; or

(2)      nuclear material contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any **Insured**; or

(3)      the furnishing by any **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

(4)      Claims for damages to the **Not-For-Profit Entity** or its shareholders alleging, arising out of, based upon, or attributed to, or in any way involving, directly or indirectly, the hazardous properties of nuclear material.

B.

(1)      which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or

(2)      with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this Policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

NFP.EX.023                                                                                                            Page 1 of 2
(10/07 Ed.)

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID: 03/4/22 2:16 PM TOTAL: 435.00 TYPE: EFT

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

(a)     any nuclear reactor,

(b)     any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)     any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)     any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative

March 9, 2018
Date

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

Endorsement # 21

Policy Number: 003047801
Insured Name: Bell Canyon Association

Effective Date of Endorsement: February 01, 2018

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEFINITION OF EMPLOYEE AMENDED
# (DELETE INDEPENDENT CONTRACTOR AND LEASED PERSON)

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT ENTITY AND DIRECTORS, OFFICERS LIABILITY INSURANCE POLICY**

It is hereby understood and agreed that **Section II Definitions**, E. "**Employee**" is deleted in its entirety and replaced with the following:

E.   "**Employee**" shall mean any past, present or future employee of the **Not-For-Profit Entity**, whether such **Employee** is a supervisor, co-worker or subordinate position, including any full-time, part-time, seasonal and temporary employee in their capacity as such.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

March 9, 2018
Date

NFP.END.064 (0614)                                                                                      Page 1 of 1

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



## IRONSHORE
### A Liberty Mutual Company

### IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement # 22**

Policy Number: 003047801
Insured Name: Bell Canyon Association

**Effective Date of Endorsement:** February 01, 2018

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LENDERS LIABILITY EXCLUSION

It is hereby understood and agreed that Section III. EXCLUSIONS is amended by the addition of the following:

based upon, arising out of, or relating to, whether directly or indirectly, the purchase, sale, origination, participation, grant, commitment, restructuring, termination, transfer, repossession or foreclosure of any loan, lease, or extension of credit, or failure to do any of the foregoing, or the rendering of advice in connection with any loan, lease or extension of credit;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

**March 9, 2018**
Date

NFP.MANU.047-8 (0217)

Page 1 of 1

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID: 03/4/22 2:16 PM TOTAL: 435.00 TYPE: EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

# EXHIBIT B

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

Endorsement # 8

Policy Number: 003047801
Insured Name: Bell Canyon Association

Effective Date of Endorsement: February 01, 2018

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT OR ACT EXCLUSION

It is hereby understood and agreed that, without limiting the effectiveness of exclusions B or C of the Policy, the Insurer shall not be liable to make any payment for Loss in connection with any Claim, notice, event, investigation or action referred to below (hereinafter "Event"); the prosecution, adjudication, settlement, disposition, resolution or defense of any Event; any Claim arising from an Event; or any Claim alleging the same Wrongful Act or Related Wrongful Acts, or any fact, circumstance or situation in any way relating to any Event.

Event:

| Claim Number | Claimant Name | Date of Loss | Loss Type | Status |
|---|---|---|---|---|
| 7030101855 | Segal, Aman | 4/18/2016 | Claimant suing insured for libel | Closed |
| 7030104537 | David,-Chai, Nissim | 9/19/2016 | Breach of fiduciary duties | Open |
| 7030079919 | Abuemeira, Yasser & Artem, Daria | 8/30/2014 | Breach of Contract/Fiducary duty, slander, fraud | Closed |
| 7030071073 | Henderson, Carol | 11/18/2013 | Claimant harassed and hostile work environment | Closed |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative

March 9, 2018
Date

NFP.END.054 (11/11 Ed.)

Page 1 of 1

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

# EXHIBIT C

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D863868 DATE PAID.: 03/4/22 2:16 PM TOTAL.: 435.00 TYPE.: EFT

FILE COPY

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304DB86368 DATE PAID: 03/4/22 2:16 PM TOTAL: 435.00 TYPE: LEFT

1  WALTER J. LACK, SBN 57550
2  DANIEL G. WHALEN, SBN 126487
   ANDREW M. JACOBSON, SBN 286330
3  **ENGSTROM, LIPSCOMB & LACK**
   10100 SANTA MONICA BLVD., STE. 1200
4  LOS ANGELES, CA 90067-4113
   TELEPHONE: (310) 552-3800
5  FACSIMILE: (310) 552-9434

6
   Attorney for Plaintiffs
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF VENTURA

10

11  NISSIM DAVID-CHAI, an individual; 171    ) Case No.: 56-2016-00486775-CU-WMVTA
12  STAGECOACH, LLC , a California limited   )
    liability company; O&N Construction, LLC, a )
13  California limited liability company; OFARIT )
    DAV & CON, INC., A California corporation, ) **SECOND AMENDED COMPLAINT FOR:**
14                                            )
              Plaintiffs                      ) **ALTERNATIVE AND/OR**
15                                            ) **PEREMPTORY WRIT OF MANDATE;**
                                              ) **BREACH OF CONTRACT;**
16              v.                            ) **BREACH OF THE IMPLIED**
                                              ) **COVENANT OF GOOD FAITH AND**
17  BELL CANYON ASSOCIATION, INC., a         ) **FAIR DEALING**
18  California nonprofit corporation, doing   ) **NEGLIGENCE**
    business as/operating as Bell Canyon Home ) **INTENTIONAL INTERFERENCE WITH**
19  Owners Association; ERIC WOLF,           ) **CONTRACTUAL RELATIONS**
    individually and as President of Bell Canyon ) **INTENTIONAL INTERFERENCE WITH**
20  Home Owners Association; STEVEN KENT,    ) **PROSPECTIVE ECONOMIC**
    individually and as Member of Bell Canyon ) **ADVANTAGE;**
21  Board of Directors; PETER CARNIGLIA,     ) **NEGLIGENT INTERFERENCE WITH**
22  Individually and as member of the Bell Canyon ) **PROSPECTIVE ECONOMIC**
    Architectural Committee, Does 1-200,     ) **RELATIONS;**
23  inclusive,                               ) **DEFAMATION.**
                                              )
24            Defendants.                     )
                                              )
25  _____ ) Complaint filed:  September 19, 2016

26

27

28

421679                    SECOND AMENDED COMPLAINT
                                    i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID: 03/4/22 2:16 PM TOTAL: 435.00 TYPE : EFT

<u>TABLE OF CONTENTS</u>

Pages

I.    Parties ........................................................................... 1

II.   Factual Background ...................................................... 2

Wolf and Co-Defendants Used Their Positions of Authority at Bell Canyon     5
To Extort Money and Services, Grant Favors Illegally and Otherwise Abuse
Positions of Trust and Fidelity

   A.   Wolf Attempts to Extort Improper and Illegal Compensation from     5
Plaintiff for Allegedly Using His Position as a Member of the HOA
Board of Directors to Assist Plaintiff with Board Issue with Respect
To Projects on which Plaintiff Was Working

      Wolf Asks Plaintiff to Help Re-Design and Remodel His Home     5
And Perform a Large Grading Job on his Property for Free as
"Compensation" for Wolf's Assistance while on Board

      Wolf Asks Plaintiff to Use His Luxury RV on a Vacation For     7
Free as Compensation for Wolf's Assistance with Board Issues

      Wolf Asks Plaintiff to Build a $30,000.00 Retaining Wall on     7
His Property without Any Ventura County Permits or Architectural
Committee Approval

      Wolf Commandeers a Tractor from One of Plaintiff's Projects     8
For Use on His Own Property without Plaintiff's Knowledge or
Compensation

      Wolf Renews His Request that Plaintiff Perform Lot Design     8
And Major Grading Work on His Property for Free as Compensation
For Wolf's Assistance with Board Issues

      Wolf Asks Plaintiff to Move Extra Dirt from Projects Plaintiff     8
Was Grading At 76 and 80 Saddlebow to His Property for Free

   B.   Defendants Illegally and In Violation of Act and Fiduciary Duty     9
To Members Demonstrate Control of Board by Awarding Friends
Valuable Construction Projects in Bell Canyon Paid for With HOA
Funds without Proper Bidding and Without Any Required Approvals

421679

SECOND AMENDED COMPLAINT

ii

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Defendants Award Construction of a Community Gym to
Their Friends and Proceeded to Build the Gym Illegally
Without Permits at HOA Expense; Construction Was Shut
Down by County Officials .......... 9

Defendants Award Their Friend CARLIGNIA Position as
Superintendent of Construction of an Overpriced Gate for
Bell Canyon without Proper Bids .......... 10

C.    Defendants Retaliate against Plaintiff for Refusing to Compensate
President of Board Wolf by Performing Major Construction Work on
Wolf's Property and In Doing Other Acts Demanded by Defendants as
Recognition of Defendants' Power .......... 11

Defendants Causes Stop Work Notices to Be
Served on Plaintiff's Projects at 76 and 80 Saddlebow .......... 11

Defendants Thereafter Cause Stop Work Notices to be Served
On Plaintiff's Projects at 80 Saddlebow, 84 Saddlebow and
283 Bell Canyon Road Based on Improper Claims and Invalid
Assertion that Defendants Can Stop All Sites for Claimed
Violation at One .......... 12

Defendants Commence a Campaign of Defamation and
Discrimination in HOA Meetings to Impugn Plaintiff's
Personal and Business Reputation .......... 16

Defendants Illegally Assess Plaintiff by Requiring Him
To Pay Unsupported and Unnecessary Fees and Costs of $20,000
Per project, Not Required of any Other Builder, as Part of their
Effort to Punish Him .......... 17

Defendants Illegally Cause Stop Work Order to Be Served
On Plaintiff for His Project at 67 Ranchero Road for Proper Lot
Preparation Procedures .......... 18

Defendants Cause a Second Stop Work Notice to be served
On Plaintiff's Project at 67 Ranchero in Retaliation for
Plaintiff's Refusals and in Show of Power to Illegally Punish
Plaintiff in Lawful Activities Approved by County of Ventura .......... 20

Defendants Interfere with Plaintiff's Right to Sell Property
And Improperly Block Plaintiff's Sale of 283 Bell Canyon
Road .......... 24

421679

SECOND AMENDED COMPLAINT

iii

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

|  |  |  |
|---|---|---|
| | Defendants Intentionally Interfere with Contractual Relations Again by Causing Plaintiff to Lose His Projects at 109 Buckskin And 9 Wagon Lane | 25 |
| III. | First Cause of Action | 26 |
| | BRIEF FACTUAL SUMMARY FOR ISSUANCE OF WRIT | 28 |
| IV. | Second Cause of Action | 33 |
| V. | Third Cause of Action | 40 |
| VI. | Fourth Cause of Action | 44 |
| VII. | Fifth Cause of Action | 47 |
| VIII. | Sixth Cause of Action | 50 |
| IX. | Seventh Cause of Action | 53 |
| X. | Eighth Cause of Action | 55 |
| PRAYER FOR RELIEF | | 56 |
| REQUEST FOR TRIAL BY JURY | | 58 |

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

COME NOW Plaintiffs who complain and allege against Defendants, and each of them, as follows:

## I.

## THE PARTIES

1.     Plaintiff NISSIM DAVID-CHAI ("DAVID-CHAI" or Plaintiff) is a resident of the County of Ventura, State of California.

2.     Plaintiff 171 Stagecoach, LLC ("171 Stagecoach LLC") is a California limited liability company whose principal place of business is located in the County of Ventura, State of California.

3.     Plaintiff O&N Construction, LLC, ("O&N Construction LLC") is a California limited liability company whose principal place of business is located in the County of Ventura, State of California.

4.     Plaintiff Ofarit Dav & Con, Inc. ("Ofarit") is a California Corporation whose principal place of business is located in the County of Ventura, State of California. It is the assignee of the General Contractor's License, No. 963926 issued to Plaintiff DAVID-CHAI.

5.     At all times herein mentioned, Defendant BELL CANYON ASSOCIATION, INC., was a corporation conducting itself and doing business/operating as "Bell Canyon Home Owners Association" ("the HOA"), a California nonprofit corporation whose principal place of business is located in the County of Ventura, State of California.  Plaintiff is informed and believes and thereupon alleges that at all relevant times, HOA was acting as a quasi-governmental entity, and overseeing the development and operation of the area commonly known as Bell Canyon.  Its approximately 700 members own real property within the geographic area of Bell Canyon, and it is governed by a Board of Directors, elected by the members. There are recorded Conditions, Covenants, and Restrictions (CC&Rs) pertaining to the ownership and development of the Bell Canyon real property.

6.     Defendant ERIC WOLF ("WOLF") is an individual residing in the County of Ventura, State of California.  WOLF is, and at all times herein mentioned was, president of Defendant BELL CANYON ASSOCIATION, INC. Board of Directors.

---

421679

SECOND AMENDED COMPLAINT
1

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

7.     Defendant STEVEN KENT ("KENT") is an individual residing in the County of Ventura, State of California.  KENT is, and at all times herein mentioned was, a member of the BELL CANYON ASSOCIATION, INC. Board of Directors.

8.     Defendant PETER CARNIGLIA ("CARNIGLIA") is an individual residing in the County of Ventura, State of California.  CARNIGLIA is, and at all times herein mentioned was, a member of the Architectural Committee of Defendant BELL CANYON ASSOCIATION, INC.

9.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein designated by fictitious names DOES 1 through 200, inclusive, are unknown to Plaintiffs.  Plaintiffs therefore sue said Defendants by such fictitious names.  When the true names and capacities of said Defendant have been ascertained, Plaintiffs will amend this Complaint by naming them accordingly.

10.    Plaintiffs are informed and believe and thereon allege that at all times mentioned herein Defendants and each of them were and are the agents, servants, representatives and employees of each and every other Defendant herein and acting within the course and scope of that agency, service, representation or employment.  Plaintiffs further allege that all Defendants sued herein are jointly, severally and concurrently liable and responsible for all damages suffered by Plaintiffs under the causes of action hereinafter set forth.

## II.

## FACTUAL BACKGROUND

11.    Plaintiff DAVID-CHAI (hereinafter Plaintiff or DAVID-CHAI) is, and at all times herein mentioned was, a general building contractor duly licensed and in good standing with the State of California.  His contracting business is operated under the name of Ofarit and O&N.  Beginning in approximately 2000 and continuing to the present, DAVID-CHAI has purchased land in Bell Canyon and, as an owner-builder, or has been retained as a contractor/superintendent by other lot owners, and has constructed 14-15 luxury homes therein. Plaintiff has been one of the premier builders and developers of home sites and homes in Bell Canyon during that period. His unique skills involve not only site and lot preparation but also

SECOND AMENDED COMPLAINT
2

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

design, development and consulting in the construction and/or remodeling of the residences at Bell Canyon. He is and was very familiar with and always sought and obtained all necessary approvals from the HOA and the Architectural Committee of the HOA for each of the homes he has worked on and for all the work performed by him at Bell Canyon. At all times, the manner of his ownership, supervision and construction of homes was appropriate and well recognized by Defendants, and each of them. At all relevant times between 2000 to the present, Plaintiff had followed all the Defendants rules and regulations concerning obtaining approval for all necessary grading, lot preparation and construction work, and any necessary changes and additions thereto, as demanded by Defendants for such work in the CC&Rs and rules and regulations, which previously had been reasonably enforced. In addition, Plaintiff has at all times used professional engineers, architects, designers, soil engineers, geological engineers, landscape engineers and other trades in the grading/lot preparation and construction work done in Bell Canyon in the performance of his professional activities. He at all times was a highly sought-after individual by member lot owners who wanted his professional skills and/or residential projects. At no time had Plaintiff's work been unacceptable or unable to be revised based upon changes in the sites or other requirements by Defendants, including its Architectural Committee, as part of the normal process of site preparation and building in a rural hilly and rocky environment such as Bell Canyon, prior to 2014.

12.     Defendant HOA has, as a quasi-governmental non-profit corporation, operated as a Common Interest Development (Civil Code §4000 et seq., the Act) which governs the additional Covenants, Conditions and Restrictions, By-Laws and other rules and regulations adopted by the HOA concerning the ability of the members, as lot owners, including but in no manner limited to Plaintiff, to develop and build upon their own lots in Bell Canyon. Said CC&Rs, By-Laws, and other rules and regulations are required to be enforced in a fair, reasonable, non-discriminatory manner and not to deny said members the ability to otherwise build upon their own property in a reasonable and appropriate fashion. Any discretion that is vested with Defendants, and each of them, was to be exercised in a manner restricted to the reasonable means to accomplish the stated goals and purposes of any of Defendant HOA's

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1  CC&Rs, By-Laws and rules and regulations not to effect a punitive taking of any member's real

2  property and/or the ability to develop the members own real property located in Bell Canyon.

3      13.    The purpose of the CC&Rs in the Defendant HOA is to allow for the appropriate

4  and orderly development of the real property in Bell Canyon covered by their association, and to

5  allow for assessments and maintenance of the members lots for use in common areas or as

6  allowed by law.  The purpose of Act is for the common business affairs and management of the

7  community by the Association in such a development for those purposes.  The HOA is

8  empowered to adopt rules and regulations, including those related to architectural reviews.  The

9  Board of Directors (Board) is a non-paid position which is headed by the President of the Board.

10  The Board is authorized to appoint committees, including but not limited to the Architectural

11  Committee at Bell Canyon, whose powers are advisory to the Board. Defendants were required

12  by the CC&Rs to adopt reasonable and objective standards for the development of any

13  residential real property, and to provide same to the members of the association, of which

14  Plaintiff was a member.

15      14.    Notwithstanding such requirement, objective standards were not in fact

16  promulgated regarding many areas allegedly supervised by the Architectural Committee, which

17  is in direct contradiction of said requirement.  The By-Laws and Architectural Committee

18  Standards require the Architectural Committee to meet twice per month.  This would allow for

19  issues (such as those presented by the continuing Stop Notices issued to Plaintiff) to be resolved

20  as quickly as possible to prevent further loss and injury and undue delay.  Notwithstanding this

21  requirement, at all times herein relevant, the Architectural Committee did not meet as required

22  by their own regulations, but only once per month.

23      15.    The CC&Rs gave the Architectural Committee the ability to disapprove any

24  development based upon the Architectural Committee members "reasonable dissatisfaction" with

25  any of the proposed plans or amendments thereto.  This alleged standard is unreasonable,

26  nebulous, fails to provide any rational or objective standard for the approval or disapproval of

27  any such submission, and vests improper authority and discretion in the Architectural Committee

28  and the Board, as well as allows Defendants to effect a taking of the members', including

1    Plaintiff's, real property without compensation through the unreasonable and improper denial of

2    any changes to the real property or by unreasonable and unnecessary limitations being placed on

3    such use for any requested change.

4         16.      In approximately 2013, WOLF was elected president of the HOA and has been re-

5    elected each year, and served in that position continuously, from then to the present time. Prior

6    to that time, at all relevant times he was a member of the Board. Pursuant to the current HOA's

7    CC&R there are nine members of the Board of Directors of the HOA who serve three year terms.

8    In 2012, Defendant STEVEN KENT ("KENT") was elected to the Board. At or around early

9    2015, CARNIGLIA was appointed by the Board to the Architectural Committee, and at all times

10    thereafter has been a voting member thereof. There are three voting members of the

11    Architectural Committee who are appointed by the Board for one year terms. The function of

12    the Architectural Committee is supposed to be primarily an aesthetic one, nor does it have the

13    authority or expertise to make determinations of a technical nature concerning the feasibility or

14    the safety of a proposed work. Notwithstanding this, the Architectural Committee has acted in a

15    highly technical manner and asserted a right to refuse technical changes otherwise approved by

16    the County of Ventura Public Works Dept. in regard to changes requested by Plaintiff, and other

17    members of the HOA, in excess of their expressed powers and in derogation of these members'

18    rights to seek to develop their own real property after Defendants have already done so.

19    <u>**WOLF AND CO-DEFENDANTS USED THEIR POSITIONS OF AUTHORITY AT**</u>

20       <u>**BELL CANYON TO EXTORT MONEY AND SERVICES, GRANT FAVORS**</u>

21    <u>**ILLEGALLY AND OTHERWISE ABUSE POSITIONS OF TRUST AND FIDELITY**</u>

22    A.     <u>**Wolf Attempts to Extort Illegal Compensation from Plaintiff for Allegedly Using**</u>

23        <u>**His Position as a Member of the HOA Board of Directors to Assist Plaintiff with**</u>

24        <u>**Board Issues with Respect to Projects on Which Plaintiff Was Working**</u>

25           *Wolf Asks Plaintiff to Redesign and Remodel His Home*

26        *And Perform a Large Grading Job on his Property for Free*

27         *As Compensation for Wolf's Assistance While On Board*

28

---

421679

SECOND AMENDED COMPLAINT

5

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02-55-13 PM

CASE #: 56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

17.     In or about 2012, while WOLF was just a member of the Board of Directors of the HOA (Board) but before he was elected president, he asserted that he came to the assistance of Plaintiff concerning a claim that needed to be resolved before the Board of Directors of Defendant HOA, with respect to one of Plaintiff's properties, 44 Silver Spur, at Bell Canyon. Plaintiff did not seek this assistance nor discuss this matter with WOLF at any time other than as a Member in noticed meetings of the Board or as authorized by the Board's inspection process.

18.     Thereafter, after the resolution of the matter favorable to Plaintiff, WOLF approached Plaintiff, and repeatedly stated and claimed to Plaintiff that he had expended "many hours" assisting him, implying that Plaintiff should thereafter compensate him therefor, even though it would be improper and a violation of law for WOLF, as a Board member, to accept compensation from others for his work on the Board. (Board members serve without pay pursuant to the By-Laws of the HOA and the Common Interest Development Act.)

19.     Notwithstanding that Plaintiff never asked for WOLF'S assistance in the 44 Silverspur Rd. issue, in the spring of 2013, WOLF came to Plaintiff and asked Plaintiff to help him remodel his home in Bell Canyon and perform a large grading job on his property, implying Plaintiff should do it for free.  Plaintiff has a well-deserved reputation for being a very good developer/builder, and a specialist in grading and lot preparation of the uneven, hillside lots in Bell Canyon owned by the members, including WOLF.  For this type of work Plaintiff would have normally received a consulting fee of $9,000.00 per month, as well as any additional fee for the actual work if performed by him.  WOLF asked for Plaintiff's help many, many times, not less than 25-30, to design and help WOLF plan his home and lot for an addition.  Plaintiff felt required to provide this assistance as requested by WOLF based upon his continuing insistence and repeated claims of his assistance that Plaintiff should "be mindful of."  However, thereafter WOLF asked Plaintiff to do the grading job at his lot and the work which would entail Plaintiff and his workers do approximately $350,000.00 in land moving and compaction taking six months, all without compensation.  Plaintiff refused this request to work for free.  In order to not insult WOLF, based upon his position as a member of the Board,  Plaintiff offered to do this work without compensation (waive his $9,000.00 per month fee) but for WOLF to pay for the

421679

SECOND AMENDED COMPLAINT

6

workers' pay and equipment rental costs and charges associated with this six month job, but WOLF refused that offer. Then, after WOLF became President of the HOA,

### Wolf Asks Plaintiff to Use His Luxury RV on a Vacation For Free As
### Compensation for Wolf's Assistance with Board Issues

20.    WOLF came to Plaintiff after May 2013, and asked Plaintiff if he could "use" Plaintiff's personal luxury RV for a week vacation and offered Plaintiff a check for $7,000, the normal rental fee for this personal property, with the proviso that Plaintiff would cash the check but then give the cash back to WOLF. Plaintiff refused to engage in such subterfuge. Thereafter, due to the almost daily calls by WOLF regarding the RV, Plaintiff felt pressured and took the RV to his home, at the direction of WOLF. WOLF knew that his actions were improper, and this was done so the members would not see WOLF taking the RV from Plaintiff's lot in Bell Canyon as Plaintiff resides in Oak Park, not Bell Canyon. WOLF then took the RV for a week and never compensated Plaintiff therefor at all.

### Wolf Asks Plaintiff to Build a $30,000.00 Retaining Wall on His Property For Free
### Without Ventura County Permits or Architectural Committee Approval

21.    In June and July of 2013, WOLF asked Plaintiff to build a retaining wall along the parking area on his property without any permits from Ventura County nor approvals by the

22.    Architectural Committee, as he had not even submitted this work to the Architectural Committee, all for free. An Architectural Committee submission was a requirement of any type of change or improvement to any lot or home in Bell Canyon, which WOLF knew. Furthermore, the fair market value of this work by Plaintiff to another member would have been approximately $30,000.00. Plaintiff, as a licensed contractor, refused. Notwithstanding Plaintiff's refusal, WOLF thereafter went to Plaintiff's construction site and took supplies, a tractor, and even used Plaintiffs own workers to then build this non-permitted and non-approved wall at his property. Plaintiff, in an attempt not to cause problems with WOLF as a result of WOLF's position as Board President as well as his reputation as being vindictive, did not seek compensation for these acts. The value of the materials taken and used by WOLF was $12,100.00.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

### *Wolf Commandeers a Tractor from One of Plaintiff's Projects*
### *For Use on His Own Property without Plaintiff's Knowledge or Compensation*

23.     In 2014, WOLF, without Plaintiff's knowledge or consent, commandeered a tractor from one of Plaintiff's properties grading sites without telling or advising Plaintiff and then used it on his property to do grading and lot preparation work without compensating Plaintiff therefor.  This was not even Plaintiff's tractor, but one of the soils engineers hired by Plaintiff, who was thereafter required to go to WOLF's house to pick up his own tractor (that Plaintiff was paying the daily rental for) after WOLF said he was through with it.

### *Wolf Renews His Request that Plaintiff Perform Lot Design and Major Grading Work*
### *On His Property for Free as Compensation for Wolf's Assistance with Board Issues*

24.     In 2014, WOLF renewed his request for Plaintiff to perform the lot design and major grading work on his property, and specifically asked Plaintiff to do it for free.  Again, because it was a six-month, $350,000 job, Plaintiff could not agree to the request, but again offered to waive his supervisory fee for such work of $9,000 per month and allow the use of his equipment for no fee, with WOLF paying all other costs.  WOLF again refused this offer by Plaintiff.

### *Wolf Asks Plaintiff to Move Extra Dirt from Projects Plaintiff Was Grading*
### *At 76 and 80 Saddlebow to His Property for Free*

25.     WOLF approached Plaintiff regarding his property at 80 Saddlebow and his neighbor at 76 Saddlebow and proposed that they move all the extra dirt generated by Plaintiff's grading of their land to his (WOLF's) property (to fill in gaps that existed on WOLF'S property that he had been trying to prevail upon Plaintiff to do the work on) as he asserted he could, as President of the Board, obtain a special permit and approvals from the Architectural Committee for stack piles (the form of moving the fresh dirt and not compacting it as would normally have been required by Defendant's Rules and Regulations.)  WOLF further stated that any necessary permit and submissions to the Architectural Committee be put under the owner of 76 Saddlebow so no one would suspect they (WOLF and DAVID-CHAI) were working together since they were "friends."  Plaintiff agreed to do so on the condition that WOLF pay all the

421679

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D863368 DATE PAID: 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1    costs and be fully responsible for removing or compacting the dirt at his lot.  WOLF refused this

2    proposal.

3         26.    Thereafter, instead of moving any extra dirt from his lot, Plaintiff, after receiving

4    permission from the Ventura County Public Works Agency, pushed the excess dirt down the hill

5    onto his own property and compacted it in accordance with the County approved change order

6    and Defendant's requirements.

7         27.    These continuing request for extortion-type activities made by WOLF to Plaintiff

8    made Plaintiff uneasy and very concerned, as he understood that WOLF had retaliated before

9    against other builders/developers in Bell Canyon who did not do as he requested, including

10   Dennis Platt.  Plaintiff felt he was being placed in an untenable position by the actions of

11   WOLF. In addition to the individual actions of WOLF, WOLF had marshalled a group of fellow

12   Board members who followed his requests and desires implicitly, and WOLF had placed on the

13   Architectural Committee his own "hand-picked" group that, even though WOLF was not a

14   voting member of the Architectural Committee, would follow his stated desires in regard to

15   their actions as well in the review, assessment and approval/disapproval of any request for

16   changes to the members lots and residences.

17      B.   **Defendants Illegally and In Violation of Act and Fiduciary Duty to Members**

18        **Demonstrate Control of Board By Awarding Friends Valuable Construction**

19        **Projects in Bell Canyon Paid for With HOA Funds without Proper Bidding**

20        **and Without Any Required Approvals**

21        *Defendants Award Construction of a Community Gym to Their Friends*

22        *And Proceeded to Build the Gym Illegally without Permits at HOA Expense;*

23        *Construction Was Shut Down by County Officials*

24        28.    As a result of the actions of WOLF, and his repeated threats and actions against

25   others in the past, Plaintiff was concerned about WOLF's powers to affect his numerous projects

26   at Bell Canyon.  This power was shown by the manner in which WOLF, with the express

27   knowledge and approval of KENT and others on the Board, had improperly and illegally  done

28   work on a Bell Canyon community gym funded by HOA funds from assessments to all members.

The Board, prompted by WOLF, KENT and Does 1-10 voted to build a community gym at Bell Canyon. Instead of advertising this project and advising the members by holding the matter out for public bid as required, WOLF awarded the construction contract to a "friend" of his, without Board approval and in violation of the CC&Rs of the HOA and the Act. WOLF'S actions were thereafter validated by an improper vote of his co-defendants' and Board members, KENT and Does 1-10 he controlled. The gym was built without any required Architectural Committee review and approvals, without any Ventura County Public Works building permits and with forged and fraudulent "bids" being prepared by Defendants WOLF, KENT, and Does 1-10, to try and cover up for work already done by their "friend" and for work which required such a bid but which was never actually received. This construction was thereafter closed down by the County of Ventura when they found out about the illegal construction, and cost the HOA and the members (including Plaintiff) thousands in additional fees, costs and repairs for the Defendant's improper and unauthorized construction and attempts to hide these acts from the members, including Plaintiff.

### Defendants Award Their Friend CARLIGNIA Position as Superintendent of Construction of an Overpriced Gate for Bell Canyon without Proper Bids

29.     In addition to the gym, Defendants on the Board to approve a "supervisory" fee to be paid to Architectural Committee member CARLIGNIA of $5,000.00 per month for his working on the overpriced gate WOLF, KENT, and the other Board members controlled by WOLF agreed to build at Bell Canyon. This job was not submitted to the other members for their approval and open bid, or for open bidding by others, and was a form or payment to CARNIGLIA by WOLF for doing his bidding in regard to Plaintiff's matter, and in other ways to be proven at the time of trial.

30.     The above acts are in addition to the same abuses of power shown by WOLF, KENT, CARNIGLINA, and Does 1-10, against Plaintiff in their acting to discriminate, harm and punish Plaintiff and other members who did not agree to their extortion or to their demands for illegal and improper payments, services, or other consideration and make an example of them to the members. Plaintiff will amend this complaint to show other acts in furtherance of a

421679

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

conspiracy between Defendants, and as a further demonstration of their modus operandi in their abuse of their lawful positions and fiduciary duties owed to Plaintiff and the other members of the HOA.

C. **Defendants Retaliate against Plaintiff for Refusing to Compensate President of Board Wolf by Performing Major Construction Work on Wolf's Property and In Doing Other Acts Demanded by Defendants as Recognition of Defendants' Power**

*Defendants Cause Stop Work Notices to Be Served*

*On Plaintiff's Projects at 76 and 80 Saddlebow*

31.     As indicated above, Plaintiff, in May, 2014, as the owner builder of 80 Saddlebow in Bell Canyon, commenced grading work on his property and his neighbor's property at 76 Saddlebow, cutting a hill and rendering it flat for building a house thereon.  Also as indicated above, WOLF asked Plaintiff to move all excess dirt from the grading to his (WOLF's) property. Plaintiff agreed to do so on the condition that WOLF pay all the costs and be fully responsible for removing or compacting the dirt at his lot.  WOLF refused this proposal.

32.     Shortly thereafter, WOLF approached Plaintiff and advised him that he was going to "hurt Plaintiff and his business," implying that, since Plaintiff was not going to do what WOLF asked, WOLF would cause him problems with his development of any properties in Bell Canyon.  One week later, on June, 2, 2014, Plaintiff received a Stop Work Notice based on a complaint from the HOA/Architectural Committee that Plaintiff pushed the dirt onto his property without a permit from the Architectural Committee

33.     Plaintiff immediately met with WOLF and inquired why the latter had caused his project to be stopped by his Co-Defendants on the Architectural Committee.   WOLF told Plaintiff he did "not respect what he [WOLF] had done and was still doing for him" and by not doing what he demanded and that he was "not asking Plaintiff to do very much."  Plaintiff reiterated that he was unwilling to cut and grade WOLF's lot and then truck all that dirt to WOLF's lot since it involved a substantial amount of money and time and effort for which WOLF should be partially responsible.  The two then reached an agreement to "not be on good

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #: 56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID: 03/4/22 2:16 PM TOTAL: 435.00 TYPE: EFT

terms" and WOLF promised he would neither help nor hurt Plaintiff's business in Bell Canyon in the future.

34.     A week later, the Stop Work Notice was removed and Plaintiff was allowed to continue for no expressed reason.

**_Defendants Thereafter Cause Stop Work Notices to be Served on Plaintiff's projects_**
**_At 80 Saddlebow, 84 Saddlebow and 283 Bell Canyon Road Based on Improper Claims_**
**_And Invalid Assertion that Defendants Can Stop All Sites for Claimed Violation at One_**

35.     In or around 2013, 2014 and early 2015, Plaintiff had acquired additional lots as part of his business to develop and sell high quality family residences in Bell Canyon, as he had done for the prior 15 years.  These properties were located at 283 Bell Canyon Road and 67 Ranchero Road.  Both properties required substantial grading and leveling to allow for construction of a residence.  Due to Plaintiff's reputation in Bell Canyon for quality construction, in the spring of 2015, the owners of 84 Saddlebow also engaged him to construct half of a basketball court and horse corral on their property with all necessary drainage/landscaping of these improvements at the cost of approximately $250,000.00.  Defendants issued all necessary approvals to the owners and work proceeded by Plaintiff

36.     As a result of the type of construction done by Plaintiff at 84 Saddlebow, in addition to the work done on his own property at 80 Saddlebow, Lise Shdo and Larry Knudsen (Owners of 84 Saddlebow) were impressed with the progress and quality of Plaintiff's work, and proposed that they co-invest with Plaintiff in Bell Canyon property to be developed jointly between them.  Plaintiff then agreed to provide the property at 283 Bell Canyon Road, for the joint venture.  Plaintiff and Owners entered into a written agreement whereby Owners agreed to purchase the property from Plaintiff at Plaintiff's actual cost, obtain a construction loan for development of the property, and pay Plaintiff $9,000.00 per month as and for his supervision during the time pending completion of the planned residence and its sale.  Plaintiff would contribute his unique expertise as a contractor and develop, plan, prepare the land, provide the basis for the actual construction of the planned home as an owner-builder and obtain all approvals from Defendants and all governmental agencies.  Upon completion of the house, the

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

1   parties would split the sales proceeds after payment of closing costs equally, 50% -50%.

2   Pursuant to this agreement, the Owners purchased the property from Plaintiff, obtained a

3   construction loan, and Plaintiff started to design the house, grade the property and create the

4   house plan in addition to applying for the necessary permits and approvals from the Architectural

5   Committee, while being compensated his $9,000.00 a month.

6       37.    During this same period, Plaintiff had completed the construction on his lot and

7   real property at 80 Saddlebow and obtained a prospective buyer for $3,500,000.00 plus a Change

8   Order requested by the buyer in the amount of approximately $500,000.  Plaintiff began

9   obtaining the necessary approvals for the Change Order for the additional construction from

10  Defendants and the County of Ventura Public Works Agency and all other appropriate

11  departments.  In addition, Plaintiff had his own engineers as aforesaid provide the necessary

12  plans, designs, and work for these approvals which were submitted to Defendants and the

13  Architectural Committee.

14      38.    As President of the HOA, WOLF and his co-Defendants learned of the foregoing

15  transactions and on or about May 24, 2015, WOLF approached Plaintiff, stating to Plaintiff that

16  "it was not fair" that Plaintiff was making so much money while [they] were not, after WOLF

17  and the co-Defendants had put so many hours into helping Plaintiff to obtain the approvals from

18  the Architectural Committee and/or Board of Directors of Defendant HOA.  WOLF then

19  presented Plaintiff with a proposal regarding a similar venture as Plaintiff had with Owners.

20  WOLF represented that he knew of two landowners in Bell Canyon who were his friends who he

21  could persuade to invest with Plaintiff and WOLF in a similar-type development.  WOLF

22  proposed that his friends would provide the real properties, Plaintiff would obtain the

23  construction loan and be an owner-builder of high quality residential houses on the properties

24  designed and built by Plaintiff, and that upon sale of these properties, the real property owner,

25  Plaintiff and WOLF would divide the proceeds after close of escrow equally among the three of

26  them (1/3, 1/3, 1/3).  Plaintiff asked why WOLF was entitled to a third of the profits, which

27  would have been in the millions of dollars, and WOLF replied that, as President of the HOA, he

28  could make projects flow or make them stop, and that he, as a silent partner, would make the

421679                SECOND AMENDED COMPLAINT

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

projects flow smoothly.  Plaintiff pointed out to WOLF that he should be investing money into the project(s) as well and not just contributing his role as President of the HOA, as that was his legal and ethical duty and responsibility anyway. WOLF became angry, withdrew the offer, and made no further similar offer. However, WOLF exhibited the intention to harm Plaintiff.

39.     Two days later, on May 26, 2015, Plaintiff received Stop Work Notices on all three of his projects, 80 Saddlebow, 84 Saddlebow and 283 Bell Canyon Road, from the Architectural Committee.  The Notice claimed that he had not received approval from Defendants as he had not submitted any plans for this work for the joint drainage work done on 80 Saddlebow and 84 Saddlebow or approval for the roof of the horse stable, even though Plaintiff had already received Ventura County approval for this work and provided such notice of this with the change order to the Architectural Committee on April 18, 2015, over a month before.  The actions of Defendants were done at a time when it was known that Plaintiff was in escrow to sell 80 Saddlebow for $3,500,000.00 plus the change order work and Plaintiff was proceeding on the joint work associated with both 80 Saddlebow and 84 Saddlebow, as their lots had joint landscaping and drainage issues per the submitted plans.  Defendants again continued to refuse to allow any work to be done on any property, including even interior work on 80 Saddlebow that was not related to any exterior work which was the alleged basis for the Stop Order and was already approved by the Architectural Committee.  This Stop Order also stopped all the other work of the related trades from being able to be scheduled and complete the additional already approved work, causing Plaintiff great difficulty and losses from these trades being unable to do the work when scheduled in light of the period for close of escrow. Furthermore, the buyer of 80 Saddlebow was threatening to cancel his purchase due to these delays.  All these facts were known to Defendants, who continued to delay and refuse to act, even when Plaintiff established he had submitted all the Ventura County approved plans and drawings along with the change orders more than a month before the stop notices were issued by Defendants. Furthermore, there was no legal or rational basis for refusing to allow Plaintiff to continue with the approved work at the 80 Saddlebow project's interior or to refuse to delay the approvals for the work at 84 Saddlebow which was already approved.  All these actions by

421679

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

1  Defendants were designed to cause Plaintiff extreme emotional upset and distress, to cause him

2  problems with his buyer and clients, and otherwise harm him by causing thousands of dollars in

3  delays and rescheduling work that needed to be done but was wrongfully prevented by

4  Defendants actions.

5      40.    Plaintiff again approached WOLF and asked why these Stop Notices were

6  occurring and why he was not being treated equally with other developers and builders in Bell

7  Canyon.  At that time, WOLF explained to Plaintiff that Defendants did the foregoing acts –

8  stopping all work on Plaintiff's projects -- because Plaintiff refused to perform construction work

9  at WOLF's residence and did not cooperate with WOLF on development projects, and otherwise

10  did not act in a manner showing agreement to Defendants wishes and desires.  No factual or

11  other basis was given.  These actions, undertaken by WOLF and the Co-Defendants, were done

12  to discriminate against Plaintiff, wrongfully cause him harm and damages, and were done by

13  Defendants who were acting in a conspiracy to perform these acts through the interaction of

14  WOLF, KENT, CARNIGLIA and Does 1-15 and their position of authority with Defendant

15  HOA.  Their acts also violated their duty to Plaintiff to act reasonably and fairly in the

16  interpretation of any Rules and Regulations of the HOA, and were beyond their power and

17  reasonable authority granted to them by the Act, the CC&Rs and By Laws of the HOA.

18  Furthermore, these acts were done with malice, fraud and oppression, and with the intention to

19  harm Plaintiff, his business and professional reputation in the community, and cause him

20  financial losses and severe emotional distress and upset.

21      41.    Due to the Defendants' behavior and the efforts of the Architectural Committee to

22  prevent Plaintiff from completing these two projects, Plaintiff's clients at 84 Saddlebow

23  discontinued the second phase of construction, to wit, the horse stable, corral and the trail, at a

24  loss to Plaintiff of $180,000.00.  The Owners were also so concerned about the new inability of

25  Plaintiff to obtain approval from Defendants, and had heard of the defamatory comments being

26  made by Defendants about Plaintiff, even for work otherwise approved by Ventura County, that

27  they then terminated their participation in the joint venture at 283 Bell Canyon, forcing Plaintiff

28  to buy them out as agreed by delivering them the purchase price of the real property, plus all the

421679

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

additional sums they invested in the property, and by returning the supervisory fees ($9,000 per month) he had been receiving since commencement of the agreement. The loss to Plaintiff from these actions was not less than $1,000,000.00. This loss was only for the amounts lost on the joint venture project at the 283 Bell Canyon, and not in any other future investments which were also contemplated upon the successful completion of this first project between Owners and Plaintiff.

### Defendants Commence a Campaign of Defamation and Discrimination in HOA Meetings to Attempt to Impugn Plaintiff's Personal and Business Reputation

42.     Commencing in or about early 2014 to continuously thereafter when Plaintiff would have his issue(s) on the agenda for the Architectural Committee meetings, the members of the committee, specifically CARNIGLIA and KENT, would act in ways that would not allow for an unbiased and reasonable presentation of the issues to them by Plaintiff and his agents, including: insulting Plaintiff's background and ethnic heritage; calling him a liar; claiming he was bribing the Ventura County Planning Agency which had filed letters and documents confirming their approval of the change orders for Plaintiff's actions; would not discuss any aspect of any change order or action requested to be taken by Plaintiff unless it showed that Plaintiff's approved plans allowed for the change; and finally, would demand that Plaintiff follow the original approved plans ONLY and if he would not, the Architectural Committee would not approve any of his projects or any changes thereto.

43.     Commencing in or about early 2014 to continuously thereafter, Defendants, specifically WOLF, KENT, CARNIGLIA and Does 16-25, in furtherance of their conspiracy and actions to prevent Plaintiff from being able to work or develop any real property in Bell Canyon, also went to homeowners and other members in Bell Canyon, and orally defamed Plaintiff to these members outside of the formal committee and board meetings, calling him a cheat, liar, someone who was bribing Ventura County officials, was attempting to avoid the rules and regulations of Bell Canyon, was a snake, and did illegal activities in order to get his projects completed.

421679

SECOND AMENDED COMPLAINT
16

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D863368 DATE PAID :03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

44.     Defendants had previously advised the owners of 52 Ranchero Road that Plaintiff was dishonest, was a snake, did illegal things to get his projects completed, and bribed officials for approvals as part of their campaign to defame Plaintiff and to turn the other members against Plaintiff for his actions in the ownership of his lots and Plaintiff's development in Bell Canyon. Such defamatory comments were re-published by the Doe Defendant residents at that address, Does 26-27, on or about May 5, 2016, when these statements were repeated to Kristi Deitz, a licensed real estate professional.  Said defamatory statements were republications of the defamatory statements and oral assertions by Defendants as set forth herein, and were not privileged, nor as part of fair comment in any administrative proceeding.   Further, any fair comment privilege for any such comments or claims at any public meeting was lost as the comments and defamatory comments were issued with actual malice and ill will, and spite, with the intention to harm Plaintiff and with a disregard for their truth and honesty.

***Defendants Illegally Assess Plaintiff by Requiring Him to Pay Unsupported and Unnecessary Fees and Costs of $20,000 per Project, Not Required of any Other Builder, As Part of Their Effort to Punish Him***

45.     In addition to the fact that Plaintiff was not being treated equally as all other contractors at Bell Canyon by Defendants in the enforcement of their Rules and Regulations, Defendants were also attempting to force Plaintiff to pay additional charges and fees that other contractors were not required to pay for services that were not allowed to be assessed by the Act or the CC&Rs or Rules and Regulations of HOA.  These unilateral charges made at the direction of Defendants, and each of them, were for alleged services for which no bill or other basis for such charges was ever presented to Plaintiff, for amounts for claimed activities beyond those of the authority of the Defendants, or its committees, to incur or require and for which no legitimate claim exists for such charges. In addition, Defendants, even after affirming in writing on Plaintiff's completed projects that the other lawfully assessed deposits would be returned, have never returned these deposits to Plaintiff, which is required by the Rules and Regulations of the HOA. Furthermore, these charges assessed by Defendants were in the form of a fine, for which no legal basis existed for the additional charges and which no other owner-builders were subject

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

to nor were set forth in the schedule of construction deposits required by the HOA.

46.    The Architectural Committee, at the direction of Defendants WOLF, KENT and CARNIGLIA, singled out Plaintiff and required him to make an extra deposit of $20,000 for each one of his projects at Bell Canyon before he could commence work.  In further demonstration of the conspiracy and illegal acts of Defendants, Plaintiff received a call from WOLF in late December of 2015, after he received approval for the work at 67 Ranchero Road when WOLF and CARNIGLIA were absent.  At that time WOLF told Plaintiff that the Architectural Committee would be assessing this "new $20,000.00 fee" against him before he was ever notified of this requirement by the Architectural Committee.  When Plaintiff went in to pay the standard fees charged for final approval of the 67 Ranchero project on December 29, 2015, this $20,000.00 was handwritten in as an additional charge.

***Defendants Illegally Cause Stop Work Order to Be Served on Plaintiff***
***For His Project at 67 Ranchero Road For Proper Lot Preparation Procedures***

47.    In mid-2015, as part of Plaintiff's continued investment in the development of high quality homes in Bell Canyon as an owner/builder, Plaintiff obtained title to the property located at 171 Stagecoach Road/67 Ranchero Road (67 Ranchero Road) in Bell Canyon with the intention of grading the property and constructing a luxury home thereon.  Plaintiff had been unable to obtain Defendants' approval for this project for six months, which involved a cut and fill of the large mountainous parcel.  Even though Plaintiff had been unable to obtain Defendant's approval for this project based upon their stated threat that Plaintiff would never build at Bell Canyon again, at the December 28, 2015, meeting of the Architectural Committee, both WOLF and CARNIGLIA were not present.  At that time, Plaintiff presented his plan for the development of the construction project at 67 Ranchero.  Based upon the presentation and Ventura County Public Works Agency approvals required, the three other voting members of the Architectural Committee then agreed with Plaintiff's submitted plan and approved it.

48.    In early January 2016, while Plaintiff was designing the grading work on the property located at 67 Ranchero (67 Ranchero LLC), Defendants WOLF and CARNIGLIA approached him and advised him that he would never build on that property and they would not

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

let the "error" of CARNIGLIA's absence at an Architectural Committee meeting where approval for construction at 67 Ranchero was granted occur again when his projects were being presented.

49.     A week later, after Plaintiff had started lot preparation on 67 Ranchero, Plaintiff was served with a Stop Work Notice without any prior notice or warning, with a security guard approaching Plaintiff's workers and demanding that they leave the jobsite at once. The security guard thereafter escorted them off the job site before they could even secure the site, the heavy grading equipment or any of the supplies located thereon.  This was a breach of the agreement between the Architectural Committee with Plaintiff that the latter would provide Plaintiff with 24-48 hour notice before stopping any work at any of his sites in Bell Canyon and beyond any powers granted to the Architectural Committee in their own empowering documents.  This action was part of the conspiracy of Defendants to harm Plaintiff and make him an example to others who would not cooperate with Defendants in their illegal and improper demands and activities.

50.     Plaintiff immediately went to the Architectural Committee, and learned that Defendant CARNIGLIA had ordered the Stop Work Notice because boulders were being moved on the property.  Plaintiff advised CARNIGLIA that (a) that is the proper way to handle the grading and movement of large boulders, (b) inquired why the Architectural Committee was getting involved in the job performance phase of the project when its authority under the CC&Rs was limited to aesthetic design and planning, (c) that the Committee had no engineer to advise them on the grading and construction phase of a project and (d) that this delay caused by the Stop Work Notice cost Plaintiff time and a substantial amount of money as well as damaged his business and his ability to earn a profit for his work.  CARNIGLIA replied that he "did not care." This work and its procedures had already been approved by Ventura County Soils and Geological Engineers and was the proper way to mitigate the grading and lot preparation activity at the site.  Plaintiff was very experienced in this type of grading and lot preparation, and there was no one on the Architectural Committee with any background or experience to claim a stop notice was required.

51.     Plaintiff's inability to get the immediate removal of the Architectural Committee's Stop Notice required him to seek the assistance of the building authorities in

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura County, who had inspected the work being done at 67 Ranchero and who submitted to the Architectural Committee a letter explaining the grading was being doing on the property in full compliance with proper procedures and was part of the prior approval by the Architectural Committee for this work. Plaintiff's professional soils and geological engineers also submitted their comments and filed writings showing that they agreed that Plaintiff's grading work was proper and the only way to do it, and that Plaintiff was making the correct decisions in order to proceed with the work. All this information was submitted by the Plaintiffs to the Architectural Committee immediately upon receipt of the Stop Notice.

52.     Notwithstanding that Plaintiff had submitted all this documentation to the Architectural Committee, there was no reply or response. The Architectural Committee inexplicably delayed another week before removing the Stop Work Notice from the project. No reason was given for this delay or for the removal of the stop notice at any time.

*Defendants Cause a Second Stop Work Notice to be Served on Plaintiff's Project at 67 Ranchero in Retaliation for Plaintiff's Refusals and in Show of Power to Illegally Punish Plaintiff in Lawful Activities Approved by County of Ventura*

53.     Plaintiff attended the Architectural Committee on January 12, 2016, and again reminded them of their oral agreement regarding prior notice to him of any alleged defects, and requested they contact him at any time they have any issues or questions, and not to act suddenly, without prior notice to Plaintiff, to stop his work as that is illegal and hurts his business. The members of the Committee again agreed to provide such notice before taking such a drastic action as a stop notice on Plaintiff's projects.

54.     A few weeks after this meeting, a Civil Engineer, claiming he was retained by the Architectural Committee, appeared at the Plaintiff's job site at 67 Ranchero with a security guard purportedly to check "on what the Plaintiff was doing." Plaintiff took the time to explain his work at the job site.

55.     A few days later, Plaintiff received an email from the Architectural Committee informing him that it would be sending a surveyor to the jobsite. Plaintiff demurred, advising them that it is too early a phase of the project to send a surveyor and incur the expenditure of

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:66-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

money for that purpose. In fact, providing the information a surveyor would be seeking is something that Plaintiff ordinarily would provide as part of the Ventura County Public Works Agency approvals, and, if necessary, Plaintiff would send a request for a change order if required. These actions were something that are standard in almost all the grading and lot preparation at Bell Canyon due to actual conditions of the lots being different from the proposed and previously approved plans before beginning actual grading and lot preparation. The Committee ignored Plaintiff's advice and sent a surveyor anyway.

56.     Notwithstanding the agreement entered into with the Architectural Committee that before any attempts to stop any work on this job site would occur, Plaintiff would be contacted in regard to any claimed problem or issue, on March 23, 2016, Defendants again suddenly and without any prior warning issued a second Stop Work Notice at 67 Ranchero.

57.     When Plaintiff called the Architectural Committee to find out the basis for the Stop Work Notice, CARNIGLIA advised him that the basis was the fact that the elevation of the pad was higher than what was approved by the Architectural Committee in its original submission. Plaintiff immediately met with CARNIGLIA at the jobsite and explained that the grading work was not completed yet and Plaintiff was about to present a Change Order to the Committee regarding the grading as the basis for the change order was the bed rock encountered and the changes to the driveway occasioned by the hillside land leading up to the building pad needed a different pathway due to soil conditions than originally thought. CARNIGLIA responded that the elevation was not the only issue, as there were "many other issues as well", and furthermore represented that they (the Architectural Committee) would not accept any Change Order from Plaintiff on the project, even for minor changes. CARNIGLIA then stated categorically that the Architectural Committee would never allow Plaintiff build on that property, even if Plaintiff contacted the other Architectural Committee members for approval, as he and his co-Defendants would "not miss another Architectural Committee meeting" (as he and WOLF had in December when the project was approved) and they would make sure that Plaintiff would never obtain approval for anything regarding this or any other site Plaintiff would try and develop, as "they would always find something to disapprove".

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

58.     Notwithstanding the comments by CARNIGLIA, on April 8, 2016, Plaintiff prepared and submitted a Change Order to the Architectural Committee with the Ventura County building authorities' complete approval for the changes requested, including soils engineering, geology, and surveying and inspection departments. These approvals had been obtained by Plaintiff after the Ventura County engineers had been to the site and after their review of the proposed changes from the original design submitted, as well as after review of the Plaintiff's own soils, geological and landscape engineer's revisions. Ventura County had approved the changes requested by Plaintiff at 67 Ranchero based upon the actual topography and make-up of the land being graded and compacted.  Plaintiff submitted this same Change Order, accompanied by the written approval and supporting documents from the Ventura County authorities and his own professional soils and geological engineers' reports, in support of the change requested prior to the actual meeting.

59.     Plaintiff also submitted site photographs which established that proceeding with the change order from the original approved plan by the Architectural Committee would not materially change the area, the removal of this additional dirt and rock would be impracticable if not virtually impossible as Plaintiff hit solid bed rock which would require dynamite and the removal of 8,000 cubic yards of dirt and rock to simply lower the building pad seven feet from its then height, and the higher pad actually made the building pad smaller in size from the approved plans.  Defendants knew that requiring Plaintiff to remove this additional dirt and solid rock would be prohibitively expensive, involve unnecessary noise and dust, not substantially change the design of the building pad or view of any of the other members, further degrade the environment and be a serious inconvenience to the surrounding neighbors due to thousands of truckloads of dirt that the Architectural Committee was demanding he remove to lower the pad to the original approved design estimated height instead of the Change Order's requested height.

60.     Plaintiff also suggested that instead of moving all of the dirt and rock from Bell Canyon as demanded by the Architectural Committee, if it still required Plaintiff to remove the 8000 cubic yards of dirt and rock, they mitigate the trucking and the allow for this excess to be trucked to another member's lot, who needed the fill, and which could then be properly

421679

SECOND AMENDED COMPLAINT
22

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

compacted and used at that location instead of having the other lot owner have to truck in fill from outside of Bell Canyon, making additional trucks and problems from such activities.  This recommendation was also rejected by the Architectural Committee at the meeting with no explanation why this alternative would not provide a reasonable manner to accomplish both requirements and minimize the impact to Bell Canyon members.

61.    Notwithstanding that the Change Order requested was both reasonable and the best manner in which to proceed in light of the actual conditions existing at the site which made the original approved plans impossible to perform, Defendants denied the change order requested. Further, the Architectural Committee stated that it would only approve the original plan submitted in December of 2015 prior to the start of construction at the site, and no other plans whatsoever.  Defendants' actions totally refused any changes or modifications whatsoever, refusing any of the approved changes by the Ventura County officials and Plaintiff's own engineers.

62.    Thereafter, Plaintiff appealed to Defendant HOA Board of Directors, from the denial of the Change Order by the Architectural Committee.  The Board is controlled by WOLF and KENT and the Architectural Committee is controlled by CARNIGLIA and KENT, making it virtually impossible for Plaintiff to present his plans and the basis for it in an objective setting. In fact, at both the HOA Board meetings at which time Plaintiff presented his request for a change order, as well as before the Architectural Committee, the committee and board members, specifically WOLF, KENT and CARNIGILIA, prevented Plaintiff from showing the full basis for the change order, or providing him an opportunity to present his side of the issue, and so interfered with his submission by making defamatory statements about him personally that it changed the focus of the presentation from the merits to an attack on Plaintiff and his claimed illegal activity.

63.    At all three of these meetings, the Defendants defamed the Plaintiff, orally calling him the names set forth herein and making the defamatory statements about him, his profession and business. In addition to making these defamatory comments about Plaintiff in these meetings, both before and after all three open meetings of the Architectural Committee or Board

of Directors meetings, in private conversations with members, Defendants again claimed that Plaintiff had bribed the county officials into supporting him, claimed he was lying to the members in the documents he presented, was a cheat, constantly was attempting to make changes to the lots or structures without proper approval, and was causing problems for all the other members by his actions. CARNIGLIA even followed Plaintiff from the HOA Board of Directors meeting when this was first presented and told Plaintiff that even if Plaintiff continued with the original plan, they would give him problems and he would never build a house on that property (67 Ranchero) if he tried.

### Defendants Interfere with Plaintiff's Right to Sell Property and
### Improperly Block Plaintiff's Sale of 283 Bell Canyon Road

64. As a result of the actions taken against him as aforesaid, Plaintiff concluded that he had no alternative but to sell the rest of the property that he had acquired to develop and get out of Bell Canyon. Accordingly, he listed the property at 283 Bell Canyon Road for sale. On May 2, 2016, Plaintiff got an offer on that property and opened escrow.

65. Thereafter, Raffi Tal, a licensed real estate broker, contacted WOLF to try and resolve "informally" the problems with 67 Ranchero Road. Mr. Tal spoke with WOLF, at which time he asked WOLF why he was continuing to refuse to allow Plaintiff to develop 67 Ranchero Road. WOLF told Tal that: 1) There are "economic issues" that Plaintiff has not been responsive on; 2). Plaintiff has made a lot of money building there in Bell Canyon and he can afford to pay for all the items that he is being saddled with in order to do the development, and 4). That due to WOLF's prior positon against Plaintiff, he could not now, under any circumstances, change his position to now approve Plaintiff's plans to develop 67 Ranchero as the rest of the Board would see he [WOLF] created the problem there and he cannot back down now.

66. Then, as Tal was also discussing the current listing and escrow of 283 Bell Canyon, without any prompting by Tal and as Tal was leaving the meeting, WOLF advised the broker that he should "contact the Architectural Committee" because "they are not going to approve Plaintiff's preliminary approval for grading and construction for the residence at 283 Bell Canyon Road location that previously had been granted and which was part of the sale of

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1   that property. When the broker inquired as directed by WOLF, the Architectural Committee

2   (CARNIGLIA) responded that any preliminary approval was "conditional" and not final and

3   then further stated that any preliminary approval was "not transferable to a new owner." This

4   was false, and Plaintiff had purchased several properties with preliminary approvals and permits

5   from other sellers of Bell Canyon lots and immediately moved forward with the development

6   pursuant to the previously approved plans to the seller by the HOA.  CARNIGLIA also stated to

7   Tal that any new owner would have to start from scratch and any past approvals, or preliminary

8   approvals, or conditional approvals should NOT be viewed as a guarantee or indication of what

9   the Architectural Committee would approve in the future by any new buyer.  Due to these

10   statements, the prospective buyer of 283 Bell Canyon Road cancelled the escrow on June 6, 2016

11   and withdrew from the sale.

*Defendants Intentionally Interfere with Contractual Relations Again By*

*Causing Plaintiff to Lose His Projects at 109 Buckskin and 9 Wagon Lane*

14   67.     Plaintiff had two more construction projects in Bell Canyon that he was already

15   actively involved in at that time: 109 Buckskin and 9 Wagon Lane.  As a result of the unfair

16   restrictions imposed on Plaintiff by Defendants and a direct warning from Defendants WOLF

17   and KENT to each member/owners of these lots that if they continued to use Plaintiff as a

18   contractor/joint venture the project would have nothing but problems, the construction project at

19   108 Buckskin was cancelled.  Plaintiff's agreement for the work at that location would have

20   generated supervisory fees in the approximate amount of $180,000.00, and an expected sales

21   profit, as to Plaintiff's 50% interest in that development, of over $1.5 million based upon the

22   reasonable type of home and sales activity at Bell Canyon at that time. The supervisory work

23   Plaintiff was hired to perform at 9 Wagon Lane would have generated supervisory fees of

24   $180,000 plus a profit of $300,000 in agreed to profit sharing at the time of sale.

25   68.     Both property owners have now cancelled the projects after Defendants

26   threatened these owners with consequences of continuing to work with Plaintiff as a supervisor

27   or joint venture, as it was clear that the Defendants would do as threatened and cause problems

28

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IJC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1  for the project just like they are doing with respect to other projects on which Plaintiff was

2  working. Based on these threats and the current state of Plaintiff's inability to do anything on any

3  project at Bell Canyon, Plaintiff has lost his ability to work in any manner in Bell Canyon, or to

4  use his property, or to even sell the property which he has otherwise acquired and begun work on

5  prior to this time. Specifically, Plaintiff lost the complete use of his property in any manner.

6  Plaintiff's construction workers and other agents were physically blocked from entering the Bell

7  Canyon gate and security officials removed Plaintiff's construction workers and Plaintiff's

8  agents from the property. Thereby denying access to Plaintiff's property.  Plaintiff was

9  prohibited to conduct construction related activities on the property which is the only viable use

10  of the property at that time and further prohibited and delayed to use the property for his

11  enjoyment once construction was complete.

12      69.     Defendant's actions have prevented Plaintiff from performing any additional

13  work or construction on the 67 Ranchero lot, for which Plaintiff had already obtained a

14  construction loan from his lender.  At this time, Plaintiff's lender on the 67 Ranchero project has

15  declared him to be in default, and has threatened to begin foreclosure proceedings on the real

16  property, and otherwise required that Plaintiff take action to repay the amounts already advanced

17  to him. Plaintiff, due to Defendants' actions, cannot even sell the subject real property due to the

18  actions of Defendants, nor take any steps to move forward in the construction of the approved

19  residence. This will cause Plaintiff irreparable harm and the loss of such unique property, and in

20  the further loss of millions of dollars from the improper and illegal acts of Defendants.

21      70.     As a direct result of the actions of the Defendants, Plaintiff has been unable to

22  properly, legally and appropriately develop and use his own real property in Bell Canyon, been

23  prevented from acting as a contactor or construction superintendent on other member's real

24  property, and has been defamed and his reputation sullied personally and professionally by the

25  actions of the Defendants.  The actions of the Defendants have resulted in a taking of the

26  Plaintiff's property, prevented him from earning a living, and otherwise caused him great mental

27  and emotional distress, so much so that it had two heart attacks as a direct result of the actions of

28  Defendants.

421679                   SECOND AMENDED COMPLAINT
                                        26

III.

## FIRST CAUSE OF ACTION

### Petition for Alternative Writ of Mandate

71.    Plaintiff now requests that this court issue a preemptory writ of mandate directing the Architectural Committee of the Bell Canyon HOA and the Board of Directors of the Bell Canyon HOA vacate and set aside their denial of the proposed change order presented by Plaintiff and allow the change order as previously approved by the Ventura County Public Works Agency on or about April 18, 2016, and that Plaintiff be allowed to thereafter develop and complete any appropriate residence for his owner/builder lots and be allowed to work as a designer and construction superintendent on other member's works of improvement that are entitled to be approved based upon reasonable and unbiased standards and procedures for any required approvals by the HOA.  The basis for this petition is:  (1) The actions of the Architectural Committee were beyond those powers conferred upon it by the CC&Rs of the HOA and the Architectural Handbook of HOA in effect at the time of these actions; (2) The Architectural Handbook and associated rules and regulations of the Architectural Committee allow for discriminatory and unequal enforcement of the overbroad provisions of any requirement sought to be enforced; (3) The due process rights of the Plaintiff were violated by the actions of Defendants by being denied a fair and impartial tribunal and adjudicatory process and the manner in which the then existing due process provisions were actually applied in specific review or appeal process; (4)  The decision and denial by the Architectural Committee was not based upon a fair and reasonable review and allowance for normal changes and differences between preliminary plans and changes required by the actual conditions of the lot when actual construction occurs, but were motivated by bias, prejudice and undue influence; (5) The decision to deny the change order was not based upon the merits of the request but upon the actions of the Defendants in penalizing Plaintiff for not agreeing to their attempted extortion and use of undue influence in their determination and decision; (6)  The CC&Rs, the Rules and Regulations and Architectural Handbook as applied to Plaintiff were not applied uniformly, Plaintiff was not treated as other members who had similar or other changes being presented to

the Defendants, and the failure to abide by a reasonable interpretation of any applicable rules or regulations made any such decision discriminatory, was an abuse of any authority given Defendants over Plaintiff's attempted development of his real property, and violated Civil Code §4765; and (7) The decision of the Architectural Committee is against the law in that it fails to properly allow for the Ventura County Public Work Agency's prior inspections and approval of the changes based upon the actual conditions existing at 67 Ranchero and this approval for this change based thereon that otherwise would allow for compliance with all of Defendant's CC&R requirements.

## BRIEF FACTUAL SUMMARY FOR ISSUANCE OF WRIT

72.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in Paragraphs 1 through 72, inclusive, as though set forth in full here at.

73.     The purpose of the CC&Rs in the Defendant HOA are to allow for the appropriate and orderly development of the real property in Bell Canyon covered by their association. The purpose of Act is for the common business affairs and management of the community by the Association. The HOA is empowered to adopt rules and regulations, including those related to architectural reviews.  Defendants were required by the CC&Rs to adopt reasonable and objective standards for the development of any residential real property, and to provide same to the members of the association, of which Plaintiff was and is a member. Notwithstanding this requirement, no comprehensive objective standards were in fact promulgated, and in direct contradiction of this requirement, the CC&Rs also gave the Architectural Committee the ability to disapprove any development based upon the committee's "reasonable dissatisfaction" with any of the proposed plans.  This alleged standard is unreasonable, nebulous, fails to provide any rational or objective standard for the approval or disapproval of any such submission, and vests improper authority and discretion in the Architectural Committee, as well as allows Defendants to effect a taking of the members, including Plaintiff's, real property without compensation.

74.     Further, the actions of the Board of Directors of the Defendant HOA, in acting as an appeals board of the Architectural Committee's actions, failed and refused to act as required

421679

SECOND AMENDED COMPLAINT
28

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

by the By-Laws and other governing provisions and regulations applicable to Defendants'
actions. Any committee appointed or adopted by the CC&Rs of the Association were only to be
advisory, and not binding upon the Board of Directors.  When Plaintiff in fact presented the
plans and basis for the change order requested for his 67 Ranchero project, with the Ventura
County Public Works Agency approved change order, the Board did not exercise its own
independent judgment, but voted instead to either agree with the Architectural Committee's
decision or to overturn said denial, thereby failing to act as the final arbiter of the matter by use
of its independent judgment as required.   All of the actions of the Defendants in disapproving
Plaintiff's request for a change order were done by bias, prejudice, unfairly, were not based upon
the merits but upon a motive to punish and harm Plaintiff for his refusal to engage in their
attempted extortion and unfair and illegal practices and activities.

   75. The Plaintiff had for many years prior to this time been presenting plans, designs,
and required documents to Defendants for the numerous homes that he acted as an owner-builder
on or acted as a construction superintendent for others for pay.  Plaintiff was very familiar with
the process and was considered one of Bell Canyon premier builders of residences, including lot
preparation in the hilly, rocky area in which Bell Canyon lies.  Plaintiff had previously been
treated equally with other builders and members of the HOA and had not been discriminated
against in presenting changes to previously approved plans by the Architectural Committee for
changes needed based upon actual site requirements after construction began.  Plaintiff at all
times worked with numerous engineers, including but in no manner limited to design and
architectural specialists, registered soils engineers, geologists, environmental engineers,
landscape engineers and related professionals, in addition to presenting all plans and change
orders for approval to the County of Ventura Public Works Agency, including all plan checks
and approvals, as was done in this case for 67 Ranchero and his other projects described herein.

   76. The specific lot at 67 Ranchero was a steep double hill/ravine that involved a long
easement driveway cut into a hillside leading up to a cut and fill lot involving many tons of dirt
being taken from one of the hills that was then leveled while the cut material was moved into the
ravine.  Plaintiff's plans actually submitted to Defendant's Architectural Committee showed that

421679

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

the cut and fill area would be of a certain size, and that the ending elevation would at approximately 1633 feet above sea level. As a result of the solid rock being found at the site, and the amount of dirt that was necessary to support the residence and related pool on the property, Plaintiff did not have to remove as much dirt and rock or fill the area as large as set out in the approved plan by Defendants. However, due to instability in the steep slope to the building pad, the driveway needed to be slightly enlarged and moved slightly, which change would not be visible to other homeowners. As a result of the solid rock being encountered, and the ability to still build the residence on the final filled and compacted lot, Plaintiff's final grading showed a smaller building pad, less dirt and rocky material that had to be removed, but the lot height was seven feet higher than the original approved plans.

77. During the time that Plaintiff was in the grading and moving of the material at the lot, Defendants harassed his worksite, on two occasions having security guards actually force his workers off the job site without giving them time to even secure the materials and heavy earthmoving equipment being used and continued to send engineers and surveyors, all being charged to Plaintiff, to simply oversee Plaintiff's site preparation. These actions are not required by other builders sites in Bell Canyon, were beyond the reasonable activities of the Architectural Committee, and were done to harass and annoy Plaintiff, cause him economic losses, and attempt to diminish his good standing in Bell Canyon by preventing him from working while claiming he was in violation of the Defendants rules and regulation to the denigration of the other members rights.

78. Plaintiff has at all times performed all of the work required on his part to be performed in a professional, workmanlike and appropriate manner. The County of Ventura's Public Works Agency engineering professionals, not only approved the work done by Plaintiff and the change order submitted by Plaintiff to Defendants for approval, but sent written notice of this and then even offered to send a representative to appear before Defendants and the Architectural Committee and/or Board to discuss the change order and the basis for the approval on behalf of Ventura County, in the consideration of Plaintiff's request to Defendants. All of these requests were refused, or met by claims by Defendants that Plaintiff had "bribed" the

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1   Ventura County officials to obtain their cooperation and support of the requested change order.

2   This is completely untrue and was defamatory per se as to Plaintiff's business and profession.

3       79.   Plaintiff, as part of his attempt to obtain the approval of Defendants for the

4   change order required by the actual topography of the site, first presented all his information to

5   the Architectural Committee as required on approximately April 1, 2016.  Thereafter, there was a

6   public hearing at which time Plaintiff and his registered soils engineer appeared to give an

7   explanation as to the basis for the requested change order as well as describe how it would not

8   adversely affect any other aspect of the other homeowners or members of the HOA.  Plaintiff

9   and his witnesses were not given any time to rebut the claims by CARNIGLIA that Plaintiff was

10  intentionally violating his "approved plans", notwithstanding that the change order was more

11  beneficial to the Bell Canyon residents, as Plaintiff would be required by Defendant's demands

12  to remove an additional approximately 8000 cubic yards of solid rock and related materials,

13  requiring dynamiting the area, and moving all this now removed dirt and rock from Bell Canyon,

14  at the cost to Plaintiff required by both the surcharge by Defendants and the cost of trucking this

15  amount of material away of over $400,000.00.  Plaintiff even had another homeowner/member

16  who needed fill for his own lot (which would have removed the requirement of having to truck

17  this large amount of dirt and rocks many miles over Bell Canyon public roads) if Defendants still

18  required Plaintiff to remove the additional 8000 cubic yards of rock and dirt, which request was

19  also refused by Defendants.  There was no reasonable or other basis for Defendants' actions

20  other than to discriminate and harm Plaintiff.

21      80.   After the denial of the Plaintiff's requested change order by the Architectural

22  Committee, Plaintiff thereafter requested that he be given the opportunity to bring his requested

23  change order before the Board of Directors, which request was denied based on the Defendant's

24  claim that the denial was final.  Plaintiff then showed Defendants that as a member he had such

25  right in the CC&Rs, and Plaintiff's request was put on the agenda before the Board of Directors.

26  The Board of Directors is comprised of two factions, one group of five directors who vote with

27  WOLF and KENT and the remaining four directors who vote independently.  At this meeting,

28  WOLF and the Vice President, KENT,  both before the meeting to members coming to attend,

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

during the meeting, and then thereafter, orally stated to Plaintiff and other members that he would never be allowed to build at this site (67 Ranchero) or any other site.   Defendants also during these conversations before, during and after the meeting accused Plaintiff of the actions heretofore set out, including bribing county officials, lying to the other members about the changes to his original plans, not abiding by the HOA's rules, cheating, and falsifying the records and information submitted to the Board. All these claims were false, and were an attempt by Defendants to defame Plaintiff before the members and to justify their denial of the requested change order based upon their actual motives to punish and discriminate against Plaintiff for not agreeing to do their requests or provide the financial extortion demanded for these approvals and otherwise engage in their illegal and improper actions at Bell Canyon as described herein.

81.     At the first Board of Directors meeting on May 12, 2016, Plaintiff presented his change order request, notwithstanding the defamatory allegations and inability of Plaintiff to present his materials and rebut the false and malicious claims of Defendants.  WOLF as Board President kept asking for a vote of the Board but kept framing both his request and his argument for a denial of Plaintiff's change order as either a vote to support the denial for the change order by the Architectural Committee or to vote to go against the Architectural Committee's prior denial and approve Plaintiff's requested change order. No final vote was taken at the first Board meeting, and upon a validly carried motion, it was agreed that the Board members would go to the construction site at 67 Ranchero and view the matter personally.  At the time that this was done, three members of the WOLF faction orally agreed when viewing the site that the requested changes seemed appropriate and that Plaintiff was acting correctly in requesting this relief.  At the continued hearing by the Board of Directors on June 20, 2016, no further evidence was allowed to be presented by Plaintiff.  Defendants WOLF and KENT specifically again couched the vote by the Board in terms of agreeing with the Architectural Committees' prior denial and upholding the denial "as has been done in the past" or voting against the Architectural Committee's prior decision.   Based upon this proposal by WOLF, Plaintiff's change order request was defeated by the vote of the Board of Directors.  In addition, Defendants claims, comments and actions that they would not allow Plaintiff to otherwise work for other members

SECOND AMENDED COMPLAINT
32

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

or develop any of his other properties owned in Bell Canyon, specifically 283 Bell Canyon, have prevented him from being able to even sell these properties or otherwise act to lawfully and legally build upon the lots.

82.     At this time, Plaintiff has no other remedy, nor the ability, to have the actions and threatened actions of Defendants reversed or changed.  Plaintiff has exhausted all available administrative remedies and has no plain, speedy and adequate remedy from the adverse decision in the ordinary course of law.  In addition, Plaintiff's prior financial commitment for the ongoing development of 67 Ranchero is now in the process of being foreclosed upon due to Plaintiff's inability to proceed and the delays in finishing the started project.  This will result in the complete loss of this property, and further damages to Plaintiff by his inability to proceed immediately to the completion of the approved work. Plaintiff thereby seeks an order of this court to vacate and set aside the Defendant HOA Board of Directors' denial of the Change Order and that Plaintiff be allowed to thereafter proceed with the approved plans as approved by the Ventura County Public Works Agency, and to build the residence as proposed and projected to be built, subject to any reasonable and approved change orders by the Ventura County Public Works Agency which conform to the aesthetic and reasonable requirements of the CC&Rs of Bell Canyon, without improper or unjustified interference by Defendants, its agents or employees.

## IV.

## SECOND CAUSE OF ACTION

**(Breach of Written Contract, Bell Canyon CC&R's and Architectural Standards)**

**(Brought by Plaintiffs 171 Stagecoach, LLC, and O &N Construction LLC, against**

**Defendants Bell Canyon HOA DOES 1 through 200, inclusive)**

83.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in Paragraphs 1 through 82, inclusive, as though set forth in full here at.

84.     Plaintiffs 171 Stagecoach LLC, which owns real property located at 67 Ranchero, and O &N Construction LLC, which owned real property located at 283 Bell Canyon Road and real properly located at 80 Saddlebow, and Defendant HOA entered into a written agreement

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

entitled CC&Rs of Bell Canyon, as supplemented by the Rules and Regulations of said HOA, all

which are subject to and modified by California Law, including but in no manner limited to the

Davis-Stirling Common Interest Development Act (Civil Code §4000 et seq.) by virtue of

becoming a property owners and members of the Bell Canyon HOA.  A true and correct copy of

the applicable CC&Rs is attached hereto as Exhibit A.

85.    Section 4, Clause 21 (A) of these CC&Rs entitled "ARCHITECTURAL

CONTROLS," states as follows:  "A. No building or structure of any kind, including without

limitation, dwellings, accessory buildings, garages, fences, walls, retaining walls, sidewalks,

steps, awnings, poles, swimming pools, tennis courts and the like shall be erected, constructed,

Installed, placed, altered or maintained upon any lot or upon any street or parkway adjacent

thereto unless and until complete detailed plans and specifications therefore, color scheme

thereof, if appropriate, and a plot plan showing and fixing the location of such structure with

reference to the streets and lot lines (and the grading plan if requested) shall have been first

submitted for approval to and approved in writing by the Architectural Committee. Such plans

and specifications, color scheme, plot plan and grading plan shall be submitted in writing over

the signature of the owner or his duly authorized agent on the form prepared by the Architectural

Committee. Approval by said committee of the erection, construction, installation, placement,

alteration or maintenance of said structure may be withheld because the same would or might in

its judgment cause or result in the violation of said covenants, conditions and restrictions and

*also because of the reasonable dissatisfaction of said committee with the grading plan,*

*location of the structure, color scheme, finish, design, proportions, architecture, shape, height,*

*style or appropriateness of the proposed structure or altered structure, materials proposed to*

*be used thereon, or because of Its reasonable dissatisfaction with any or all other matters or*

*things which, in the reasonable judgment of the said committee, would render the proposed*

*structure inharmonious or out of keeping with the general plan of improvement of the subject*

*property.*"

86.    Clause 2.1 of the Architectural Standards, attached hereto as Exhibit B, states as

follows: "Property owners should be aware that The Land and Bell Canyon community is

CASE #:66-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

subject to architectural controls. This means, among other things, that no grading maybe done, and no building or structure of any kind maybe erected, altered or maintained in bell canyon, unless complete and descriptive plans have been approved by the architectural committee. Plans must be submitted and approved in advance for all grading and construction of all structures. The word "structure" includes, but is not limited to, houses, accessory buildings, stables, corrals, garages, fences, walls, mailboxes, bridges, retaining walls, sewage disposal systems, sidewalks, driveways, steps, awnings, poles, swimming pools, tennis courts, patios, trellis, storage sheds, gazebos, batting cages, sports courts, dog houses, tree houses, landscaping, water features and the like. The committee retains the right to define structure as it pertains to Bell Canyon community, the CC&Rs and the Architectural committee standards."

87.    Clause 2.2 of the Architectural Standards, states as follows: "The CC&Rs enumerate specific restrictions which must be complied with and provide the charter under which the Architectural Committee exercises its plan review and approval functions.  In addition to providing specific restrictions, the CC&Rs authorize the architectural committee to withhold approval of any plan if, in the committees reasonable judgment, any aspect of the plan would render the proposed structure inharmonious or out of keeping with the general plan of improvement or harmony of the Canyon.  Architectural controls are not limited to original construction and subsequent improvements, but also extend to the maintenance of all land (landscaping and erosion control) and structures in their original approved condition."

88.    Clause 2.3 of the Architectural Standards, states as follows: "The CC&Rs authorize the Architectural Committee to approve deviations from the CC&Rs where necessary to carry out the general purpose of the CC&Rs. And approval of any such deviation must be written and is not approval for any similar deviation on any other property in the Canyon. Note that approval or conditional approval of any application will not, for any purpose, be deemed approval of a deviation unless the lot owner has specifically, in writing, described the deviation and established the necessity therefore to the Committee and requested approval.

89.    Clause 2.4 of the Architectural Standards, states as follows:  "The CC&R's require that all structures be erected in strict conformance with the plans approved by the

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE :EFT

committee. Any deviation from such plans nullifies the Committee's approval and subjects the lot owner to all remedies available to the Association and to all the remedies available to the Association's members when the CC&R's have been violated. These remedies include, but are not limited to, denying entry through the front gate of construction traffic and the possibility of fines. All members should be familiar with the Association's rules for use of the roads (see for example Section 3.6) and of the Committee's Fine Schedule. If the need for a change in plans develops after approval by the Committee has been given, the lot owner should make application to the Committee for approval of such changes immediately."

90.    The CC&Rs and Architectural Standards of Bell Canyon, as supplemented by the Rules and Regulations of said HOA, all are subject to and modified by California Law, including but in no manner limited to the provisions of the Common Interest Development Act (Civil Code §4000 et seq.), which are included as material terms and which supersede or supplement the CC&Rs and were and are part of the mutual understanding and agreement of the parties.

91.    Beginning on or about May 2015, Defendants, and each of them, breached the applicable CC&Rs and applicable Architectural Standards, including but not limited to, Clause 21 (A) of the CC&R's and Clauses 2.1, 2.2, 2.3, 2.4 of the Architectural Standards, by failing to act reasonably (as required in the written agreements), in their claimed "dissatisfaction" with Plaintiff's Change Order for 67 Ranchero relating to the grading for said property. Defendant HOA and its Defendant board members, failed to act reasonably in denying Plaintiff's requested Change Order in the following respects: 1) they failed to review evidence submitted by Plaintiff's retained soils and geological engineers regarding the basis and appropriateness of the change order; 2) they failed and refused to allow Ray Gutierrez, supervisor of the Ventura County Department of Public Works, to present evidence in support of the Change Order; 3) they failed to consider the negative impact to the Bell Canyon community which said refusal would result if the Change Order was not approved, including but not limited to: the dynamiting/crushing of 8,000 cubic yards of solid bedrock which would emit vast amounts of smoke and debris in the community with unnecessary trucking of this dirt and rock throughout the community with its corresponding noise and emissions and damage to the roads of the

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304DB6368 DATE PAID: 03/4/22 2:16 PM TOTAL: 435.00 TYPE: EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

1   community; 4) they failed to demonstrate how an increased elevation of eight feet in the pad of

2   the home would render the proposed structure inharmonious or out of keeping with the general

3   plan of improvement of the subject property; 5) they failed to offer any other way to resolve the

4   grading issue so that Plaintiff could go forward with construction, thereby completely barring

5   his continued work on his real property; 6) they offered no evidence to support their refusal to

6   remove the stop work order and/or approve the change order. Defendant's refusal to provide any

7   evidence or even attempt to make findings to support their refusal when viewed against the

8   numerous items of evidence submitted by Plaintiff in support of the requested action, including

9   all the civil engineer's and soil engineer's reports and the Ventura County Dept. of Public

10  Works approval for the change order, demonstrate this prejudice and the utter lack of factual

11  support for their actions and the basis for their breach of contract; 7) Defendants' stated basis

12  for denying Plaintiff's requested change order, *i.e.,* Plaintiff did not follow the previously

13  approved plans, was completely unfounded insofar as it ignored the factual reason and necessity

14  for the requested change order, which was made when these previously approved plans were no

15  longer feasible as a result of solid bedrock which was encountered in the grading process;  8)

16  Defendant failed to allow photographic evidence to be presented by Plaintiff at the Board of

17  Directors hearing, nor was such evidence evaluated by Defendants in their denial of Plaintiffs'

18  request, instead claiming it would falsely show the basis for the change order; 9) the Board of

19  Directors breached their legal obligation to Plaintiff by failing to base their decision upon their

20  own independent review of the evidence, but instead upon their motion to either uphold the

21  prior decision of the Architectural Committee or overrule them. This is improper, as the

22  Defendant's own CC&Rs and By Laws establish that the Architectural Committee is only

23  advisory to the Board, and the decision on any architectural issues lies with the Board. The

24  Board, by failing to discharge its duty to independently evaluate the evidence, deprived

25  Petitioner of a fair trial by its actions; 10) Refusing to allow for any type of change order or

26  modification of the previously approved plans notwithstanding their prior custom and practice

27  in so allowing such grading changes when new and different soil and rock conditions were

28  found to exist requiring such a modification as approved by the County of Ventura Dept. of

421679

SECOND AMENDED COMPLAINT
37

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 122030 4D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Public Works as occurred here; 11) Placing Stop Notices on all of Plaintiff's projects when Defendants' actual stop notice would only by its express terms pertain to a single project, preventing Plaintiff from being able to timely complete work on other projects on construction totally unrelated to any claimed defect in the stop notice; 12) Threatening Plaintiff and orally affirming that as long as Defendants were "in control" of the Architectural Committee and the HOA Board of Directors, Plaintiff would never be able to build anywhere or even work for any other member again in Bell Canyon, by interfering with Plaintiff's right to make a living through both his development of his own real property and as a licensed contractor for others, and in other ways to be shown at the time of trial; 13) Threatening other members of the Bell Canyon community that if they continued to use Plaintiff as a joint venture or construction superintendent their projects would be subject to numerous problems and undue scrutiny, causing other members working with Plaintiff to terminate any further business relationship with Plaintiff as a result of Defendants actions.; 14) By the unfair and improper decision and denial by the Architectural Committee of the requested grading change order for 67 Ranchero, which was not based upon a fair and reasonable review and allowance for normal changes and differences between preliminary plans and changes required by the actual conditions of the lot when actual construction occurs, but were motivated by bias, prejudice and undue influence; 15) By Defendants basing any decision to deny the grading change order not upon the merits of the request but upon the actions of the Defendants in their attempts to penalizing Plaintiff for not agreeing to their attempted extortion and use of undue influence; and 16) Failing to act in conformity with their prior course and scope of dealings with Plaintiffs' and other Bell Canyon members' development projects in the prior approximately 15 years of interpretation of the written agreements of the parties in which no other reasonable change order regarding grading as approved by Ventura County Dept. of Public Works had been denied.

92.    Defendants actions further breached relevant portions of the CIDA, including, but not limited to Civil Code section 4765, which governs and supersedes both the Defendants' CC&Rs and Architectural Committee review and decision making processes by requiring specific written notices of their actions and the factual basis for their decisions. These

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

requirements limit the authority of Defendants by requiring such notice notwithstanding any common interest developments own governing documents in regard to a member's separate interest. (See C.C. §4700) The Defendants are not only required to provide a minimum of notice to Plaintiff but are also specifically required to show that it has followed its own standards and procedures prior to pursuing any remedy such as undertaken against Plaintiff, and further demonstrate that those procedures were fair and reasonable and that any substantive decision was made in good faith, and is reasonable, not arbitrary or capricious.  Defendants, by their actions as alleged herein, have breached these additional requirements by failing to provide proper notice and by failing to act in good faith, not unreasonably and capriciously, and by showing that any exercise of discretion was done so in good faith and not discriminatorily against Plaintiff.

93.     The requirements for any such notice of any action regarding architectural issues are governed by C.C. §4765: Architectural review and decision making  "(a) This section applies if the governing documents require association approval before a member may make a physical change to the member's separate interest or to the common area. In reviewing and approving or disapproving a proposed change, the  association shall satisfy the following requirements: (1) The association shall provide a fair, reasonable, and expeditious procedure for making its decision. The procedure shall be included in the association's governing documents. The procedure shall provide for prompt deadlines. The procedure shall state the maximum time for response to an application or a request for reconsideration by the board.(2) A decision on a proposed change shall be made in good faith and may not be unreasonable, arbitrary, or capricious.(3) Notwithstanding a contrary provision of the governing documents, **a decision on a proposed change may not violate any governing provision of law**, including, but not limited to, the Fair Employment and Housing Act (Part 2.8(commencing with Section 12900) of Division 3 of Title 2 of the Government Code), or a building code or other applicable law governing land use or public safety. (4) **A decision on a proposed change shall be in writing. If a proposed change is disapproved, the written decision shall include both an explanation of why the proposed change is disapproved and a description of the procedure for reconsideration of the decision by the board.** (5) If a proposed change is disapproved, the

421679

SECOND AMENDED COMPLAINT
39

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 12203040B6368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

1   applicant is entitled to reconsideration by the board, at an open meeting of the board. This

2   paragraph does not require reconsideration of a decision that is made by the board or a body that

3   has the same membership as the board, at a meeting that satisfies the requirements of Article 2

4   (commencing with Section 4900) of Chapter 6. Reconsideration by the board does not constitute

5   dispute resolution within the meaning of Section 5905." **(Emphasis added)**

6          94.    Defendants breached the agreement with Plaintiff through their violation of the

7   aforementioned provision because they failed to provide the written notice that complies with the

8   requirements of C.C. §4765(4). As a result, pursuant to their own CC&Rs at Paragraph 21 (B),

9   the acts of both the Architectural Committee and the Board of Directors are considered void and

10  of no effect in denying the requested grading change order for 67 Ranchero and in continuing to

11  deny Plaintiff access through the stop notice. Additionally, based upon the terms of the

12  Defendant's own CC&Rs in Paragraph 21(B), this change order should have been deemed

13  automatically approved.  Notwithstanding this, Defendants continue to prevent Plaintiffs from

14  proceeding with their lawful actions in completing their grading and then commencing to build

15  their already approved single family residence on lot 505 (67 Ranchero).

16         95.     At all times, Plaintiffs have performed all aspects of the written agreement as

17  required except as  modified by the oral changes regarding notice, and has done all that has been

18  required of him by these agreements. In addition, Plaintiff has at all times acted in conformance

19  with the implied covenant of good faith and fair dealing, and has not done any action to prevent

20  the appropriate use and enjoyment of other members' properties and Bell Canyon public areas.

21         96.     As a direct and proximate result of the actions of Defendants, and each of them,

22  Plaintiff has sustained damages, and losses, and loss of use of said property for a variety reasons

23  set forth above, including physical obstruction at the gate and has been harmed by their

24  prevention of his normal, reasonable, and appropriate use and development of his own property

25  and his ability to act as a contractor/supervisor for other members in the development of their

26  real property. Plaintiff is informed and believes that the losses from the actions of Defendants at

27  this time are in excess of $5,250,000.00, and increasing.

28  ///

421679                        SECOND AMENDED COMPLAINT
                                         40

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

# V.

## THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

### (Brought by Plaintiffs 171 Stagecoach, LLC, O &N Construction LLC, against Defendants Bell Canyon HOA 1 through 200, inclusive)

97.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in Paragraphs 1 through 96, inclusive, as though set forth in full here at.

98.     Plaintiffs 171 Stagecoach LLC, which owns real property located at 67 Ranchero, and O &N Construction LLC, which owned real property located at 283 Bell Canyon Road and real property located at 80 Saddlebow, and Defendant HOA entered into a written agreement entitled CC&Rs of Bell Cányon, as supplemented by the Rules and Regulations of said HOA, all which are subject to and modified by California Law, including but in no manner limited to the Davis-Stirling Common Interest Development Act (Civil Code §4000 et seq.) by virtue of becoming a property owners and members of the Bell Canyon HOA.  A true and correct copy of the applicable CC&Rs is attached hereto as Exhibit A.

99.     There was implied in the written agreements between the parties a covenant of good faith and fair dealing. Every contract imposes on each party a duty of good faith and fair dealing in contract performance and enforcement such that neither party may do anything to deprive the other party of the benefits of the contract. This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose. Where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith. This covenant required that neither party would do any act or otherwise prevent the Plaintiffs, as members of the HOA, from being denied the right to reasonably develop real property lying within the boundaries of Bell Canyon.  In both their interpretation as well as in their performance of the covenant of good faith and fair dealing, Defendant HOA had to act reasonably and not arbitrarily, in a manner that complied with the covenant of good faith and fair dealing implied in

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1    the CC&Rs and other written agreements between the parties.

2        100.    To the extent any of the conduct in paragraph 91 does not breach any express

3    terms of the written agreements described above, Defendant HOA breached the covenant of good

4    faith and fair dealing in the following respects: 1) they failed to review evidence submitted by

5    Plaintiff's retained soils and geological engineers regarding the basis and appropriateness of the

6    change order; 2) they failed and refused to allow Ray Gutierrez, supervisor of the Ventura

7    County Department of Public Works, to present evidence in support of the Change Order; 3) they

8    failed to consider the negative impact to the Bell Canyon community which said refusal would

9    result if the Change Order was not approved, including but not limited to: the

10    dynamiting/crushing of 8,000 cubic yards of solid bedrock which would emit vast amounts of

11    smoke and debris in the community with unnecessary trucking of this dirt and rock throughout

12    the community with its  corresponding noise and emissions and damage to the roads of the

13    community; 4) they failed to demonstrate how an increased elevation of eight feet in the pad of

14    the home would render the proposed structure inharmonious or out of keeping with the general

15    plan of improvement of the subject property; 5) they failed to offer any other way to resolve the

16    grading issue so that Plaintiff could go forward with construction, thereby completely barring his

17    continued work on his real property; 6)  they offered no evidence to support their refusal to

18    remove the stop work order and/or approve the change order. Defendant's refusal to provide any

19    evidence or even attempt to make findings to support their refusal when viewed against the

20    numerous items of evidence submitted by Plaintiff in support of the requested action, including

21    all the civil engineers and soil engineer's reports and the Ventura County Dept. of Public Works

22    approval for the change order, demonstrate this prejudice and the utter lack of factual support for

23    their actions and the basis for their breach of contract; 7) Defendants stated basis for denying

24    Plaintiff's requested change order, *i.e.,* Plaintiff did not follow the previously approved plans,

25    was completely unfounded insofar as it ignored the factual reason and necessity for the requested

26    change order, which was made when these previously approved plans were no longer feasible as

27    a result of solid bedrock which was encountered in the grading process;  8)  Defendant failed to

28    allow photographic evidence be presented by Plaintiff at the Board of Directors hearing, nor was

421679

SECOND AMENDED COMPLAINT
42

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

1   such evidence evaluated by Defendants in their denial of Plaintiffs' request, instead claiming it

2   would falsely show the basis for the change order; 9) the Board of Directors breached its legal

3   obligation to Plaintiff by failing to base their decision upon their own independent review of the

4   evidence, but instead upon their motion to either uphold the prior decision of the Architectural

5   Committee or overrule it. This is improper, as the Defendant's own CC&Rs and By Laws

6   establish that the Architectural Committee is only advisory to the Board, and the decision on any

7   architectural issues lies with the Board. The Board, by failing to discharge its duty to

8   independently evaluate the evidence, deprived Petitioner of a fair trial by its actions; 10)

9   Refusing to allow for any type of change order or modification of the previously approved plans

10  notwithstanding their prior custom and practice in so allowing such grading changes when new

11  and different soil and rock conditions were found to exist requiring such a modification as

12  approved by the County of Ventura Dept. of Public Works as occurred here; 11) Placing Stop

13  Notices on all of Plaintiff's projects when Defendants' actual stop notice would only by its

14  express terms pertain to a single project, preventing Plaintiff from being able to timely complete

15  work on other projects on construction totally unrelated to any claimed defect in the stop notice;

16  12) Threatening Plaintiff and orally affirming that as long as Defendants were "in control" of the

17  Architectural Committee and the HOA Board of Directors, Plaintiff would never be able to build

18  anywhere or even work for any other member again in Bell Canyon, by interfering with

19  Plaintiff's right to make a living through both his development of his own real property and as a

20  licensed contractor for others, and in other ways to be shown at the time of trial; 13) Threatening

21  other members of the Bell Canyon community that if they continued to use Plaintiff as a joint

22  venture or construction superintendent their projects would be subject to numerous problems and

23  undue scrutiny, causing other members working with Plaintiff to terminate any further business

24  relationship with Plaintiff as a result of Defendants actions.; 14)  By the unfair and improper

25  decision and denial by the Architectural Committee of the requested grading change order for 67

26  Ranchero, which was not based upon a fair and reasonable review and allowance for normal

27  changes and differences between preliminary plans and changes required by the actual conditions

28  of the lot when actual construction occurs, but were motivated by bias, prejudice and undue

421679

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

influence; 15) By Defendants basing any decision to deny the grading change order not upon the

merits of the request but upon the actions of the Defendants in their attempts to penalizing

Plaintiff for not agreeing to their attempted extortion and use of undue influence; and 16) Failing

to act in conformity with their prior course and scope of dealings with Plaintiffs' and other Bell

Canyon members' development projects in the prior approximately 15 years of interpretation of

the written agreements of the parties in which no other reasonable change order regarding

grading as approved by Ventura County Dept. of Public Works had been denied.

101.    At all times, Plaintiffs have performed all aspects of the written agreement as

modified by the oral changes regarding notice, and has done all that has been required of him by

these agreements. In addition, Plaintiff has at all times acted in conformance with the implied

covenant of good faith and fair dealing, and has not done any action to prevent the appropriate

use and enjoyment of other members' properties and Bell Canyon public areas.

102.    As a direct and proximate result of the actions of Defendants, and each of them,

Plaintiff has sustained damages, and losses, and loss of use of said property for a variety reasons

set forth above, including physical obstruction at the gate, and has been harmed by their

prevention of his normal, reasonable, and appropriate use and development of his own property

and his ability to act as a contractor/supervisor for other members in the development of their

real property. Plaintiff is informed and believes that the losses from the actions of Defendants at

this time are in excess of $5,250,000.00, and increasing.

VI.

**FOURTH CAUSE OF ACTION**

(NEGLIGENCE)

**(Brought by Plaintiffs, Nissim David-Chai, 171 Stagecoach, LLC, O &N Construction**

**LLC, Ofarit Dav & Con. Inc. against Defendants Bell Canyon HOA, Bell Canyon Board of**

**Directors, WOLF, KENT, CARNIGLIA, and DOES 1 through 200, inclusive)**

103.    Plaintiffs re-allege and incorporate by reference herein each and every allegation

contained in Paragraphs 1 through 102, inclusive, as though set forth in full here at.

///

421679

SECOND AMENDED COMPLAINT

44

104.    At all times that Plaintiffs were a member of the Bell Canyon HOA, and as such Defendants owed Plaintiffs a duty of due care, as other home owners association board of directors, and to use ordinary skill and capacity commonly possessed and exercised in the performance of the tasks they undertake while so acting.

105.    Defendant HOA negligently, carelessly, recklessly and unlawfully failed to discharge this duty to exercise due care and to treat Plaintiffs fairly and reasonably and in accordance with the standard of care applicable to homeowners' associations in the community deciding on land use proposals and change order requests. Defendants, and each of them, breached such duty with respect to the HOA's decisions by improperly issuing Work Stop notices on Plaintiffs' properties and in their decision to not accept Plaintiff's requested Change Order for 67 Rancher Road, as well as in failing to allow him to continue development of 67 Ranchero Road even based upon the actual approved plans by Defendants which were then disallowed.

106.    Defendants have also breached the standard of care owed to Plaintiffs in the following respects: 1) they failed to review evidence submitted by Plaintiff's retained soils and geological engineers regarding the basis and appropriateness of the change order; 2) they failed and refused to allow Ray Gutierrez, supervisor of the Ventura County Department of Public Works, to present evidence in support of the Change Order; 3) they failed to consider the negative impact to the Bell Canyon community which said refusal would result if the Change Order was not approved, including but not limited to: the dynamiting/crushing of 8,000 cubic yards of solid bedrock which would emit vast amounts of smoke and debris in the community with unnecessary trucking of this dirt and rock throughout the community with its corresponding noise and emissions and damage to the roads of the community; 4) they failed to demonstrate how an increased elevation of eight feet in the pad of the home would render the proposed structure inharmonious or out of keeping with the general plan of improvement of the subject property; 5) they failed to offer any other way to resolve the grading issue so that Plaintiff could go forward with construction, thereby completely barring his continued work on his real property; 6) they offered no evidence to support their refusal to remove the stop work order

SECOND AMENDED COMPLAINT
45

and/or approve the change order. Defendant's refusal to provide any evidence or even attempt to make findings to support their refusal when viewed against the numerous items of evidence submitted by Plaintiff in support of the requested action, including all the civil engineers and soil engineer's reports and the Ventura County Dept. of Public Works approval for the change order, demonstrate this prejudice and the utter lack of factual support for their actions and the basis for their breach of contract; 7) Defendants stated basis for denying Plaintiff's requested change order, *i.e.*, Plaintiff did not follow the previously approved plans, was completely unfounded insofar as it ignored the factual reason and necessity for the requested change order, which was made when these previously approved plans were no longer feasible as a result of solid bedrock which was encountered in the grading process;  8) Defendant failed to allow photographic evidence be presented by Plaintiff at the Board of Directors hearing, nor was such evidence evaluated by Defendants in their denial of Plaintiffs' request, instead claiming it would falsely show the basis for the change order; 9) the Board of Directors breached their legal obligation to Plaintiff by failing to base their decision upon their own independent review of the evidence, but instead upon their motion to either uphold the prior decision of the Architectural Committee or overrule them. This is improper, as the Defendant's own CC&Rs and By Laws establish that the Architectural Committee is only advisory to the Board, and the decision on any architectural issues lies with the Board. The Board, by failing to discharge its duty to independently evaluate the evidence, deprived Petitioner of a fair trial by its actions; 10) Refusing to allow for any type of change order or modification of the previously approved plans notwithstanding their prior custom and practice in so allowing such grading changes when new and different soil and rock conditions were found to exist requiring such a modification as approved by the County of Ventura Dept. of Public Works as occurred here; 11) Placing Stop Notices on all of Plaintiff's projects when Defendants' actual stop notice would only by its express terms pertain to a single project, preventing Plaintiff from being able to timely complete work on other projects on construction totally unrelated to any claimed defect in the stop notice; 12) Threatening Plaintiff and orally affirming that as long as Defendants were "in control" of the Architectural Committee and the HOA Board of Directors, Plaintiff would never be able to build anywhere or even work

for any other member again in Bell Canyon, by interfering with Plaintiff's right to make a living through both his development of his own real property and as a licensed contractor for others, and in other ways to be shown at the time of trial; 13) Threatening other members of the Bell Canyon community that if they continued to use Plaintiff as a joint venture or construction superintendent their projects would be subject to numerous problems and undue scrutiny, causing other members working with Plaintiff to terminate any further business relationship with Plaintiff as a result of Defendants actions; 14)  By the unfair and improper decision and denial by the Architectural Committee of the requested grading change order for 67 Ranchero, which was not based upon a fair and reasonable review and allowance for normal changes and differences between preliminary plans and changes required by the actual conditions of the lot when actual construction occurs, but were motivated by bias, prejudice and undue influence; 15)  By Defendants basing any decision to deny the grading change order not upon the merits of the request but upon the actions of the Defendants in their attempts to penalizing Plaintiff for not agreeing to their attempted extortion and use of undue influence; and 16) Failing to act in conformity with their prior course and scope of dealings with Plaintiffs and other Bell Canyon members development projects in the prior approximately 15 years of interpretation of the written agreements of the parties in which no other reasonable change order regarding grading as approved by Ventura County Dept. of Public Works had been denied.

107.    The actions of Defendant HOA and it's Defendant board members were outside the scope of a HOA's normal activities of an HOA in that they ran contrary to the purpose and expressed goal to fairly, honestly, and efficiently govern the HOA in its operation of the community, *i.e.* their actions impaired, rather than enhanced, the normal operation of the HOA and the duties it owed to its members.

108.    As a direct and proximate result of the actions of Defendants, and each of them, Plaintiff has sustained damages, and losses, and loss of use of said property for a variety reasons set forth above, including physical obstruction at the gate, and has been harmed by their prevention of his normal, reasonable, and appropriate use and development of his own property and his ability to act as a contractor/supervisor for other members in the development of their

SECOND AMENDED COMPLAINT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

real property. Plaintiff is informed and believes that the losses from the actions of Defendants at this time are in excess of $5,250,000.00, and increasing.

109.   Moreover, the actions of the Defendants directly and proximately caused Plaintiff David-Chai to suffer two heart attacks, suffer severe grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry, which have started from at around 2014 to early 2015, up until the present. Moreover the actions were outrageous and extreme in that they were not simply intended to cause temporary upset and distress to Plaintiff, but to act to permanently cause Plaintiff to continue to suffer the grief, anxiety, worry, disappointment, humiliation, economic distress and emotional distress all to his damage in an amount that will be proved at trial herein.

### VII.

### FIFTH CAUSE OF ACTION

### (Intentional Interference with Contractual Relations)

**(Brought by Plaintiffs, Nissim David-Chai, 171 Stagecoach, LLC, O &N Construction LLC, Ofarit Dav & Con. Inc. against Defendants Bell Canyon HOA, Bell Canyon Board of Directors, WOLF, KENT, CARNEGLIIA, and DOES 1 through 200, inclusive)**

110.   Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in Paragraphs 1 through 108, inclusive, as though set forth in full here at.

111.   Commencing October of 2014, Plaintiffs had entered into valid written or oral agreements with other members of Bell Canyon, including but in no manner limited to:

- On or about September 21, 2014, Plaintiff Ofarit Dav & Con. Inc. and Lars Knudsen and Lise Shdo entered into written contract regarding the real property located at 84 Saddlebow whereby Plaintiff was to build a stable, corral, ½ basketball courts, and appropriate landscaping for the owners.

- In or about August 2015 Plaintiffs Nissim David-Chai and Ofarit Dav & Con Inc. Lars Knudsen and Lise Shdo entered into an oral second

contract regarding 283 Bell Canyon Road whereas Plaintiff and Lars Knudsen and Lise Shdo were to jointly develop the property, with Plaintiff to receive a supervisory fee of $9,000.00 per month for all development work and supervision of all construction, with the joint venturers acquiring the real property, construction financing and with the parties then splitting the net proceeds equally upon sale of the completed residence to be built.

- On or about March 8, 2016, Plaintiffs Ofarit Dav & Con Inc. and the owners of real property located at 109 Buckskin and 9 Wagon Lane, also entered into a written and oral contract to engage in a similar joint venture as Plaintiffs did with Lars Knudsen and Lise Shdo, in which Plaintiff would again receive a monthly supervisory fee, the owner(s) would acquire the real property, obtain the construction loan, and Plaintiff would thereafter provide all approved plans and construction supervision, and the parties would share the proceeds equally.

- On or about April 29, 2016, Plaintiff O&N Construction LLC and the prospective purchasers of 283 Bell Canyon Road entered into a contract in the form of an escrow agreement in which the prospective buyers were to purchase 283 Bell Canyon Road from Plaintiff, after the original joint venturers had to be bought out. Plaintiff was going to sell the real property with the approved plans, which approval was then withdrawn by Defendants, while the real property was in escrow. As a result of the Defendants thereafter cancelling the approved plans for the construction at that site, on or about June 2, 2016, Plaintiff's buyer cancelled the purchase and escrow for 283 Bell Canyon at the loss of over $450,000.00.

112.   Defendants, Bell Canyon HOA, and Bell Canyon Board of Directors, WOLF, KENT, CARNEGLIIA, and each of them, were aware of each of these contracts and in fact

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID:03/4/22 2:16 PM TOTAL:435.00 TYPE::EFT

Defendant WOLF had approached Plaintiff with similar propositions and these plans and developments were already proposed and approved or were being discussed with Defendants in their representative capacities with the HOA.  As a direct result, all of these contracts were known to Defendants who were aware of the possible benefits to Plaintiff as a result thereof.

113.   Defendants, WOLF and CARNIGLIA, and each of them, with full knowledge of the aforementioned contracts, engaged in conduct, as set forth above, and by further stating to Plaintiff and others, including Lars Knudsen and Lise Shdo, Leon and Marina Reingold, and Fred Heathcote, that "Plaintiff would never build anything in Bell Canyon  again" and by doing the acts to completely prevent and obstruct Plaintiff from any further development of his or any other member's real property beginning in May of 2015 and continuing thereafter, that in turn prevented performance or made performance more expensive or difficult for the contracting parties. Defendants, and each of them, intended to disrupt the performance of these contracts or knew that disruption of performance was certain or substantially certain to occur.

114.   As a direct and proximate result of the actions of the Defendants, each of these contracts were in fact disrupted, and each of the other participants withdrew from any further activities with Plaintiff, and severed any and all current or future relationships with Plaintiff, which were also being discussed at the time of the actions of Defendants. Defendants intended these results, and in fact took the actions set forth herein with the direct intention of disrupting these economic relationships and in causing harm to Plaintiff.

115.   As a direct and proximate result of the actions of Defendants, and each of them, Plaintiff has suffered harm, and damages, and will continue to do so in the future.  The amounts lost to date from the actions of defendants are not less than $5,250,000.00, which sums do not reflect the investment opportunities to be obtained in the future from these economic relationships that were disrupted by Defendants.

116.   The conduct alleged above demonstrates that the Defendants acted oppressively, despicably, fraudulently, maliciously and shows an intent to vex, injure, harass and annoy Plaintiffs, and in conscious disregard of Plaintiffs' rights, as established by the nature and manner of their actions and the manner they have acted as set forth herein.   As a further basis

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

for demonstrating actual malice and oppression by Defendants, Defendants conduct was illegal and not done under authority of law, but improperly sought to retaliate and punish Plaintiff and prevent Plaintiff from lawfully developing and using his property, even though any requested change(s) by Plaintiff were reasonable and appropriate and approved by the Ventura County Public Works Agency. Additionally, Defendants falsely, maliciously and fraudulently defamed him as alleged in the Eighth Cause of Action, and by acting to intentionally further penalize and injure Plaintiff by refusing to allow him to do any work on his property whatsoever, or on any other member's property. These acts were done to intentionally cause him additional expense and costs, in their attempt to make an example of Plaintiff.  These actions were done with the express reason to vex, annoy and harass and harm Plaintiff physically, emotionally and fiscally and destroy his ongoing business relations.  As a result of the actions as herein alleged, Plaintiff is entitled to recover punitive and exemplary damages in an amount to be determined at trial.

117.    Moreover, the actions of the Defendants directly and proximately caused Plaintiff David-Chai to suffer two heart attacks, suffer severe grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry, which has continued to the present.  Moreover the actions were outrageous and extreme in that they were not simply intended to cause temporary upset and distress to Plaintiff, but to act to permanently cause Plaintiff to continue to suffer the grief, anxiety, worry, disappointment, humiliation, economic distress and emotional distress all to his damage in an amount that will be proved at trial herein.

## VIII.

### SIXTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage)**

**Brought by Plaintiffs, Nissim David-Chai, 171 Stagecoach, LLC, O &N Construction LLC, Ofarit Dav & Con. Inc. against Defendants Bell Canyon HOA, Bell Canyon Board of Directors, WOLF, KENT, CARNEGLIIA, and DOES 1 through 200, inclusive)**

118.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in Paragraphs 1 through 115, inclusive, as though set forth in full here at.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

119.     On or about October of 2014 and continuing thereafter, Plaintiffs entered into the following economic relationships with other members of Bell Canyon that would have resulted in an economic benefit to Plaintiffs.

- On or about September 21, 2014, Plaintiff Ofarit Dav & Con. Inc. and Lars Knudsen and Lise Shdo entered into an economic relationship regarding the real property located at 84 Saddlebow whereby Plaintiff was to build a stable, corral, ½ basketball court, and appropriate landscaping for the owners.

- In or about August 2015, Plaintiffs Nissim David-Chai and Ofarit Dav & Con Inc. Lars Knudsen entered into a second  economic relationship regarding 283 Bell Canyon Road whereas Plaintiff and Lars Knudsen and Lise Shdo were to jointly develop the property,  with Plaintiff to receive a supervisory fee of $9,000.00 per month for all development work and supervision of all construction, with the joint venturers acquiring the real property, construction financing and with the parties then splitting the net proceeds equally upon sale of the completed residence to be built.

- On or about March 8, 2016,  Ofarit Dav & Con Inc. and the owners of real property located at 109 Buckskin and 9 Wagon Lane, also entered into an economic relationship to engage in a similar joint venture as Plaintiffs did with Lars Knudsen and Lise Shdo, in which Plaintiff would again receive a monthly supervisory fee, the owner(s) would acquire the real property, obtain the construction loan, and Plaintiff would thereafter provide all approved plans, construction supervision and the parties would share the proceeds equally.

- On or about April 29, 2016, Plaintiff O&N Construction LLC and the prospective purchasers of 283 Bell Canyon Road were in an economic relationship in which the prospective buyers were to purchase 283 Bell Canyon Road from Plaintiff, after the original joint venturers had to be bought out.  Plaintiff was going to sell the real property with the approved plans,

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

which approval was then withdrawn by Defendants while the real property was in escrow. As a result of the Defendants thereafter cancelling the approved plans for the construction at that site, on or about, June 2, 2016 Plaintiff's buyer cancelled the purchase and escrow for 283 Bell Canyon at the loss of over $450,000.00.

120. Defendants, Bell Canyon HOA, and Bell Canyon Board of Directors, WOLF, KENT, CARNEGLIIA, and each of them, were aware of each of these economic relationships and in fact Defendant WOLF had approached Plaintiff with similar propositions as aforesaid, and these plans and developments were already proposed and approved or were being discussed with Defendants in their representative capacities with the HOA. As a direct result, all of these economic relationships were known to Defendants who were aware of the possible benefits to Plaintiff as a result thereof.

121. Defendants, WOLF and CARNIGLIA, and each of them, with full knowledge of the aforementioned contracts, engaged in conduct, as set forth above, and by further stating to Plaintiff and others, including Lars Knudsen and Lise Shdo, Leon and Marina Reingold, and Fred Heathcote, that "Plaintiff would never build anything in Bell Canyon again" and by doing the acts to completely prevent and obstruct Plaintiff from any further development of his or any other member's real property beginning in May of 2015 and continuing thereafter. Said wrongful conduct includes Defendants' defamatory statements and breaches of the aforementioned statues of the Common Interest Development Act and breaches of the valid and enforceable contracts. By engaging in this conduct, Defendants, and each of them, intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur.

122. As a direct and proximate result of the actions of the Defendants, each of these economic relationships were in fact disrupted, and each of the other participants withdrew from any further activities with Plaintiff, and severed any and all current or future relationships with Plaintiff, which were also being discussed at the time of the actions of Defendants. Defendants intended these results, and in fact took the actions set forth herein with the direct intention of disrupting these economic relationships and in causing harm to Plaintiff.

123.    As a direct and proximate result of the actions of Defendants, and each of them, Plaintiff has suffered harm, and damages; and will continue to do so in the future.  The amounts lost to date from the actions of defendants are not less than $5,250,000.00, which sums do not reflect the investment opportunities to be obtained in the future from these economic relationships that were disrupted by Defendants.

124.    The conduct alleged above demonstrates that the Defendants acted oppressively, despicably, fraudulently, maliciously and shows an intent to vex, injure, harass and annoy Plaintiffs, and in conscious disregard of Plaintiffs' rights, as established by the nature and manner of their actions and the manner they have acted as set forth herein.  As a further basis for demonstrating actual malice and oppression by Defendants, Defendants conduct was illegal and not done under authority of law, but improperly sought to retaliate and punish Plaintiff and prevent Plaintiff from lawfully developing and using his property, even though any requested change(s) by Plaintiff were reasonable and appropriate and approved by the Ventura County Public Works Agency. Additionally, Defendants falsely, maliciously and fraudulently defamed him as alleged in the Eighth Cause of Action, and by acting to intentionally further penalize and injure Plaintiff by refusing to allow him to do any work on his property whatsoever, or on any other member's property. These acts were done to intentionally cause him additional expense and costs, in their attempt to make an example of Plaintiff.  These actions were done with the express reason to vex, annoy and harass and harm Plaintiff physically, emotionally and fiscally and destroy his ongoing business relations.  As a result of the actions as herein alleged, Plaintiff is entitled to recover punitive and exemplary damages in an amount to be determined at trial.

125.    Moreover, the actions of the Defendants directly and proximately caused Plaintiff David-Chai to suffer two heart attacks, suffer severe grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry, which has continued to the present.  Moreover the actions were outrageous and extreme in that they were not simply intended to cause temporary upset and distress to Plaintiff, but to act to permanently cause Plaintiff to continue to suffer the grief, anxiety, worry, disappointment, humiliation, economic distress and emotional distress all to his damage in an amount that will be proved at trial herein.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

## IX.

### SEVENTH CAUSE OF ACTION

**(Negligent Interference with Prospective Economic Relations)**

**Brought by Plaintiffs, Nissim David-Chai, 171 Stagecoach, LLC, O &N Construction LLC, Ofarit Dav & Con. Inc. against Defendants Bell Canyon HOA, Bell Canyon Board of Directors, WOLF, KENT, CARNEGLIIA, and DOES 1 through 200, inclusive)**

126.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in Paragraphs 1 through 122, inclusive, as though set forth in full here at.

127.    On or about October of 2014 and continuing thereafter, Plaintiffs entered into the following economic relationships with other members of Bell Canyon that would have resulted in a future economic benefit to Plaintiffs.

- On or about September 21, 2014, Plaintiff Ofarit Dav & Con. Inc. and Lars Knudsen and Lise Shdo entered into an economic relationship regarding the real property located at 84 Saddlebow whereby Plaintiff was to build a stable, corral, ½ basketball court, and appropriate landscaping for the owners.

- In or about August 2015, Plaintiff Plaintiffs Nissim David-Chai and Ofarit Dav & Con Inc. and Lars Knudsen and Lise Shdo entered into a second economic relationship regarding 283 Bell Canyon Road whereas Plaintiff and Lars Knudsen and Lise Shdo were to jointly develop the property, with Plaintiff to receive a supervisory fee of $9,000.00 per month for all development work and supervision of all construction, with the joint venturers acquiring the real property, construction financing and with the parties then splitting the net proceeds equally upon sale of the completed residence to be built.

- On or about March 8, 2016, Ofarit Dav & Con Inc. and the owners of real property located at 109 Buckskin and 9 Wagon Lane, also entered into an economic relationship to engage in a similar joint venture as Plaintiffs did with Lars Knudsen and Lise Shdo, in which Plaintiff would again receive a

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

monthly supervisory fee, the owner(s) would acquire the real property, obtain
the construction loan, and Plaintiff would thereafter provide all approved
plans, construction supervision and the parties would share the proceeds
equally.

- On or about April 29, 2016, Plaintiff O&N Construction LLC and the
prospective purchasers of 283 Bell Canyon Road were in an economic
relationship in which the prospective buyers were to purchase 283 Bell
Canyon Road from Plaintiff, after the original joint venturers had to be bought
out.  Plaintiff was going to sell the real property with the approved plans,
which approval was then withdrawn by Defendants while the real property
was in escrow.  As a result of the Defendants thereafter cancelling the
approved plans for the construction at that site, on or about June 2, 2016,
Plaintiff's buyer cancelled the purchase and escrow for 283 Bell Canyon at the
loss of over $450,000.00.

128.    Defendants, Bell Canyon HOA, and Bell Canyon Board of Directors, WOLF,
KENT, CARNEGLIIA, and each of them, knew or should have known of these economic
relationships and in fact Defendant WOLF had approached Plaintiff with similar propositions as
aforesaid, and these plans and developments were already proposed and approved or were being
discussed with Defendants in their representative capacities with the HOA.  As a direct result, all
of these economic relationships were known to Defendants who were aware of the possible
benefits to Plaintiff as a result thereof.

129.    Defendants, and each of them, knew or should have known that these relationships
would be disrupted if they failed to act with reasonable care.

130.    Defendants, and each of them, failed to act with reasonable care as is set forth
above.

131.    Defendants, WOLF and CARNIGLIA, and each of them, with full knowledge of
the aforementioned contracts, engaged in conduct, as set forth above, and by further stating to
Plaintiff and others, including Lars Knudsen and Lise Shdo, Leon and Marina Reingold, and

421679                           SECOND AMENDED COMPLAINT
                                            56

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Fred Heathcote, that "Plaintiff would never build anything in Bell Canyon again" and by doing the acts to completely prevent and obstruct Plaintiff from any further development of his or any other member's real property beginning in May of 2015 and continuing thereafter. Said wrongful conduct includes Defendants' defamatory statements and breaches of the aforementioned statues of the Common Interest Development Act and breaches of the valid and enforceable contracts. By engaging in this conduct, Defendants, and each of them, intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur.

132.   As a direct and proximate result of the actions of the Defendants, each of these economic relationships were in fact disrupted, and each of the other participants withdrew from any further activities with Plaintiff, and severed any and all current or future relationships with Plaintiff, which were also being discussed at the time of the actions of Defendants.

133.   As a direct and proximate result of the actions of Defendants, and each of them, Plaintiff has suffered harm, and damages, and will continue to do so in the future.  The amounts lost to date from the actions of defendants are not less than $5,250,000.00, which sums do not reflect the investment opportunities to be obtained in the future from these economic relationships that were disrupted by Defendants.

134.   Moreover, the actions of the Defendants directly and proximately caused Plaintiff David-Chai to suffer two heart attacks, suffer severe grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry, which has continued to the present.  Moreover the actions were outrageous and extreme in that they were not simply intended to cause temporary upset and distress to Plaintiff, but to act to permanently cause Plaintiff to continue to suffer the grief, anxiety, worry, disappointment, humiliation, economic distress and emotional distress all to his damage in an amount that will be proved at trial herein.

## X.

### EIGHTH CAUSE OF ACTION

**(Defamation brought by Plaintiff Nissim David-Chai against Defendants Bell Canyon HOA, Bell Canyon Board of Directors, WOLF, KENT, CARNEGLIIA, and DOES 1 through 200, inclusive)**

135.  Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in Paragraphs 1 through 130, inclusive, as though set forth in full here at.

136.  Within one year last passed, Defendants, and each of them, specifically WOLF, KENT and CARNIGLIA, orally advised the owners of 52 Ranchero Road and others including all those  attending the Architectural Committee meetings and Board of Directors meetings involving  Plaintiff's request for a change order, that Plaintiff was dishonest, was a snake, did illegal things to get his projects completed, bribed Ventura County officials for approval of the change orders, was making unapproved changes to his real property in Bell Canyon that was detrimental to all the other members in Bell Canyon and needed to be stopped.

137.  Said statements impugned Plaintiff's reputation in the Bell Canyon community as a contractor and superintendent and constituted slander *per se.*

138.  As a direct and proximate result of the defamatory statements by Defendants, and each of them, Plaintiff has suffered damage to his reputation in the community in the inability to obtain clients, do supervisory work and enter into joint venture agreements with other members, all to his damage in the amount of $1,000,000 plus such additional sums as will be proved at trial.

139.  Defendants fabricated said statements out of whole cloth as there was no basis in fact, and Defendants well knew there was no basis in fact, for said statements.  In making said statements, Defendants acted oppressively, despicably, fraudulently, maliciously and with intent to vex, injure, harass and annoy Plaintiff, and in conscious disregard of Plaintiff's rights.  As a result, Plaintiff is entitled to recover punitive and exemplary damages against Defendants in an amount to be determined at trial. Moreover, the actions of the Defendants directly and proximately caused Plaintiff David-Chai to suffer two heart attacks, suffer severe grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry, which has continued to the present.  Moreover the actions were outrageous and extreme in that they were not simply intended to cause temporary upset and distress to Plaintiff, but to act to permanently cause Plaintiff to continue to suffer the grief, anxiety, worry, disappointment, humiliation, economic distress and emotional distress all to his damage in an amount that will be proved at trial herein.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #: 56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

On the First Cause of Action,

1.     For a preemptory writ of mandate directing Defendant Bell Canyon HOA to vacate and set aside its decision of May 26, 2016, denying the requested change order as approved by the County of Ventura Public Works Dept. and in allowing Plaintiff's further development of his real properties based upon an impartial and unbiased review of the merits of any plans applying objective and definitive standards and requirements for such development and to further allow for Plaintiff to be allowed to work for other members in his professional capacity as a designer and builder. Further, that defendants WOLF, KENT, CARNIGLIA, and Does 1-25 not be allowed to participate in any decision making process of Defendant HOA that affects the ability of Plaintiff to do the above acts except as a member of the HOA at any public meeting;

2.     On the Second Cause of Action,

    a.     For general and special damages the amount of $5,250,000.00, plus such additional sums to be proved at trial herein.

3.     On the Third Cause of Action,

    a.     For special damages the amount of $5,250,000.00, plus such additional sums to be proved at trial herein.

    b.     For general damages in an amount to be proved at trial.

4.     On the Fourth Cause of Action,

    a.     For special damages the amount of $5,250,000.00, plus such additional sums to be proved at trial herein.

    b.     For general damages in an amount to be proved at trial.

5.     On the Fifth Cause of Action,

    a.     For special damages the amount of $5,250,000.00, plus such additional sums to be proved at trial herein.

SECOND AMENDED COMPLAINT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

b.     For general damages in an amount to be proved at trial.

c.     For punitive damages in an amount to be proved at trial herein.

6.     On the Sixth Cause of Action,

a.     For special damages the amount of $5,250,000.00, plus such additional sums to be proved at trial herein.

b.     For general damages in an amount to be proved at trial.

c.     For punitive damages in an amount to be proved at trial herein.

7.     On the Seventh Cause of Action

a.     For special damages the amount of $5,250,000.00, plus such additional sums to be proved at trial herein.

b.     For general damages in an amount to be proved at trial.

8.     On the Eighth Cause of Action

a.     For special damages the amount of $5,250,000.00, plus such additional sums to be proved at trial herein.

b.     For general damages in an amount to be proved at trial.

c.     For punitive damages in an amount to be proved at trial herein.

9.     For attorneys' fees and costs of suit herein for all claims where applicable.

10.    For such other and further relief as allowed by law.

Dated: August 11, 2017

ENGSTROM, LIPSCOMB & LACK

By _____

WALTER J. LACK
DANIEL G. WHALEN
ANDREW M. JACOBSON
Attorney for Plaintiffs

421679

SECOND AMENDED COMPLAINT
60

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-JC-VTA RECEIPT #: 1220304D86366 DATE PAID: 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

## REQUEST FOR TRIAL BY JURY

Plaintiffs hereby request a trial by jury on all claims so triable.

Dated: August 1\, 2017

ENGSTROM, LIPSCOMB & LACK

By

WALTER J. LACK
DANIEL G. WHALEN
ANDREW M. JACOBSON
Attorney for Plaintiffs

421679

SECOND AMENDED COMPLAINT

61

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D863368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
) ss,
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Boulevard, 12th Floor, Los Angeles, California 90067-4113; my email address is tgunther@elllaw.com.

On August 11, 2017, I served the foregoing document described as:
SECOND AMENDED COMPLAINT FOR:
1. ALTERNATIVE AND/OR PEREMPTORY WRIT OF MANDATE;
2. BREACH OF CONTRACT; 3. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; 4. NEGLIGENCE ; 5. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS ; 6. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; 7. NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; 8. DEFAMATION.

on the interested party(ies) in this action as follows:
SEE ATTACHED SERVICE LIST

_X_   (BY MAIL) I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.
___ (BY ELECTRONIC TRANSFER - EMAIL) I caused all of the pages of the above-entitled documents to be sent to the recipients noted above via electronic transfer (EMAIL) at the respective addresses indicated above. This document was transmitted and transmission reported complete without error.
___   (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee(s).
___   (BY FEDERAL EXPRESS) I caused such envelope(s) to be delivered by FEDERAL EXPRESS to the offices of the addressee(s).
_X_ (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 11, 2017, at Los Angeles, California.

Tammy Gunther

Tammy Gunther

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID: 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

421679

**PROOF OF SERVICE**

Nissim David-Chai, et al. v. Bell Canyon Association, Inc., et al.

| | |
|---|---|
| Kevin P. Carter, Esq.<br>Loewenthal, Hillshafer & Carter, LLP<br>5700 Canoga Ave., Suite 160<br>Woodland Hills, CA 91367<br>(818) 905-6283<br>Fax (818) 905-6372<br>E-mail: kpcarter@lhclawyers.net | **Attorneys for Defendant:**<br>**Bell Canyon Association Inc.** |
| David A. Clinton, Esq.<br>Lori L. Vieira, Esq.<br>**CLINTON & CLINTON**<br>100 Oceangate, 14th Floor<br>Long Beach, CA 90802<br>Ph: (562) 216-5000<br>Fax: (562) 216-5001<br>E-mail: lvieira@clinton-clinton.com | **Counsel for Defendants BELL CANYON ASSOCIATION, INC, ERIC WOLF, PETER CARNIGLIA, and STEVE KENT** |
| Robert J. Hudock, Esq.<br>**HUDOCK EMPLOYMENT LAW GROUP**<br>401 Wilshire Blvd., 12th Floor<br>Santa Monica, CA 90401<br>Tel: (424) 252-4770<br>Fax: (424) 253-3721<br>E-mail: rhudock@hudockemploymentlaw.com | **Counsel for Defendants ERIC WOLF and PETER CARNIGLIA** |
| Bruce Isaacs, Esq.<br>Nicole Phillis, Esq.<br>Davis Wright Tremaine LLP<br>865 S Figueroa Street, Suite 2400<br>Los Angeles, CA 90017<br>Tel: (213) 633-6808<br>Fax: (213) 633-6899<br>E-mail: BruceIsaacs@dwt.com | **Co-counsel for Defendant STEVEN KENT** |

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

# EXHIBIT D

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

**RECEIVED FOR SCANNING**
VENTURA SUPERIOR COURT

APR 24 2018

1  ROBERT M. ROSS, ESQ. (CSBN 58173)
   KLASS, HELMAN & ROSS
2  16133 Ventura Boulevard, Suite 1145
   Encino, CA 91436
3
   Tel: (818) 788-7007
4  Fax: (818) 990-2399
5  Attorneys for Plaintiffs
   Leon Reingold and Marina Reingold
6

VENTURA
SUPERIOR COURT
**FILED**
APR 24 2018
MICHAEL D. PLANET
Executive Officer and Clerk
BY: _____ Deputy
S. DeFisher

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF VENTURA

10 LEON REINGOLD, an individual;        ) Case No.:
11 MARINA REINGOLD, an individual,      )
                                        ) **COMPLAINT :**   56-2018-00510717-CU-BT-VTA
12              Plaintiff               )
                                        ) **1.    FOR BREACH OF FIDUCIARY**
13       v.                             )      **DUTIES;**
                                        )
14                                      ) **2.    DECLARATORY RELIEF**
15 BELL CANYON ASSOCIATION,             )
   Inc., a California Non-Profit        )
16 Corporation, doing business as Bell  )
   Canyon Homeowners Association;       )
17 RAY JADALI, an individual; KEIR      )
   MILAN, an individual; PETER          )
18 CARNIGLIA, an individual, and        )
   DOES 1 through 20, inclusive,        )
19                                      )
20              Defendants.             )
                                        )
21                                      )
22

23       Come now plaintiffs Leon Reingold and Marina Reingold, and for causes of

24 action against the defendants, allege as follows:

25       1.    Plaintiffs Leon Reingold and Marina Reingold are husband and wife

26 residing in the County of Ventura, State of California and they are co-owners of the

27 real property located at 9 Wagon Lane, Bell Canyon, California and are members of

28

-1-

COMPLAINT

the Bell Canyon Association.

2.    Defendant Bell Canyon Association, Inc. is a California Non-Profit Corporation, doing business as Bell Canyon Homeowners Association.  Plaintiffs further allege, upon information and belief, that the conduct of the Bell Canyon Association (herein after referred to as "BCA" is governed by Covenants, Conditions and Restrictions (hereinafter "CC&R's") a copy of which is attached hereto as Exhibit "A" hereof, incorporated here at by the reference.

(a)    Plaintiffs are informed and believe that Ray Jadali is a resident of Bell Canyon, County of Ventura and, at all relevant times mentioned herein was a member of the BCA Architectural Committee and did abrogate his duties and responsibilities as a member thereof to the dictates of the BCA Board of Directors in violation of his fiduciary duties to Plaintiffs.

(b)    Plaintiffs are informed and believe that Kei Milan is a resident of Bell Canyon, County of Ventura and, at all relevant times mentioned herein was a member of the BCA Architectural Committee and did abrogate his duties and responsibilities as a member thereof to the dictates of the BCA Board of Directors in violation of his fiduciary duties to Plaintiffs.

(c)    Plaintiffs are informed and believe that Ray Peter Carniglia is a resident of Bell Canyon, County of Ventura and, at all relevant times mentioned herein was a member of the BCA Architectural Committee and did abrogate his duties and responsibilities as a member thereof to the dictates of the BCA Board of Directors in violation of his fiduciary duties to Plaintiffs.

3.    Plaintiffs are uncertain of the specific identities of defendants sued herein as Does 1 through 20, inclusive, and therefore sue said defendants by such fictitious names and will seek leave of court to amend this complaint to set forth

-2-

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1   their true names and capacities when they are known.

2       4.      Plaintiffs are informed and believe and thereon allege that each of the

3   said Doe defendants are in some way responsible to plaintiffs for the damages

4   sustained by plaintiffs as hereinafter set forth and that each of the said Doe

5   defendants were acting pursuant to an agreement and in consort with each other and

6   with defendant Bell Canyon Association, Inc. such that a conspiracy existed to

7   deprive plaintiffs of their property rights causing plaintiffs to sustain damages as

8   hereinafter alleged.  Plaintiffs are further informed and believe that each of the said

9   Doe defendants did engage in one or more overt acts in furtherance of such

10  conspiracy and plaintiffs will seek leave of court to amend this complaint to set forth

11  such acts when ascertained or according to proof at trial.

12                          **GENERAL ALLEGATIONS**

13      5.      In or about August, 2015, plaintiffs submitted grading and other plans

14  to the "Architectural Committee" (hereinafter "AC") of BCA for a project of

15  construction on a lot commonly known as 9 Wagon Lane, Bell Canyon, CA, as

16  provided for under the CC&R's.  Said property is and was subject to the CC&R's of

17  the Bell Canyon Association.

18      6.      A dispute thereafter ensued between plaintiffs and the President of the

19  BCA (and the AC) on the one hand, and plaintiffs on the other hand.  That dispute

20  related to the refusal of BCA (through its AC) to permit construction after plans

21  therefore had been preliminarily approved.

22      (a)     Plaintiffs are further informed and believe and thereon allege that,

23  notwithstanding the "preliminary approval" granted to plaintiffs, by the AC and the

24  BCA, the BCA, upon learning that Mr. David Chai was to be the plaintiff's

25  contractor, instructed the AC to refuse to accept plaintiffs' fee deposit or even

26

27

28

-3-

COMPLAINT

1  permit the submission of the grading plans which the AC had previously given its

2  "preliminary approval" and which had been approved by the County of Ventura.

3      (b)    Plaintiffs are informed and believe and thereon allege that, as a direct

4  consequence of the position taken by the BCA (through its AC) plaintiffs prepared

5  and submitted a letter to members of the Board of Directors concerning the

6  interference by its President in the approval process for the plaintiffs' proposed

7  construction.  A true copy of said letter is attached hereto as Exhibit "B" hereof and

8  is incorporated hereat by this reference.

9      (c)    Plaintiffs are informed and believe and thereon allege that, as a direct

10  result of the delivery of Exhibit "B" to members of the Board of Directors of BCA,

11  the dispute was resolved in or about November, 2016, by written agreement

12  (although defendant BCA did not execute the agreement until sometime in

13  December, 2016) and plaintiffs were permitted to proceed with their project of

14  construction.  A true copy of said written agreement resolving said dispute is

15  attached hereto as Exhibit "C" hereof and is incorporated here at by this reference.

16      7.    Under the express terms of the agreement, the plaintiffs' grading plans

17  were to be, and subsequently were in fact, approved by the AC of the BCA.

18      8.    On or about November 30, 2016, as a result of the resolution of the

19  dispute, plaintiffs paid a fee to the BCA in the sum of $87,545.00 as required by

20  BCA to commence work on the approved plans and thereafter began excavation

21  work on the approved grading plans for the property at 9 Wagon Lane.

22      9.    The said grading plans were then submitted by plaintiffs to the County

23  of Ventura for its approval, however, the County of Ventura required some changes

24  in the grading plans which plaintiffs made and which the County of Ventura

25  thereafter approved.

-4-

COMPLAINT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

10.     In accordance with the terms of the CC&R's, on or about May 10, 2017, said grading plan changes were submitted to the AC of the BCA which had 30 days within with to object, oppose or deny said changes pursuant to paragraph 21 (B) of the C.C. & R's (Exhibit "A"). No such objections, opposition or denial was made, and in full accordance with the CC&R's, the changed plans were deemed to have been approved.

11.     On or about August 2, 2017, a new and revised set of plans were submitted containing a proposed grading change to widen the slope on the northern exposure of the property (which faces away from the development and is adjacent to the Aerojet Rocketdyne property).  The proposed changes created no visual or other aesthetic disturbance to any residence in the Bell Canyon community.  Said change was necessitated by the fact that, prior to its acquisition by plaintiffs, 9 Wagon Lane had been used as a dumping site for earlier construction in the community.  This fact was not known to plaintiffs until they commenced the work on the approved plans and learned that the property required additional grading, fill and compaction.  The change request also included a lowering of the elevation by 3 feet (which said lowering had previously been requested by the AC), a change to the drainage design which provided for a more natural system as approved by Ventura County, and a minor change to the height of the plaintiff's driveway.

12.     On or about August 29, 2017, defendant BCA, by and through its AC, by letter attached hereto as Exhibit "D" hereof and incorporated hereat by this reference, ordered the stop of all work under the approved plans.

13.     After the receipt by plaintiff of the AC letter of August 29, 2017, plaintiff submitted yet further plans addressing the issues raised by the AC in the August 29, 2017, letter.  Although plaintiffs were not permitted to continue any

-5-

COMPLAINT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1  further work on the project, they were allowed, at plaintiffs' request, to perform such

2  erosion control grading as was appropriate and necessary to prevent damage to

3  adjacent or adjoining properties.

4      14.    Plaintiffs are informed and believe that the August 29, 2017, order to

5  stop work under the submitted changes to the previously approved grading plans

6  was the result of instructions from the Board of Directors of defendant BCA.

7  Plaintiffs are further informed and believe and thereon allege that the basis and

8  reasons set forth upon Exhibit "D" are a pretext and that the true reason for such

9  order to stop was the fact that plaintiffs were scheduled to give testimony on behalf

10 of Mr. David Chai in connection with litigation against the BCA, and others, filed by

11 Mr. David Chai and pending before this court as case number 56-2016-00486775-

12 CU-WMVTA, (hereinafter referred to as "Chai vs. BCA").

13

14     (a)    Plaintiffs are further informed and believe and thereon allege that

15 certain members of the Board of Directors of BCA, including its president, had been

16 deposed and testified, mistakenly, that plaintiffs' property was David Chai's

17 property (which had also been denied approval by the BCA (by and through the AC)

18 and that, by reason of said mistake, and by reason of the fact that the President of the

19 BCA knew that plaintiffs' testimony was negative to the President of the BCA and

20 the Board of Directors of the BCA, the BCA wrongfully, intentionally, purposefully

21 and without reasonable justification or good cause, and with the intention to subvert

22 the testimony of plaintiffs, and to pressure them into not supporting the position of

23 David Chai in the Chai vs. BCA litigation, refused to permit plaintiffs to proceed

24 with their project.

25

26     (b)    After August 29, 2017, and before October 23, 2017, (the date of

27 plaintiffs' depositions) plaintiff Leon Reingold was specifically instructed by the

28

-6-

COMPLAINT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1  president of the BCA that he "... better not testify for Chai or ..." plaintiffs "... would

2  not get to build ..." the project at 9 Wagon Lane.

3      15.    Plaintiffs are further informed and believe that letter of August 29,

4  2017, was a pretext, that no reasonable basis existed to order plaintiffs to cease their

5  construction and that no reasonable basis existed to deny plaintiffs the requested

6  changes as set forth in the August 2, 2017, plan changes.

7      16.    Plaintiffs are further informed and believe that the actions of the AC,

8  as a subservient body of the Board of Directors of BCA constituted a breach of it's

9  fiduciary obligations to the plaintiffs as property owners under the C.C. &R's in (1)

10  issuing the letter of August 29, 2017, under the dictate of the President of the Board

11  of Directors and violates the AC's duty to reasonably assess the proposed plans for

12  construction independent of any political inputs by members of the Board of

13  Directors; (2) failing to independently evaluate the plans to determine whether the

14  project would, in fact, be inconsistent with the other construction in the community;

15  (3) acted solely to punish, coerce and intimidate plaintiffs under the instructions of

16  the Board of Directors of BCA in an attempt to prevent, and if it could not prevent,

17  in retaliation and retribution for the expected truthful testimony of plaintiffs in the

18  Chai vs. BCA matter; (4) acted in conformity with the tactics used by the BCA

19  through the AC in it's prior rejection of the original plans submitted by plaintiffs in

20  August of 2015, which led to the letter (Exhibit "B") which led to the agreement

21  (Exhibit "C") which permitted the plaintiffs to commence their building project.

22      (a)    Plaintiffs are informed and believe that the issuance of the August 29,

23  2017, letter to cease work (Exhibit "D") by the BCA, through its AC, was in excess

24  of its authority, was an unreasonable exercise, and an abuse of its discretion by

25  reason of the fact that it was issued under directions of the Board of Directors of

-7-

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-JC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #: 56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1   BCA and not the result of an independent and reasonable evaluation of the project or
2   the proposed changes to the approved plan for the project.

3       (b)     Plaintiffs are informed and believe and thereon allege that the issuance
4   of the August 29, 2017, letter by the AC violates plaintiffs rights as a member of the
5   Bell Canyon Association to a fair and impartial determination of its plan(s), free
6   from political influence of the Board of Directors and/or the president of the Board
7   of Directors, and to have the plan(s) reviewed solely on their merits as to whether it
8   is in keeping with the style, design and aesthetics of the community.

9       17.     On or about December 11, 2017, plaintiffs again submitted plans
10  revised to accommodate those issues raised in the August 29, 2017, letter.

11      (a)     Defendant BCA by and through its AC again rejected the plans by
12  letter dated January 5, 2018, a copy of which is attached hereto as Exhibit "E"
13  hereof and incorporated hereat by this reference;

14      (b)     In response to the AC letter of January 5, 2018, plaintiffs submitted a
15  full, complete and detailed statement to the AC on January 15, 2018, a true copy
16  thereof is attached hereto as Exhibit "F" hereof, incorporated hereat by this
17  reference;

18      (c)     In reply to plaintiffs correspondence of January 15, 2018, (Exhibit "F),
19  the BCA, by and through its AC, sent plaintiffs a letter dated February 2, 2018, a
20  true copy of which is attached hereto as Exhibit "G" hereof and incorporated hereat
21  by this reference.

22      18.     Thereafter, plaintiffs attended a meeting of the AC in which their
23  requests were denied.

24      19.     After denial of plaintiffs requests, the plaintiffs went before the Board
25  of Directors of the BCA to appeal the denial of the proposed plans. As expected, the

26
27
28

COMPLAINT

1   Board of Directors denied plaintiffs' appeal.

2      20.   Plaintiffs have exhausted each, all and every remedy required pursuant

3   to the C.C. & R's to resolve their dispute with the BCA, however, the BCA (1) has

4   failed and continues to fail to provide a fair and unbiased hearing on the merits of

5   the plaintiffs' plans,  insulated from the issues concerning the Chai vs. BCA lawsuit,

6   and has denied plaintiffs their rights to construct their project; (2) has based the

7   rejection and denial of plaintiffs' plans on a pretext that the project is not in harmony

8   with the community when the project is, in every respect, in conformity with the

9   designs, styles and aesthetics of the community; (3) has denied the plaintiffs' plans

10  in retribution for supporting the position of David Chai in his lawsuit against the

11  BCA.

12     21.   As a direct result of the order to stop work on the project, the refusal to

13  approve the plans submitted to the AC by plaintiffs and the violations of the

14  obligations of the AC and the BCA to its members, and specifically to plaintiffs, the

15  plaintiffs have suffered and will continue to suffer damages, the exact amount of

16  which is presently unknown to plaintiffs who will seek leave of court to amend this

17  complaint to set forth same when ascertained or according to proof at the time of

18  trial.

19

20                      **FIRST CAUSE OF ACTION**

21                   **BREACH OF FIDUCIARY DUTIES OF**

22            **BELL CANYON ASSOCIATION, Inc. TO PLAINTIFFS**

23   (Against Bell Canyon Association Inc., Defendant Ray Jadali, Defendant Keir

24       Milan, Defendant Peter Carniglia, and Does 1 through 10, inclusive)

25     22.   Plaintiffs repeat and reallege each, all and every allegation herein set

26  forth in paragraphs 1 through 21 hereof as though set forth again in full here at.

27

28

-9-

COMPLAINT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D863368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

23.   Plaintiffs are informed and believe that the Board of Directors of defendant Bell Canyon Association, Inc. is the governing body of and for the BCA and that the said Board of Directors and the BCA are fiduciaries of the members of the BCA and that plaintiffs are members of the BCA to whom fiduciary obligations are owed by the BCA.

24.   Plaintiffs are further informed and believe, and thereon allege, that the Board of Directors of the BCA act as the official governing body of and for the BCA.

25.   Plaintiffs are further informed and believe and thereon allege that any act of the Board of Directors of the BCA is the official act of the BCA.

26.   Plaintiffs are further informed and believe, and thereon allege that the AC of the BCA is a subservient body to and of the Board of Directors of BCA and that all acts of the AC are, in fact, the authorized and delegated acts of the BCA.

27.   Plaintiffs were duly ordered to appear and give testimony on behalf of David Chai in connection with a suit filed by David Chai and against the BCA and members of the Board of Directors thereof.  Plaintiffs are informed and believe and thereon allege that the denials of their plans for the project at 9 Wagon Lane were directly related to, and were intended to dissuade plaintiffs from the giving of truthful testimony in said matter.

28.   Plaintiffs are further informed and believe, and thereon allege that the "stop work order" issued by the AC on August 29, 2017, was an authorized act of the BCA by and through its Board of Directors in an attempt to dissuade plaintiffs from cooperating with David Chai in his law suit and that the subsequent denials of the plans submitted by the plaintiffs on December 11, 2017, was in retaliation, and as punishment for the deposition testimony given by plaintiffs in said litigation.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE :EFT

29.     Plaintiffs are further informed and believe and thereon allege that
neither the stop order issued by the AC on August 29, 2017, nor the subsequent
rejection of plaintiffs' amended plans, submitted on or about December 11, 2017,
was justified, nor was there any legitimate basis for the actions of the AC, but rather,
that the stop order and rejection of plans were issued in an attempt to intimidate
plaintiffs into not testifying for Mr. Chai, and subsequent to such testimony, in
retaliation for and in punishment of the truthful testimony of plaintiffs in connection
with the lawsuit by David Chai against the BCA and others.

30.     Plaintiffs are further informed and believe and thereon allege that the
issuance of the August 29, 2017 order to stop the plaintiffs' construction project, and
the subsequent denial of the plaintiffs' proposed plan changes were based upon a
pretext that the project was not in "harmony" with the community, whereas the true
and actual reason for the issuance of said stop order and refusal to approve
plaintiffs' subsequent plans was the truthful testimony of plaintiffs in connection
with the lawsuit by David Chai against the BCA and others.

(a)     Plaintiffs are further informed and believe that the denial of plaintiffs'
proposed changes submitted on August 2, 2017 and on December 11, 2017, was
retaliation and punishment for the truthful testimony of plaintiffs in connection with
the lawsuit by David Chai against the BCA, and others, and that any other reason is
purely a pretext and as such, violates the fiduciary duties BCA owes to its members
and that the reason given by the AC was a mere pretext for the actions taken against
plaintiffs.

31.     As a direct result of the actions of the AC, as the duly delegated
subservient body of the BCA, and the actions of the BCA in dictating to the AC that
the plaintiffs' plans not be approved, plaintiffs have sustained damages, costs and

-11-

COMPLAINT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1  expenses the exact amount of which are presently unknown to plaintiffs and

2  plaintiffs will seek leave of court to amend this complaint when same are ascertained

3  or according to proof at the time of trial, however, plaintiffs are informed and

4  believe that said sum exceeds $750,000.00.

5      32.   Plaintiffs are further informed and believe and thereon allege that the

6  stop order issued by the BCA by and through its AC, and the refusal to approve the

7  plaintiffs' plans as submitted on August 2, 2017 and December 11, 2017, were done

8  with malice and in blatant and intentional disregard for the rights of the plaintiffs

9  and was taken specifically to vex, damage, injure and annoy the plaintiffs with the

10 specific intent to punish plaintiffs for testifying truthfully under oath in depositions,

11 and as such constitutes despicable conduct and is a basis for the imposition of

12 punitive damages against BCA.

13

14           **SECOND CAUSE OF ACTION**

15   **FOR DECLARATORY RELIEF UNDER CIVIL CODE § 1060**

16    (Against Bell Canyon Association, Inc. and Does 7 through 20, inclusive)

17      33.   Plaintiffs repeat and reallege each, all and every allegation herein set

18 forth in paragraphs 1 through 30 hereof as though set forth again in full here at.

19      33.   The Covenants, Conditions and Restrictions of the Bell Canyon

20 Association, Inc., (Exhibit "A") is a contract between the association and its

21 members.

22      34.   A true dispute exists between plaintiffs, as members of the BCA, and

23 the BCA through its Board of Directors and the AC as a subservient entity of the

24 Board of Directors which is responsible for approving plans for construction within

25 the community.

26

27      35.   Plaintiffs contend that, pursuant to "Clause III" and Clause IV", and

28

-12-

COMPLAINT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 122030408368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1  subject to the conditions set forth under paragraph 21 of said "Clause III", plaintiffs

2  are entitled to build upon the lot known as 9 Wagon Lane, without the unreasonable

3  interference of BAC, provided that such construction does not unreasonably violate

4  the specifications set forth under "Clause III", or unreasonably deviate from the

5  style, design, and aesthetics of the community.

6      36.    Plaintiffs further contend that the plans submitted by plaintiffs on

7  August 2, 2017, and on December 11, 2017, for their project of construction on their

8  property did not unreasonably violate any of the specifications set forth under

9  "Clause III" of the C.C. & R.'s and that the plans were, in all reasonable respects in

10  conformity with the style, design and aesthetics of the community.

11

12      37.    Plaintiffs are informed and believe and thereon allege that the rights of

13  the AC, as provided for under "Clause III", subsection 21, and "Clause IV" does not

14  include the right to arbitrary or unreasonable denial of the plaintiffs' plans as

15  submitted by them on August 2, 2017, and thereafter again on December 11, 2017.

16      38.    Plaintiffs are further informed and believe that the obligations of the

17  AC require that it be independent of the Board of Directors of BCA when deciding

18  whether a proposed plan of construction meets the criteria set forth under "Clause

19  III" and specifically includes an obligation not to consider extraneous actions of the

20  property owner, such as supporting another property owner in an action against the

21  BCA, and that basing a decision on whether or not to permit construction based

22  upon such extraneous matters is a violation of the implied covenant of good faith

23  and fair dealing, constitutes an abuse of the limited discretion of the AC as set forth

24  under subsection 21 of "Clause III" and "Clause IV", and violates plaintiffs' rights

25  as members of the BCA and as owners of the property known as 9 Wagon Lane.

26

27      39.    Plaintiff further alleges that, pursuant to subsection 4 of Clause "IV",

28  the AC must exercise its power to approve or disapprove a plan for construction

COMPLAINT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

1  based upon reasonable criteria and that the discretion of the AC to disapprove is not

2  unrestrained or absolute and that it may not be arbitrarily exercised, but must be

3  exercised in conformity with the general character of the community and the design,

4  style and aesthetics of the proposed plan.

5       40.   Plaintiff further alleges that the denials of plaintiffs' plans and the

6  order to cease further work was not issued by the AC as a result of any defect or

7  deficiency of the plans submitted by plaintiffs but were, instead, issued under

8  instructions from the BCA and, or its Board of Directors solely in connection with

9  the fact that plaintiffs were and are witnesses against the BCA and members of its

10  Board of Directors in connection with claims filed by David Chai in his suit against

11  the BCA and others.  That said denials were retaliatory and punitive and were not

12  based upon any defects in the plans and that any reference to any such defect in any

13  such plans was and is a pretext to punish, vex and annoy plaintiffs and to make it

14  financially impractical for plaintiffs to assist David Chai with truthful and honest

15  testimony in his suit against the BCA.

16       41.   Plaintiff is informed and believes that the defendant BCA denies that

17  the AC acted outside the scope of its authority under "Clause III", subsection 21,

18  and "Clause IV" and/or that the actions of the AC were in violation of the implied

19  covenant of good faith and fair dealing, and/or that there were and are legitimate and

20  reasonable reasons for the denials of plaintiffs' construction plans which were within

21  the power and authority of the AC pursuant to subsection 21 of "Clause III" or

22  "Clause IV" of the C.C.&R's.

23       42.   A true dispute exists between the parties entitling plaintiffs to a

24  declaration of their rights, and the duties and obligations of the AC and the BCA

25  under the C.C.&R.'s.  Pursuant to the C.C.&R.'s, in the event of suit, the prevailing

26  party is entitled to legal fees and costs, plus interest.

- 14 -

COMPLAINT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

43.     As a direct result of the dispute between the parties, plaintiffs have had to incur legal fees and costs, the exact amount of which is presently unknown to plaintiffs who will seek leave of court to amend this complaint to set forth same when ascertained or according to proof at time of trial.

WHEREFORE, plaintiffs pray for judgment against the defendants as follows:

1.     For damages according to proof;

2.     For punitive damages according to proof;

3.     For a declaration of the rights, duties and obligations of the parties under the C.C. & R.'s.

4.     For legal fees according to proof;

5.     For costs of suit incurred herein;

6.     For such other and further relief as the court may deem proper.

Dated: April 20, 2018

Respectfully submitted,

KLASS, HELMAN & ROSS

ROBERT M. ROSS
Attorneys for plaintiffs
Leon Reingold and Marina Reingold

- 15 -

COMPLAINT

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

# EXHIBIT A

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304DB6368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Instrument #12385    BOOK 3468   PAGE 31
RECORDED AT REQUEST OF
Title Ins. & Tr. Co....1
AT 38  MIN. PAST 2P  M
OFFICIAL RECORDS OF VENTURA COUNTY
MAR 11 1969  1

J.31 DECLARATION OF
COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATIONS

THIS DECLARATION, made this 26th day of February, 1969, by SPRUCE LAND CORPORATION, a California corporation (herinafter called "Declarant").

WITNESSETH:

WHEREAS, Declarant is the record owner of the real property described in clause I of this declaration (hereinafter sometimes referred to as "subject property"); and

WHEREAS, Declarant has established a general plan of development of subject property and the lots therein for the benefit of subject property and each and every lot, part or parcel thereof or therein, and desires to secure the uniform development of subject property in said lots, parts and parcels in accordance with said plan;

NOW THEREFORE, the Declarant does hereby fix and establish for the mutual benefit of all successors and assigns of Declarant the following covenants, conditions and restrictions, viz:

CLAUSE I

PROPERTY SUBJECT TO THIS DECLARATION

The real property which is subject to said covenants, conditions and restrictions is situated in the County of Ventura, State of California, and is described and shown as:
Lots 1 to 716 inclusive of Tract Nos. 2008-1, 2008-2, 2008-3, 2008-4, and 2008-5, as per maps recorded in Book 51, Pages 25 to 75 inclusive of Maps, in the office of the county recorder of said county.

CLAUSE II

DEFINITIONS

For the purposes hereof, the following explanations and definitions of words, terms and phrases shall govern unless the context thereof indicates differently:

J.32 Architectural Committee: The committee provided for in Clause IV hereof.

Accessory Building: A subordinate building or portion of the principal building other than a garage the use of which is incidental to that of the principal building and customary in connection with that use.

Association: The Woodland Hills Country Estates Association, as provided for in Clause V hereof.

Barn: A large building for the storage of farm products or feed and usually for the housing of farm animals or farm equipment.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-JC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Building:  Any structure having a roof supported by columns or by walls and intended for the shelter, housing or enclosure of any person, animal, chattel or property of any kind.

Building Height:  The vertical distance measured from the established ground level to the highest point of the following:

   (a)  The top side of the ceiling beams in the case of a flat roof;

   (b)  The deck line in the case of a mansard roof; and

   (c)  The mean level of the top side of rafters between the eaves and the ridge in the case of a gable, hip or gambrel roof.  Chimneys shall not be included in calculating the building height.

Common Area:  All real property, including private roads, owned by the Association for the common use and enjoyment of the members of the Association.

Corral:  A pen or enclosure for the confining, capturing or holding of livestock.

Dwelling:  A residential building for single-family occupancy permitted to be built hereunder, not including accessory buildings or garages.

Family:  One or more persons each related to the other either 1.33 by blood, marriage or legal adoption, or a group of not more that three persons not also related, together with his or their domestic servants, maintaining a common household in a dwelling.

Garage:  A building or portion of a building designed for the purpose of parking and sheltering automobiles, whether attached, partially attached, or separate from the dwelling.

Grade:  Any excavation or fill, or any combination thereof upon all or any part of a lot, or any slope or other condition that results from any excavation or fill.

Lot:  Each parcel of land shown as a lot in the final map of subject property and designated on said map by a separate number, with the exception of the common area.

Lot Area:  The area of a horizontal plane, bounded by the vertical planes through front, side and rear lot lines.

Lot Line, Front:  That boundary line of a lot which is along a street line, except as otherwise designated by the Architectural Committee.  On corner lots (i.e., lots bounded on two sides by streets), the front lot line shall be the line designated by the Architectural Committee.

Lot Line, Rear:  That boundary line of a lot which is most distant from, and is, or is approximately parallel to the front lot line.

Lot Line, Side:  Any boundary line of a lot which is not a front or rear lot line.

Member:  Every person or entity who holds membership in the Association.

Owner:  The record owner, whether one or more persons or entities, of a fee simple title to any lot which is a part of the properties, but excluding those having such interest merely as security for the performance of an obligation.

Stable:  A building in which domestic animals are sheltered and fed.

1.34 Stall:  A compartment within a stable.

Story:  That portion of a building included between the surface of any floor and the surface of the floor next above; or, if there is no floor above, the space between the floor and the ceiling next above.  A basement shall not be counted as a story.

Story, Half:  A space under a sloping roof which has the line of intersection of roof decking and wall not more than three feet (3') above the top floor level, and in which space not more than sixty percent (60%) of the floor area is completed for principal or accessory use.

Structure:  Anything erected, constructed, placed, laid or installed in, on or over said real property, the use of which requires a location on or in the ground.

*CLAUSE III*

GENERAL RESTRICTIONS

1.  LAND USE AND BUILDING TYPE.

All lots (except as provided in Clause III, Section 26) shall be used for private single family residence purposes only.  On each lot not more than one detached single family dwelling, one

detached dwelling for servants and/or guests (without kitchen or kitchen facilities other than a small kitchenette to be used only for preparing breakfasts and light lunches) which shall never be rented or used otherwise than for the housing of servants and/or guests, one private garage designed for use by not less than three (3) automobiles, one barn or stable for the housing of any animals or fowl, a corral, a swimming pool, patios, walkways, fences and such other structures as may be appurtenant thereto, shall be erected, constructed or maintained.

No building, any part of which is for dwelling purposes, shall in any manner be occupied or lived in while in the course of original construction or until made to comply with all requirements as to area .Las and with all other conditions set forth or referred to herein, or in any further restrictions established and applicable to subject property. No building, structure, or vehicle, anywhere on subject property, other than a completed dwelling, shall ever be lived in or used for dwelling purposes, including tents, shacks, trailers, campers, mobile homes, boats, outbuildings, garages, barns, stables, or other structures, nor shall any sign or billboard be erected, placed or maintained on any lot except as permitted in Section 19 of Clause III. However, nothing in this section shall be construed to prevent the erection, placement or maintenance by Declarant or its successors or assigns, or signs, trailers, offices or buildings, in connection with the conduct of tract business and/or development and sale of any part of subject property.

2. HEIGHT LIMITATION.

No building exceeding two (2) stories in height, or a height of twenty - eight feet (28') from the reference grade of any lot, shall be erected or maintained except with the express written consent of the Architectural Committee.

3. DWELLING SIZE.

No single family dwelling shall be erected on any lot which shall have a floor area of less than eighteen hundred (1,800) square feet, excluding any portion used for outside or open porches and/or patios, and/or basements, and/or cellars, and/or garages, and/or carports.

No dwelling used for housing servants and/or guests shall .Las be erected on any lot which shall have a floor area of less that one thousand (1,000) square feet, excluding any portion used for outside or open porches and/or patios, and/or basements, and/or cellars, and/or garages, and/or carports. Further, no dwelling housing servants and/or guests shall be erected on any lot unless and until a single family dwelling has been constructed or is in the process of being constructed on said lot.

4. FRONT, REAR AND SIDE SETBACK.

No dwelling, or any other building or structure, or any part thereof, (except pool heaters, fences, walls and the like, provided their location has been duly approved by the Architectural Committee), including porches, chimneys, steps, balconies and other architectural features shall be erected, placed, permitted or maintained on any lot nearer than twenty - five (25) feet from the front lot line or nearer than ten (10) feet from the side boundaries of such lot or nearer than fifteen (15) feet from the rear boundary line of such lot. The setback distances shall be measured from the outer most point of architectural features (such as eaves, etc.) and if no such feature exists from the walls of the structure to the front lot line or to the respective side or rear lot line.

No barn or stable shall be located less than fifty feet (50') from a dwelling constructed on any adjoining lot, said distance to be measured from the walls of such structures to such dwelling.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

5. SPECIFICATIONS FOR, AND HEIGHT LIMITS OF, FENCES.

Horses and other livestock shall be contained by fences which meet the following requirements: (i)  posts shall be 4" x 6" or 5" x 5" minimum and be installed at least 3 feet deep in the ground, (ii) posts shall be not more than 8' apart, (iii) stringers shall be a minimum of 2" x 6" with the top of the bottom stringer 1₃₇ not more than 18" above the ground, and (iv) the top of the top stringer shall be not less than 6 feet above the ground and there shall be not more than a 12" vertical interval between stringers.

Within one year from occupancy, an owner shall install along the front, rear and side lot lines and/or easement lines, fences according to the following requirements:  (i)  Posts shall be 4" x 6" with the height of the post to be 54" above grade and said posts to be installed at least 3' deep in the ground, (ii)  posts shall be centered 8' apart, (iii) stringers shall be a minimum of 2" x 6" with the top of the bottom stringer to be 18" above the ground, and (iv) the top of the top stringer shall be 54" above the ground and there shall be on 18" vertical interval between the stringers.

The fences required pursuant to this section shall be painted white.

6. PROTECTION OF VIEW.

No fences, walls, trees or other obstruction shall be placed, permitted or maintained on any land in subject property which substantially obstructs or diminishes the view from any other land in subject property.  Upon the finding made by the Architectural Committee that a view is substantially obstructed or diminished by fences, walls, trees or the like on any portion of land in subject property, the owner thereof, upon written notice sent by the Architectural Committee shall within thirty (30) days remove, cut down or cut back or alter any such obstruction to the extent specified by the Architectural Committee.  If said notice is not complied with, the Architectural Committee may cause the removal, cutting down or cutting back or alteration of any such obstruction 1₃₈ with expenses of such action to be borne by the owner of the lot.

7. STANDARD MAIL BOXES.

All mailboxes shall be standard R.F.D. rural boxes without applied ornaments, mounted on plain white pine or redwood (or equal material) posts.

8. RUBBISH CONTAINERS.

Rubbish of all kinds, including garbage, combustible trash such as papers, garden cuttings and branches, and incombustible trash such as bottles, cans etc. and the receptacles containing them at all times shall be kept on the owner's premises fully shielded against view from the street or adjacent dwellings.

9. LAND NOT TO BE USED FOR STORAGE.

No land in subject property shall at any time be used for outside storage of building materials, vehicles, implements, tools, furniture, landscaping materials or equipment, irrigation pipes or apparatus, junk, trash or any other things whatsoever; provided, however, that building and landscaping materials, tools or equipment may be placed and maintained on any lot or building site from and after the approval in writing by the Architectural Committee of plans and specifications for a structure of any kind to be constructed on such land as herein provided and for use in such construction; provided further that such construction shall commence in a reasonable time after such approval.  Should such construction not commence within such

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

reasonable time the materials, tools or equipment must be removed forthwith upon request by the Architectural Committee. The Architectural Committee shall be the sole judge of what is a "reasonable time".

Failure of an owner to comply with any provision of this section may be remedied by any of the measures provided for in 139 Clause VI, but, should the Architectural Committee elect to proceed under Section 3 (A) of Clause VI, the reasonable expenses involved in the removal of such objectionable things as hereinabove described shall become due and payable from such owner to the Architectural Committee within five (5) days after written demand therefor shall have been mailed to the last known address of such owner.

10. CHIMNEYS.

No chimney shall extend more than four feet (4') above the building without the prior written approval of the Architectural Committee.

11. NUISANCES.

No noxious or offensive activities shall be carried on, in or upon any part of subject property, nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighborhood. No burning of refuse shall be permitted outside any dwelling without the prior written approval of the governmental agency having jurisdiction thereover for fire prevention.

12. KEEPING OF ANIMALS.

The keeping of animals and fowl on any lot shall be permitted, but strictly limited, as follows:

      A.    Not more than a total of three (3) horses, cows and sheep per one-half (1/2) acre at any one time, allotted in any way the land owner desires (e.g. one horse, one cow and one sheep), except that any foals, calves or lambs born of these animals may be kept in addition to these numbers for a period not to exceed one (1) year following birth thereof;

      B.    Not more than six (6) chickens per one-half (1/2) 140 acre at any one time;

      C.    Not more than six (6) pigeons or doves per one-half (1/2) acre at any one time;

      D.    Not more than six (6) pheasants per one-half (1/2) acre at any one time;

      E.    Not more than six (6) rabbits per one-half (1/2) acre at any one time;

      F.    Not more than a total of three (3) dogs at any one time, except that any puppies born of these animals may be kept in addition to these numbers for a period not to exceed (9) months following the birth thereof;

      G.    Not more than a total of five (5) cats at any one time, except that any kittens born of these animals may be kept in addition to these numbers for a period not to exceed nine (9) months following the birth thereof;

      H.    No reptiles or ferae naturae at any time.

      I.    No other animals, livestock, poultry or bees shall be kept or raised.

CASE #:56-2022-00563049-CU-JC-VTA RECEIPT #: 122030 4D86368 DATE PAID: 03/4/22 2:16 PM TOTAL: 435.00 TYPE: EFT

J.      No dog, cat, livestock, fish, fowl or other animal raising or trading as a business shall be permitted at any time.

13. PLANT DISEASES OR NOXIOUS INSECTS.

No owner shall permit any thing or condition to exist upon his lot which shall induce, breed or harbor infectious plant diseases or noxious insects.

14. LAND TO BE KEPT CLEARED.

Each land owner shall keep his property free and clear of excessive weeds and rubbish (including rubbish dumped by others) and if the property is improved, shall do all other things necessary or desirable to keep the front, rear and side yards of the premises in neat, clean and attractive and in good order, and if a garden or lawn has been installed, adequately cultivated or mowed and watered. When the property includes a slope, the owner shall plant and water or otherwise maintain it in such a manner that erosion is prevented.

Failure of an owner to comply with this provision may be remedied by any of the measures provided for in Clause VI, but, should the Architectural Committee elect to proceed under Section 3 (A) of Clause VI, the reasonable expenses involved in the removal of weeds and rubbish or other acts necessary to put the premises in a neat and orderly condition shall become due and payable from such owner to the Architectural Committee within five (5) days after written demand therefor shall have been mailed to the last known address of such owner.

15. MAINTENANCE OF PLANTINGS.

The Architectural Committee shall have the right at all times to enter upon any vacant or unimproved land in subject property and to plant, replant or trim, cut back, remove, replace or maintain hedges, trees, shrubs or flowers on the front half thereof, or in the area within fifteen feet (15') of any rear lot line, or within ten feet (10') of any side lot lines, and the said Architectural Committee shall not be deemed guilty in any manner of trespass. When the owner of the land so planted or maintained by the Architectural Committee shall give bona-fide evidence and written notice of said Architectural
Committee of his intention to improve said land within thirty (30) days, the Architectural Committee may within said thirty (30) days, and until work on said improvements is commenced, transplant, remove or dispose of any or all of the plantings which may have been made by it. All costs arising from work performed pursuant to this section shall be borne by the owner

16. NAMEPLATES, TELEVISION OR RADIO ANTENNAE AND TOWERS FOR HAND LAUNDRY DRYING FACILITIES.

There shall be not more than one nameplate on each lot. Said nameplate shall not be more than seventy - two (72) square inches in area, and shall contain the name of the occupant and/or the address of the dwelling. It may be located on the door of the dwelling or the wall adjacent thereto or upon the wall of an accessory building or structure, or it may be free-standing in the front or side yard, provided that the height of the nameplate is not more than twelve inches (12") above the adjoining ground grade. No television or radio antennae or tower or laundry drying equipment shall be erected or used outdoors whether attached to a building or structure, or otherwise, unless first approved in writing by the Architectural Committee.

17. SEWER AND SANITATION FACILITIES.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 122030408368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Either sewer lines or a modern septic tank, properly equipped with leech lines or seepage bed, design and plans for which shall be approved by the Architectural Committee, shall be the only means provided for sewage disposal. No privy or cesspool other than seepage bed hereinabove referred to shall be erected, excavated, maintained or used upon any land in subject property except a temporary privy during the course of construction of a building. Any lavatory, toilet or water closet shall be enclosed and located within the building permitted to be erected on said land as herein provided.

18. UNDERGROUND FACILITIES

No pipes, conduits, lines, wires, equipment or facilities for the communication, transmission or metering of electricity, gas, water, telephonic or other utilities shall be constructed, La placed or permitted to be placed anywhere in or upon any lot, other than within buildings, or structures, or attached to the walls thereof unless the same shall be contained in pipes, conduits, cables or vaults constructed, placed and maintained underground or concealed in or under buildings or other approved structures.

19. SIGNS.

Except for nameplates and signs advertising the property for sale and/or lease, no sign or advertising device of any kind shall be placed or maintained on any lot or upon any other portion of subject property without the prior written approval of the Architectural Committee. Declarant however may erect and maintain upon subject property such signs and other advertising devices as it deems desirable in connection with its operations for the development and sale of subject property.

20. OIL AND MINING OPERATIONS.

No lot shall be used for the purpose of boring, mining, quarrying, exploring for or removing water, oil or other hydrocarbons, minerals of any kind, gravel or earth. No machinery shall be placed, operated or maintained upon any lot except such machinery as usual and customary in connection with the maintenance of a private dwelling.

21. ARCHITECTURAL CONTROLS

A.        No building or structure of any kind, including without limitation, dwellings, accessory buildings, garages, fences, walls, retaining walls, sidewalks, steps, awnings, poles, swimming pools, tennis courts and the like shall be erected, constructed, installed, placed, altered or maintained upon any lot or upon any street or parkway adjacent thereto unless and until complete detailed plans and specifications therefore, color scheme thereof, if appropriate, and a plot plan showing and fixing the location of such structure with reference to the streets and lot lines (and the grading plan if requested) shall have been first submitted for approval to and approved in writing by the Architectural Committee. Such plans and specifications, color scheme, plot plan and grading plan shall be submitted in writing over the signature of the owner or his duly authorized agent on the form prepared by the Architectural Committee. Approval by said committee of the erection, construction, installation, placement, alteration or maintenance of said structure may be withheld because the same would or might in its judgment cause or result in the violation of said covenants, conditions and restrictions and also because of the reasonable dissatisfaction of said committee with the grading plan, location of the structure, color scheme, finish, design, proportions, architecture, shape, height, style or appropriateness of the proposed structure or altered structure, materials proposed to be used thereon, or because of its reasonable dissatisfaction with any or all other matters or things which, in the reasonable

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA  RECEIPT #: 122030408368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

judgment of the said committee, would render the proposed structure inharmonious or out of keeping with the general plan of improvement of the subject property.

B.      If the Architectural Committee shall disapprove of any plans and specifications, color scheme, plot plan or grading plan submitted for approval, it shall send notice of its disapproval to the person or persons applying for said approval at the address set forth in the application therefore within thirty (30) days from the date said plans and specifications, color scheme, plot plan, grading plan are presented to the Architectural Committee.  If notice of disapproval is not to be sent, the plans and specifications, color scheme, plot plan or grading plan submitted shall be deemed to have been approved by the Architectural Committee in the courts with the provisions of this section.

C.      The approval of the Architectural Committee of any plan or specifications, color scheme, plot plan or grading plan submitted for any particular lot shall not be deemed to be a waiver by the Architectural Committee of its right to object to any of the features or elements embodied therein, if and when the same features or elements are embodied in any subsequent plan and specifications, color scheme, plot plan, or grading plan submitted for approval with respect to other lots.

D.      No building or other structure for which any plan and specification, color scheme, plot plan or grading plan have been approved by the Architectural Committee shall be erected, constructed, installed, placed, altered or maintained, except in strict conformance with said plans and specifications. color scheme, plot plan and grading plan and such conditions and requirements as the Architectural Committee may impose in connection with its approval of same.  Any deviation from said plans and specifications, color scheme, or grading plan and such erection, construction, installation, placement, alteration or maintenance shall nullify the approval of the Architectural Committee required by this section and shall be deemed to have been undertaken without said committee's approval or consent.

A.      After the completion of the erection, construction, installation, placement or alteration of any building or other structure in accordance with the provisions of this erection, the Architectural Committee will, upon application of the owner of said building or structure, or his agent or representative, issue a certificate that said building or structure has been so completed, if said committee determines such to be the fact.

F.      Neither Declarant nor the Architectural Committee shall be responsible for any defects in any building or other structure erected, constructed, installed, placed, altered or maintained in accordance with or pursuant to any plans and specifications, color scheme, plot plan or grading plan approved by the Architectural Committee or any conditions or requirements that said committee may have imposed with respect thereto.

        22.  RESUBDIVIDING LOTS.

        No portion of any lot less than all, and no easement shall be granted, unless approved in writing by the Architectural Committee.

        23.  EASEMENTS.

        Declarant hereby reserved easements over, under and through the front fifteen feet (15') of, the side ten feet (10') of, and the rear ten feet (10') of each lot for recreational trails, and for the installation, construction, reconstruction, relocation.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368_DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

removal, and maintenance, repair, operation and inspection of sewer water, drainage, electric, gas, telephone and cable television facilities for the benefit of adjoining land owners and/or Declarant, authority, commission, corporation, municipality or other agencies supplying such facilities. Further, Declarant hereby reserves slope easements on all lots for the construction, reconstruction, maintenance and repair of private and public roads and streets within the tract.

24. GRADES AND SLOPE CONTROL.

A.    Without the prior written approval of the Architectural Committee (i) no grade shall be constructed, reconstructed, or maintained on any lot or any portion thereof with a slope steeper than a ratio of one and one-half feet (1 ½') horizontal to one foot (1') vertical, and (ii) no existing grade shall be altered or modified by changing its location or the direction of its slope or be replaced in whole or in part. Any applicant for a deviation in the foregoing require-ments shall furnish said committee with such engineering or geological data concerning erosion, earth movement, drainage, hazards to persons or public or private property, and any other matters which said committee shall deem material thereto.

B.    All grades (except natural grades) having a slope steeper than the ratio two feet (2') horizontal to one foot (1') vertical, shall be planted and maintained with growing vegetation sufficient to control erosion of such grades. All such vegetation and the watering and maintenance facilities therefor shall be approved by said committee.

25. DEVIATION.

A.    The Architectural Committee shall have the right and privilege to permit the owner of any lot or lots (without the consent of owners of other lots) to deviate from any Lot or all of the covenants set forth in this clause, provided that such deviation is necessary in order to carry out the general purposes of this declaration. Any such permission of said committee shall be in writing and shall not constitute a waiver of said committee's power of enforcement with respect to any of said covenants as to other lots.

B.    Said covenants constitute the minimum conditions and restrictions applicable to lots. Declarant hereby reserves the right to add or impose by a supplemental declaration other and more stringent limitations, covenants, conditions, restrictions and reservations with respect to any lot or lots now or hereafter owned by it, including the right to increase setback requirements and square footage requirements with respect to buildings and other structures and otherwise to increase and supplement but not to diminish said covenants affecting said real property except by permit given pursuant to sub-paragraph A of this section and regardless of conveyance of any lot(s) subject to said covenants.

26. LOTS EXCEPTED.

Notwithstanding any provisions to the contrary herein, the requirements of Sections 1, 2, 3, 4, 5, 6, 7, 12, 16, and 19, shall not be applicable to Lots 69 - 73, 81, 89 - 112, 263 and 684 - 687. Said lots are hereby designated as public use, commercial or recreational lots and all uses and structures hereon shall be subject to the prior written approval of the Architectural Committee.

In granting such approval the Architectural Committee may establish conditions, including time limitations, for the approved uses and structures.

## 149 CLAUSE IV
### ARCHITECTURAL COMMITTEE

1. CREATION. The Architectural Committee is hereby created with the rights, powers, privileges and duties herein set forth. Said committee shall be Declarant or any three (3) persons designated by Declarant, as a successor committee, except as provided in section 2 of this Clause IV.

In the event of the death, incompetency, resignation or inability to act of any member of said committee, the remaining member or members shall designate a successor. Notwithstanding the foregoing Declarant shall have the right and power at all times to remove any or all members of said committee or to fill any vacancy or vacancies. Declarant may at its sole discretion at any time assign by supplemental declaration its powers of removal and appointment with respect to said committee to such association or corporation as Declarant may select and subject to such terms and conditions with respect to the exercise thereof as Declarant may impose.

2. TRANSFER OF POWERS. After ninety percent (90%) of the lots shall have been sold, or within three (3) years from date of sale of the first lot, whichever first occurs, the power to replace and fill vacancies among the members of said Architectural Committee shall belong solely to and be exercisable only by Woodland Hills Country Estates Association referred to in Clause V.

· 3. PROCEDURE. All plans and specifications and other material required or permitted to be filed with the Architectural Committee hereunder shall be filed at 9229 Sunset Blvd., Suite 515, Los Angeles, California, 90069, or such other office as Declarant shall specify in a supplemental declaration. The Architectural Committee's approval or disapproval on matters required by this declaration 150 shall be by majority vote of the committee.

4. FUNCTION. The function of the Architectural Committee, in addition to the functions set forth elsewhere in this declaration, shall be to consider and approve or disapprove any plans and specifications or other materials submitted to it with respect to buildings or other structures to be erected, constructed, installed, altered, placed or maintained on lots, and for the alteration or remodeling of or additions to any then existing structure on lots, so that all structures shall conform to the provisions hereof the general plan of development and such rules and regulations as said committee may adopt for the improvement and development of subject property. Nothing herein shall be construed as authorizing or empowering said committee by rule or otherwise, to change or waive said covenants, except as herein provided by rules and regulations. Said committee may adopt rules and regulations and the same may be changed by said committee from time to time; none of said rules and regulations shall be deemed to be any part or portion of any said deeds or covenants.

5. CHARGES A LIEN. The charges duly made according to Clause III, Sections 6, 9, 14 and 15 or Clause VI, Section 3, shall become a lien against the property to the extent of the unpaid balance. The Association may record such a lien and foreclose it at any time. However,

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-JC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

such lien shall be subordinate to any bona-fide mortgage or deed of trust given in good faith and for value.

6. RECORDING AND MAILING OF NOTICES OF VIOLATIONS. Notice of any breach or violation of any of the restrictions, or notice of any failure of any person, firm or corporation to comply therewith within a reasonable time after the occurrence of such breach, .Ls1 violation or failure to comply, shall be executed by the Architectural Committee or by the record owner of any lot, and recorded in the Office of the County Recorder of Ventura County, describing the lot involved; and a copy of such notice showing the date of recordation within a reasonable time after recordation thereof as aforesaid shall be mailed by certified mail to the last known address of the person, firm or corporation responsible for such breach or violation of or failure to comply with any of said restrictions. Until such notice shall have been recorded and mailed as in this Section 6, provided neither the Architectural Committee, nor the record owner of any lot shall have the right to commence any action at law (other than the enforcement of foreclosure of the liens hereinabove provided for) against any person, firm or corporation responsible for any breach or violation of said restrictions, or for failure to comply therewith.

*CLAUSE V*
WOODLAND HILLS COUNTRY ESTATES ASSOCIATION

1. PURPOSES OF ASSOCIATION. Woodland Hills Country Estates Association, a non-profit corporation organized under the laws of the State of California (hereafter called "Association"), shall have the power to perform each of the following for the benefit of (i) subject property, (ii) any other property, the owners of which are admitted to membership in the Association (iii) any other property made subject to this Declaration by Declarant, and (iv) any other property being served by another non-profit corporation with which the Association merges or consolidates:

    A.    To accept title to or otherwise acquire fee title or easements for streets, roads, alleys, trails, bridle paths, courts, walks and any other real property .Ls2 to be available for use in common by the members of the Association or of any other nonprofit corporation with which the Association shall have merged.

    B.    To accept title to or otherwise acquire personal property to be available for use in common by the members of the Association or of any other nonprofit corporation with which the Association shall have merged.

    C.    To acquire and maintain a gatehouse at any entrance to subject property or any other property which the Association is empowered to serve.

    D.    To hire and compensate one or more gatekeepers to operate each such gatehouse.

    E.    To acquire and maintain quarters for any or all of such gate-keepers.

    F.    To improve, light, clean, maintain, and replace streets, roads, alleys, trails, bridle paths, courts, walks and any other real property

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-JC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

acquired by the Association or of which the Association shall have the right of possession.

G.     From time to time, to clean up any portion of subject property or any other property which the Association is empowered to serve.
H.     To enter into and perform contracts consistent with its powers hereunder and its status as a nonprofit corporation.

I.     To acquire, maintain, operate and replace recreational and other community facilities designed to serve subject property or any other property which the Association is Lss empowered to serve.

J.     To merge or consolidate with any other nonprofit corporation.

K.     To transfer all or any part of its assets to (i) another nonprofit corporation which is empowered and committed to use the transferred assets to serve the same property which such assets served while held by the Association or (ii) a county, city, county and city or other political subdivision.

L.     To take any action incidental to or reasonably necessary to the full exercise of any of the foregoing powers.

2.  MEMBERSHIP.  Every person or entity who is a record owner of a fee or undivided fee interest in any lot which is subject by covenants of record to assessment by the Association, shall be a member of the Association.  The foregoing is not intended to include persons or entities who hold an interest merely as security for the performance of an obligation.  The purchaser and not the seller under a recorded installment sales contract covering the lot shall be entitled to membership in the Association while such contract is in effect.  The existence of a mortgage or deed of trust on a lot shall not entitle the mortgage or beneficiary to Association membership.  No owner shall have more than one membership.  Membership shall be appurtenant to and may not be separated from the fee ownership of any lot which is subject to assessment by the Association; ownership of such lot shall be the sole qualification for membership.

3.  TRANSFER.  The membership held by any owner of a lot shall not be transferred, pledged or alienated in any way, except upon the sale or encumbrance of such lot, and then only to the purchaser or mortgagee of such lot.  Any attempt to make a prohibited transfer is void, and will not be reflected upon the books and records of the Lss Association.  In the event the owner of any lot should fail or refuse to transfer the membership registered in his name to the purchaser of such lot, the Association shall have the right to record the transfer upon the books of the Association and issue a new certificate to purchaser, and thereupon the old certificate outstanding in the name of the seller shall be null and void as though the same had been surrendered; PROVIDED, HOWEVER, that notwithstanding anything to the contrary hereinabove set forth, the owner shall be permitted to pledge his membership certificate to the holder of a first mortgage or first deed of trust (meaning any mortgage or deed of trust with first priority over other mortgages or deeds of trust) made in good faith and for value.  Said pledges shall be bound by the provisions of this declaration and by the Articles of Incorporation and By-Laws of the Association and amendments thereto.

4.  VOTING RIGHTS.  The Association shall have only one class of voting member-ship.  Members shall be entitled to one vote for each lot in which they hold the interest required for membership.  When more than one person holds such interest or interests in any lot, all such

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

persons shall be members and the votes for such lot shall be exercised as they among themselves determine, but in no event shall more than one vote be cast with respect to any such lot. Said voting rights shall be subject to the restrictions and limitations provided hereinafter and in the Articles and By-Laws of the Association.

5. MEMBERS' EASEMENTS OF ENJOYMENT. Every member shall have a right and easement of enjoyment in and to the common area, and such easement shall be appurtenant to and shall pass with the title to every assessed lot, subject to the following provisions:

A. The right of the Association to limit the number of guests of members.

B. The right of the Association to establish uniform rules and regulations pertaining to the use of the common area and the recreational facilities thereof.

C. The right of the Association to charge reasonable admission and other fees for the use of any recreational facility situated upon the common area.

D. The right of the Association, in accordance with its Articles and By-Laws, to borrow money for the purpose of improving the common area and facilities and in aid thereof to mortgage said property.

E. The right of the Association to suspend the voting rights and right to use of the recreational facilities by a member for any period during which any assessment against his lot remains unpaid and delinquent; and for a period not to exceed thirty (30) days for any single infraction of the rules and regulations of the Association, provided that any suspension of such voting rights or right to use the recreational facilities, except for failure to pay assessments, shall be made only by the Association or a duly appointed committee thereof, after notice and hearing, given and held in a ccordance with the By-Laws of the Association.

F. The right of the Association to dedicate or transfer all or any part of the common area to any public agency, authority, or utility for such purposes and subject to such conditions as may be agreed to by the members. No such dedication or transfer shall be effective unless an instrument signed by members entitled to cast two-thirds (2/3) of the votes of the membership has been recorded, agreeing to such dedication or transfer, and unless written notice of the proposed action is sent to every member not less than thirty (30) nor more then sixty (60) days in advance.

6. DELEGATION OF USE. Any member may delegate, in accordance with the By-Laws, his right of enjoyment to the common area and facilities to the members of his family, his tenants, or contract purchasers who reside on the property

Lse 7. TITLE TO THE COMMON AREA. The Declarant hereby covenants for itself, its successors and assigns, that it will convey fee simple title to the common area of the existing

property to the Association, free and clear of all encumbrances and liens, except current real property taxes, prior to the conveyance of the first lot.

8.     CREATION OF THE LIEN AND PERSONAL OBLIGATION OF ASSESSMENTS.  The Declarant, for each lot owned within the properties, hereby covenants, and each owner of any lot by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or other conveyance, is deemed to covenant and agree to pay to the Association:  (1)  Regular assessments or charges, and (2) Special assessments for capital improvements, such assessments to be fixed, established, and collected from time to time as hereinafter provided.  The regular and special assessments, together with such interest thereon and costs of collection thereof, as hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the lot against which each such assessment is made.  Each such assessment, together with such interest, costs, and
reasonable attorney's fees, shall also be the personal obligation of the person who was the owner of such property at the time when the assessment fell due.  The personal obligation shall pass to his successors.

9.  PURPOSE OF ASSESSMENTS.  The assessments levied by the Association shall be used exclusively for the purpose of promoting the recreation, health, safety, and welfare of the residents in the existing property and, in particular, for the improvement and maintenance of the existing property, services, and facilities devoted to this purpose and related to the use and enjoyment of the common area, and of the dwelling units situated upon the properties.

10.  BASIS AND MAXIMUM OF REGULAR ASSESSMENTS.  The basis and maximum amount of the regular assessments shall be as follows:

Ls7 A.  Until January 1 of the year immediately following conveyance of the first lot to an owner, the maximum regular assessment shall not exceed $ 12.50 per lot per month.

B.    From and after January 1 of the year immediately following the conveyance of the first lot to an owner, the maximum monthly assessment may be increased effective January 1 of each year by the Board of Directors of the Association without a vote of the membership, provided that any such increase shall not be more than twenty-five percent (25%) of the maximum assessment provided for in subsection (A) above, exclusive of any increases resulting from increases in real property taxes on the common area.  Such monthly assessment shall continue in effect for the calendar year, which period shall be deemed to be the assessment period.

C.    From and after January 1 of the year immediately following the conveyance of the first lot to an owner, the maximum regular assessment may be increased by the Board of Directors of the Association in an amount greater than provided for in subsection (b) hereof for the next succeeding period of twelve (12) calendar months, and at the end of each such period, for each succeeding period of twelve (12) months, provided that any such change shall have the assent of two-thirds (2/3) of the votes of the members voting in person or by proxy, at a meeting duly called for such purpose, written notice of which shall be sent to all members not less than thirty (30) days nor more than sixty (60) days in advance of the meeting, setting forth the purpose of the meeting.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-JC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID: 03/4/22 2:16 PM TOTAL: 435.00 TYPE: EFT

D.     After consideration of current maintenance costs and future needs of the Association, the Board of Directors may use fix the regular monthly assessment at a lesser amount than provided for above.

11. SPECIAL ASSESSMENTS FOR CAPITAL IMPROVEMENTS: In addition to the regular assessments, authorized above, the Association may levy in any calendar year, a special assessment applicable to that year only, for the purpose of defraying, in whole or in part, the cost of any construction or reconstruction, unexpected repair or replacement of a described capital improvement upon the common area, including the necessary fixtures and personal property related thereto, PROVIDED THAT any such assessment shall have the assent of two-thirds (2/3) of the votes of the members who are voting in person or by proxy at a meeting duly called for this purpose, written notice of which shall be sent to all members not less than thirty (30) nor more than sixty (60) days in advance of the meeting, setting forth the purpose of the meeting.

12. UNIFORM RATE OF ASSESSMENT. Both regular and special assessments shall be fixed at a uniform rate for all lots and may be collected on a monthly basis.

13. QUORUM FOR ANY ACTION AUTHORIZED UNDER SECTIONS 10 AND 11. At the first meeting called pursuant to Section 10 @ or Section 11 of this Clause, the presence at the meeting of members or of proxies entitled to cast sixty percent (60%) of all the votes of the membership, shall constitute a quorum. If the required quorum is not forthcoming at such meeting, another meeting may be called, subject to notice thereof to the members, and the required quorum at any such subsequent meeting shall be one-half (1/2) of the required quorum at the preceding meeting. No such subsequent meet-ing shall be held earlier than two (2) days nor later than sixty (60) days from the date of the preceding meeting.

14. DATE OF COMMENCEMENT OF REGULAR ASSESSMENTS, AND FIXING THEREOF.

A.     The regular assessments provided for herein shall commence as to all lots in the existing property one (1) year following the conveyance to the Association of the common area. The Association, by a majority vote of its Board of Directors, may extend the commencement date of regular assessments to a time not later than one (1) year following the completion of all improvements and landscaping within the common area, or two (2) years from the date of conveyance of the common area to the Associ-ation, whichever is earlier, if Declarant, by a written agreement with the Association, commits to maintain the common area until such extended date.

B.     Subject to the provisions of Section 10 of this Clause, the Board of Directors shall determine and fix the amount of the regular monthly assessment against each lot at least thirty (30) days in advance of each assessment period shall be deemed to be for the twelve (12) months of each calendar year, provided that if the month of the commencement of the initial assessments shall be a month other than January, the assess-ment period shall be deemed to be to the end of such fractional calendar year. Written notice of the assessment shall be sent to every owner subject thereto. The due dates shall be established by the Board of Directors.

15. CERTIFICATE OF PAYMENT. The Association shall, upon demand, furnish to any owner liable for said assessment, a certificate in writing signed by an officer to the Association, setting forth whether the regular and special assessments on a specified lot have been paid, and the amount of the delinquency, if any. A reasonable charge may be made by the Board for the issuance of these certificates. Such certificate shall be conclusive evidence of payment of any assessment therein stated to have been paid.

16. DELINQUENCY. Any assessment provided for in this declaration, which is not paid when due, shall be delinquent. If any such assessment is not paid within thirty (30) days after the delinquency date, the assessment shall bear interest from the date of delinquency at the then legal rate, and the Association may, at its option, bring an action at law against the owner personally obligated to pay the same, or, upon compliance with the notice provisions set forth in Section 17 of this Clause, to foreclose the lien (provided for in Section 8 of this Clause) against the lot, and there shall be added to the amount of such assessment, the costs of preparing and filing the complaint in such action, and in the event a judgment is obtained, such judgment shall include said interest and a reasonable attorney's fee, together with the costs of action. Each owner vests in the Association or its assigns, the right and power to bring all actions at law or lien foreclosures against such owner or other owners for the collection of such delinquent assessments.

17. NOTICE OF LIEN. No action shall be brought to foreclose said assessment lien or to proceed under the power of sale herein provided less than thirty (30) days after the date a notice of claim of lien is deposited in the United States mail, certified or registered, postage prepaid, to the owner of said lot, and a copy thereof is recorded by the Association in the office of the County Recorder in which the existing property is located; said notice of claim must recite a good and sufficient legal description of any such lot, the record owner or reputed owner thereof, the amount claimed (which may at Association's option include interest on the unpaid assessment at the legal rate, plus reasonable attorney's fees and expenses of collection in connection with the debt secured by said lien) and the name and address of the claimant.

18. FORECLOSURE SALE. Any such sale provied [sic] for above is to be conducted in accordance with the provisions of the Civil Code of the State of California, applicable to the exercise of powers of sale in mortgages and deeds of trust, or in any other manner permitted by law. The Association, through its duly authorized agents, shall have the power to bid on the lot at foreclosure sale, and to acquire and hold, lease, mortgage and convey the same.

19. CURING OF DEFAULT. Upon the timely curing of any default for which a notice of claim of lien was filed by the Association, the officers of the Association are hereby authorized to file or record, as the case may be, an appropriate release of such notice, upon payment by the defaulting owner of a fee, to be determined by the Association, but not to exceed Twenty Five Dollars ($25.00), to cover the costs of preparing and filing or recording such release.

20. CUMULATIVE REMEDIES. The assessment lien and the rights to foreclosure and sale thereunder shall be in addition to and not in substitution for all other rights and remedies which the Association and its assigns may have hereunder and by law, including a suit to recover a money judgment for unpaid assessments, as above provided.

21. SUBORDINATION OF ASSESSMENT LIENS. If any lot subject to a monetary lien created by this declaration shall be subject to the lien of a first mortgage or deed of trust: (1) The foreclosure of any lien created by anything set forth in this declaration shall not operate to affect or impair the lien of such mortgage or deed of trust; and (2) the foreclosure of the lien of such mortgage or deed of trust or the acceptance of a deed in lien of the foreclosure by the

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

mortgagee, shall not operate to affect or impair the lien hereof, except that the lien hereof for said charges as shall have accrued up to the foreclosure or the acceptance of the deed in lieu of foreclosure shall be subordinate to the lien of the mortgage or deed of trust, with the foreclosure-purchaser or deed-in-lieu-grantee taking title free of the lien hereof ⊥₆₂ for all said charges that have accrued up to the time of the foreclosure or deed given in lieu of foreclosure, but subject to the lien hereof for all said charges that shall accrue subsequent to the foreclosure or deed given in lieu of foreclosure.

22. EXEMPT PROPERTY. The following property subject to this declaration shall be exempted from the assessments, charges and lien created herein: (A) All properties subject to any easement or other interest dedicated and accepted by the local public authority and devoted to public use; and (B) all common areas.

⊥₆₃ CLAUSE VI

GENERAL PROVISIONS

1. EFFECTIVE DATE OF COVENANTS. Subject to Section 4 of this Clause VI, each of said covenants set forth in this Declaration shall continue and be binding as set forth in Section 2 of this Clause VI for an initial period of thirty (30) years from the date of recordation hereof and thereafter for successive periods of twenty-five (25) years each.

2. COVENANTS TO RUN WITH THE LAND. Each of said covenants shall run with the subject property and each lot, part or parcel thereof and bind Declarant, its successors, grantees and assigns, and all parties claiming by, through or under it. Each purchaser of any lot, part or parcel of or in subject property by acceptance of a deed or other conveyance for any such lot, part or parcel thereby be conclusively deemed to have consented to and agreed to all of said covenants to himself, his heirs, executors, administrators, assigns and does by said acceptance covenant for himself and his heirs, executors, administrators and assigns to observe, perform and be bound by said covenants and to incorporate said covenants by reference in any deed or other conveyance of all or any portion of his interest in any of the subject property or any lot, part or parcel thereof or therein. No lot, part or parcel of or in subject property or interest therein shall be granted, transferred, conveyed or assigned except by an instrument executed and acknowledged by the grantees, transferees, conveys or assignees therein named whereby they consent to observe, perform and be bound by the said covenants.

3. VIOLATION OF RESTRICTIONS. ENFORCEMENT.

A.      Upon any violation or breach of any said covenants, Declarant or the Architectural Committee may enter any ⊥₆₄ lot, part or parcel      in or on subject property upon or as to which such violation exists and may alter, correct, modify or remedy or summarily abate or remove at the expense of the owner of such lot, part or parcel anything or condition that may be or exist thereon contrary to the provisions hereof. Declarant or the Architectural Committee shall not thereby be deemed to have trespassed upon such lot, part or parcel and shall be subject to no liability to the owner or occupant of such parcel for any such entry or other action taken pursuant to this sub-section. In the event the owner of such lot fails to pay upon demand the expense of such alteration,

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-JC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

correction modification, remedying, abatement or removal, the person, firm, corporation or association performing such curative action whether it be Declarant, the Architectural Committee, or an assignee of the Declarant pursuant to Section 7 of this Clause VI, shall be entitled to record a lien against such lot, part or parcel thereon in subject property upon or as to which such violation existed.

B.       Violation of any of said covenants may be enjoined, abated, restrained or otherwise remedied by any lawful means or proceedings. Proceedings to restrain violation of said covenants may be brought at any                     time that such violation appears reasonably likely to occur in the future.

C.       Such covenants shall bind and inure to the benefit of and be enforceable by the Declarant and the Architectural Committee and the owner or owners of any lot, part ⊥ss or parcel in or of subject property, and the respective heirs, as successors and assigns of each. The failure of Declarant or the Architectural Committee or of any such owner or of any other person entitled to enforce any of said covenants to enforce the same shall in no event be deemed a waiver of the right to such person or of any other person entitled to enforce these restrictions to enforce the same thereafter.

D.       Waiver or attempted waiver of any of said covenants with respect to any lot, part or parcel in or of subject property shall not be deemed a waiver thereof as to any other lot, part or parcel, nor shall the violation of any of said covenants upon any lot, part or parcels affect the applicabili-ty or enforceability of said covenants with respect to any other lot, part or parcel.

4. NULLIFICATION OF COVENANTS. These restrictions may be revoked, modified, amended or supplemented in whole or in part, and any or all of subject property may be released from any part or all of said restrictions at any time, provided the record owners in fee simple of at least two-thirds (2/3) of said lots consent thereto in a written instrument or instruments executed and acknowledged by each of the consenting owners and recorded in the Office of the County Recorder of Ventura County, California.

A recordable certificate by a reputable title insurance company doing business in Ventura County, California, as to the record ownership of the lots shall be deemed conclusive evidence thereof with regard to compliance with the provisions of this section. Upon and after the effective date of any such changes, it or they shall be binding upon all persons, firms and corporations ⊥₄₆ then owning any lot, part or parcel in or of subject property and shall run with the land and bind all persons claiming by to or under any one or more of them.

5. MORTGAGES AND DEEDS OF TRUST. Said restrictions shall be subject and sub-ordinate to all mortgages, deeds of trust or other security instruments in the nature of a mortgage or deed of trust now or hereafter executed and made in good faith which encumber any of subject property, and none of said restrictions or other provisions hereof shall supersede or in any way reduce the security of any such mortgage, deed of trust or other security instrument. However, if any of subject property is acquired in lieu of foreclosure or is purchased under foreclosure of any such mortgage, deed of trust or other security instrument or under any judicial sale, any person so acquiring or purchasing said property and his, hers or its grantees, heirs, personal representatives, successors or assigns shall hold all of said property subject to all of said restrictions.

6. SEVERABILITY CLAUSE. If a court of competent jurisdiction shall hold invalid or unenforceable any part or all of said restrictions or other provision herein, such holding shall not impair, invalidate or otherwise affect the remainder of this Declaration which shall remain in full force and effect.

7. ASSIGNMENT OF DECLARANT'S RIGHTS AND POWERS. Declarant, its successors and assigns reserves the right to vest any corporation or association with all or any of the rights, interests, privileges, easements, powers and duties herein contained or reserved by Declarant by a supplemental declaration and assignment which shall be effective when recorded in the office of the County Recorder of Ventura County, California, and Declarant shall thereupon be relieved and discharged from every duty so vested in such 1s, other corporation or association.

8. MAILING ADDRESS FOR NOTICE. Each owner or a lot shall file the correct mailing address of such owner with Declarant and shall notify Declarant promptly in writing of any subsequent change of address. Declarant shall maintain a file of such addresses. A written or printed notice deposited in the United States Post Office, postage pre-paid, and addressed to any owner at the last address filed by such owner with Declarant, shall be sufficient and proper notice to such owner wherever notices are required in this declaration. Declarant's address for the purpose of all notices required or permitted to be given hereunder, is 9229 Sunset Blvd. Suite 515, Los Angeles, California, 90069, or such other address as Declarant shall specify from time to time by supplemental declaration executed by Declarant and recorded in the official records of Ventura County, California.

9. RESTRICTIONS CUMULATIVE. Said restrictions do not supersede or affect in any way limitations, covenants, restrictions or reservations heretofore recorded in the official records of Ventura County, California, pertaining in whole or in part to subject property.

10. INTERPRETATION. The heading of the clauses and sections herein contained are for convenience only and shall not be used in the construction or interpretation of this declaration.

IN WITNESS WHEREOF, Declarant has caused this instrument to be executed and its seal to be affixed hereto on the date first above written.


SPRUCE LAND CORPORATION
A California Corporation

By: __S/B   Donal J. MacAdam___

Its Vice President
Attest:

By: __S/B  Russell D. Jones___
Its Asst. Secretary

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

# EXHIBIT B

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

My name is Leon Reingold, an 18 year resident of Bell Canyon , CA

This is my statement regarding Eric Wolf, President of Bell Canyon HOA.

Eric Wolf asked me to fix his personal vehicle, a BMW since he was aware I am in the Automotive Repair Industry, for the last 30 years. The repairs for the BMW at retail average price came to approximately $1,500.00. Eric Wolf told me that I should want to "TAKE CARE OF HIM" as his power in the Bell Canyon community is so strong that I will need his help and friendship in the future. BECAUSE I felt threatened by his comments, I charged him only for the cost of the part in the amount of $350.00 and did not charge for any labor.

Eric Wolf asked me to fix his Dodge Ram Pickup and he specifically told me that he expects the repairs to be done for free. Although the actual price of the repairs would be at least $2,200.00, I told him that the best I would be able to do is charge him $650.00 which would be only for materials and no labor charges.

Eric Wolf asked me to buy 2 properties on SADDLEBOW in Bell Canyon in my name and he would become my partner and promised that "we would build without any interference by the HOA and the Architectural Committee. HE TRIED TO FORCE ME TO GO INTO A PARTNERSHIP WITH HIM.

Eric Wolf let me in to the office and pulled out a file on someone else's property and allowed me to see the contents of the whole file when he was hoping for a partnership with me. Apparently he is willing to do illegal things when he believes it will profit him personally.

When I purchased a different property (FOR MY SELF, BY MYSELF) Eric Wolf came to my house and told me and my wife "if you use David Chai as your builder, you will have a lot of trouble so I recommend you find someone else to build your house, if you use David Chai, you will never get your house done." AT THAT SAME TIME, SINCE HE UNDERSTOOD THERE WILL NOT BE ANY PARTNERSHIP BETWEEN US, HE BEGAN CREATING PROBLEMS AND USING STALLING TECHNIQUES TO INTERFERE AND NOT ALLOW MY HOUSE PROJECT TO GO FORWARD.

On February 9, 2016 the Architectural Committee of Bell Canyon approved my plans for building and Eric Wolf immediately interfered and influenced the Architectural Committee to reverse their approval and give me arbitrary & capricious reasons for their reversal which is illegal. Eric Wolf came to me and told me you will not build your house if you do not do what I want.

I was specifically told by the Architectural Committee that if I use David Chai as my General Contractor, I will be forced to pay an extra $20,000.00 none refundable deposit. (this is beyond their scope of authority and is considered to be extortion).

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

June 24, 2016 at the Bell Canyon Community social event, Eric Wolf sat down with me and my wife and told us that he is the President and now we are dealing with him, all the other members of the board "ARE MORANS AND MY POPPETS", Eric Wolf said, "do whatever I tell you to do and you will not have problems" "you need to know how to kiss my ass and then I will let you build your house". He also said "David Chai will never build in Bell Canyon again because I will not let him build here". Eric Wolf said "since David Chai did not do what I told him, he will never build here again, I will crush him, I always win."

On July 20, 2016, I had a very long telephonic conversation with Eric Wolf wherein he told me, "put a retaining wall on the side of your house project that faces my backyard, bring me drawings of how it will look and make it pretty, then I will tell the Architectural Committee to approve your plan".    He further told me that without the retaining wall he will make sure I will not be able to build because it will impact his view from his backyard which is 4o acres away from my building site.

On the August 18, 2016 HOA Board Meeting, Eric Wolf purposely did not follow the WRITTEN AGENDA and mislead the Board Members to vote on an outdated letter of the Architectural Committee when the Agenda clearly stated the purpose was solely for the TRUCKING SCHEDULE OF DIRT IMPORT.

On September 8, 2016 at the Board Meeting, Eric Wolf suddenly put on the Agenda a proposal to make a policy on hauling dirt. This was specifically put in so he is able to more easily stop me from building. ERIC Wolf insisted on taking a vote right at that meeting but was told by other members that he would need to consult an attorney.

# EXHIBIT C

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

### COVENANT FOR INDEMNIFICATION AND HOLD HARMLESS AGREEMENT

This Indemnification and Hold Harmless Agreement is entered into this _21_ day of _Nov_____, 2016, by and between Leon and Marina Reingold ("Owner/Applicant") and the Bell Canyon Association ("Association") as follows:

### Recitals

A.      Association is a non-profit, mutual benefit corporation established to enforce the terms and provisions of the Declaration of Covenants, Conditions and Restrictions ("CCRs") for the Bell Canyon development, including certain Architectural Restrictions and Architectural Guidelines set forth in the Association's governing documents;

B.      Owner/Applicant is the owner of a Lot within the Bell Canyon and has submitted several iterations of a Proposed Grading Plan in the spirit of compromise to the Association's Architectural Committee seeking approval to perform grading to the Lot in preparation for the development and construction of a new single family residence and related structures;

C.      Owner/Applicant has asserted in writing various allegations that the AC and Board of Directors of the Association have failed to properly process and consider prior submissions and has suffered financial damage and hardship as a result thereof. Owner/Applicant has asserted that they will commence legal action against the AC, Board and Association unless their Grading Plan is approved based on the applicable governing documents of the HOA. The AC, Association and Board of Directors have denied such allegations and contend that it has fully carried out their respective obligations under the applicable governing documents of the Association. The AC, Association and Board have alleged that the prior Grading Plans were rejected due to inaccurate or incomplete information contained therein or in accompanying documents or for failure to comply with other applicable provisions of the Governing Documents, including but not limited to the Architectural Guidelines;

D.      The parties hereto desire to fully resolve the dispute concerning the Grading Plan and the allegations regarding the AC, Board's and Association's handling of the Grading Plan submissions pursuant to the terms contained herein.

NOW THEREFORE, for valuable consideration, including the covenants contained herein, the parties agree as follows:

1.      The Association and AC shall provide Owner/Applicant with the approval letter regarding the Grading Plan dated November 6, 2016 which is attached hereto as Exhibit A and incorporated by reference.  Owner/Applicant agrees to comply fully with the conditions and terms in Exhibit A and the Governing Documents.

2.      Owner/Applicant agrees, to the fullest extent allowable under California law, to indemnify, defend and hold Association harmless from any and all claims, damages, actions or litigation arising out of or in any way related or connected to

1

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

Owner/Applicant's performance of grading operations on their lot, including but not limited to import or export of earth from the Lot as anticipated in the Grading Plan.

3.    Owner/Applicant is solely and completely responsible for obtaining necessary permits and governmental approval for any work approved by the Association and is solely responsible for the proper and workmanlike performance of the work approved in any architectural application by the Association.  The approval by the Association of any application shall in no way make the Association responsible in any way for the quality of the work, the adequacy of the work or its compliance with applicable building code requirements, all of which are the Owner/Applicant's sole responsibility.

4.    Owner/Applicant, releases, acquits and covenants not to sue Association, AC and Board of Directors and their agents, members, and affiliated entities and successors regarding any and all claims, damages, actions, causes of action, suits or damages of any kind or nature whatsoever, known or unknown, may have against Association, AC and Board of Directors and their agents, members and affiliated entities and successors which relate to or arise from the handling, processing or administration of the Grading Plan application through the date of this Covenant.

5.    With respect to the specific releases set forth hereinabove, the Owner/Applicant expressly acknowledge that they are familiar with, and expressly waive and relinquish every right or benefit they have or may have under, the provisions of Section 1542 of the California Civil Code, which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

6.    The terms of this Agreement shall be binding upon each successor in interest of Owner/Applicant as well as their respective heirs, successors and assigns.

7.    Entry into this Agreement by the Association shall not constitute a waiver of any authority to pursue violations or alleged violations of any provision of the governing documents, including failure to comply with the express terms and conditions of any architectural application approved by the Association as discussed herein.

8.    This Agreement supersedes and replaces all prior agreements, oral or written. This Agreement may be modified only in a writing signed by both parties.

9.    · If any action or proceeding is instituted to enforce or interpret any of the provisions of this Agreement or declare the rights hereunder, the prevailing party in such action or proceeding shall be entitled to its reasonable attorneys' fees, costs and expenses, whether or not such action or proceeding is pursued to decision or judgment.

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

The term, "prevailing party" shall include, without limitation, a party who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other party of its claim or defense.

10.     The parties agree to act in good faith and to execute any and all documents and take any and all reasonable actions necessary or appropriate to carry out the purposes and intent of this Agreement.

11.     The laws of the State of California shall govern the validity, performance and enforcement of this Agreement.

THIS AGREEMENT CONSISTS OF THREE (3) PAGES.

BELL CANYON ASSOCIATION

Dated: _____  By: _____
                             Its: President

Dated: 11/21/16      _____
                             Homeowner/Applicant

Dated: 11/21/16      _____
                             Homeowner/Applicant

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.I

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

# EXHIBIT D

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368  DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

BELL CANYON ASSOCIATION
30 Hackamore Lane, Suite 8
Bell Canyon, CA 91307-1001

August 29, 2017

Leon and Marina Reingold
15 Maverick Lane
Bell Canyon, CA  91307

RE:  LOT 736 – 9 Wagon Lane
NOTICE TO STOP WORK IMMEDIATELY

Dear Mr. & Mrs. Reingold:

This letter is a STOP WORK NOTICE for the project located at 9 Wagon Lane.

Recently you submitted a second revised grading plan with a change order approved by Ventura County. A survey was conducted to determine the current extent of grading already completed at your property and determined that the grading work done significantly differs from and exceeds the grading plan you submitted on August 2, 2017.

A copy of the proposed grading plan and of the recent survey of the pad and slope is attached, which shows how markedly the actual grading diverges from the plan which was presented to the Architectural Committee. We remind you that any deviation from permitted plans requires approval from the Architectural Committee prior to such work being undertaken. In addition, you have completed work which is not in conformity with the change order you obtained from the County.  As a result, it is the consensus of the Committee to issue a **Stop Work Notice** on all grading work at this property pending the results of further investigation.

In addition, the plans you submitted on August 2, 2017 are not approved.  The stop work notice will be in effect as of August 30, 2017.  You will be informed about further decisions concerning your project in a timely manner.  We hope to resolve these discrepancies as quickly as possible with your cooperation.

Sincerely,

Ray Jadali, Chairman
Architectural Committee

Attachment:  a/s

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM



# DON WAITE CONSULTING

## CIVIL ENGINEERING SERVICES

August 31, 2017

Ray Jadali, Chairman
Architectural Committee
Bell canyon Association
30 Hackamore Lane. Suite 8
Bell Canyon. CA 91307-1001

Dear Mr. Jadali,
Re: 9 Wagon Lane, Bell Canyon

This letter is to address the "Stop Notice" for 9 Wagon Lane from the Bell Canyon Association. Architectural Committee of 8-29-2017 and recent survey of slope and pad by G.M. Engineering.

It is my understanding the grading of southerly fill slope was modified due to extensive uncertified fill found during the grading operation. Also, there is apparent grading discrepancies on the pad areas and slopes at proposed Guest House per G.M. Engineering. Therefore I have requested a thorough As-Built Survey be performed to verify the difference between As-Built Grading and the Approved Plans.

In the meantime, please note that Leon Reingold is required to have all the slope stabilized by hydroseed/planting or other method to prevent slope erosion during the Rainy Season (staring Oct 1st). See copy of 6-27-2017 Item #1 – Memo from Leia Reed.

Therefore, I request the Stop Notice be lifted to allow Mr. Reingold to proceed with stabilizing and planting of slopes in order to comply with Ventura County Grading Ordinance and Violation Letter and meet the Oct 1st Rainy Season deadline.

Westland Civil, Inc.

Donald G. Waite, RCE 27364
Expires: March 31, 2019

CC: Fred Heathcote, Soils Engineer
Leon Reingold. Owner/Builder

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

## Don Waite

| | |
|---|---|
| **From:** | Reed, Leia <Leia.Reed@ventura.org> |
| **Sent:** | Tuesday, June 27, 2017 8:26 AM |
| **To:** | Don Waite |
| **Cc:** | jem003@sbcglobal.net; afarit13@yahoo.com; Cable, Charles; O'Tousa, Jim |
| **Subject:** | GP15-0076, 9 Wagon Lane BMP inspection report comments. |
| **Attachments:** | GP15-0076.Marked-up.inspection.report.pdf |

Don,

I have conducted a site visit and reviewed the inspection report that was submitted to Charles Cable. As the report is confusing and shows items still need attention, I will not be lifting the Warning of Non-Compliance at this time. Please see the attached report that I have marked up and submit an additional inspection report that shows BMPs are acceptable.

I will also require the following:

1. A statement that the BMPs at the bottom of the fill slope on the south side of the property is adequate to prevent sediment and rock fall off-site and justification of not stabilizing the slope at this time. (after 14 days of inactivity the areas must be stabilized).
2. Re-evaluate the secondary containment for the fuel/ oil. Placing in a truck bed is not considered appropriate secondary containment.
3. Re-evaluate the stabilized entrance. It is not adequate at this time.
4. Silt fencing on northern side of property cannot have a gap in it. It defeats the purpose of the BMP.

Please forward an adequate inspection report after repairs have been made. A stop work will follow my next inspection during the week of July 10th if these items are not addressed.

Best Regards,
LEIA C. REED
PUBLIC WORKS INSPECTOR II
DEVELOPMENT & INSPECTION SERVICES
PUBLIC WORKS AGENCY
COUNTY OF VENTURA
(805) 658-4390
LEIA.REED@VENTURA.ORG

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT



Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #: 56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435



Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

# EXHIBIT E

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

BELL CANYON ASSOCIATION
30 Hackamore Lane, Suite 8
Bell Canyon, CA 91307-1001

January 5, 2018

*Letter   sent   via   mail   and   email*
*lsonreingold@gmail.com & jem003@sbcglobal.net*

Leon and Marina Reingold
15 Maverick Lane
Bell Canyon, CA 91307



**RE:** ~~Lot 735, 9 Wagon Lane – Change Order Grading Plan~~

Dear Mr. & Mrs. Reingold:

The Architectural Committee (AC), in consultation with our civil engineering consultant, has reviewed and discussed the proposed Change Order Grading Plan submitted by you on December 11, 2017.  Relevant standards in the Association's CC&R's and Architectural Standards include, but may not be limited to:

- CC&R Section 21A states that AC approval may be withheld on the "reasonable dissatisfaction of said committee with the grading plan … or because of its reasonable dissatisfaction with any or all other matters or things which, in the reasonable judgment of the said committee, would render the proposed structure inharmonious or out of keeping with the general plan of improvement of the subject property."

- Architectural Standard Section 2.2 states that "the CC&R's authorize the Architectural Committee to withhold approval of any plan if, in the Committee's reasonable judgment, any aspect of the plan would render the proposed structure inharmonious or out of keeping with the general plan of improvement or harmony of the Canyon."

- Architectural Standard Section 6.8.2 states that "The use of excessive fill slopes is strongly discouraged and the use of large fill slopes is prohibited in instances where it would unduly impact important public or private views or would disrupt other key natural amenities such as streams or water courses, oak trees, etc."

Please note that your current submission has been reviewed and evaluated, to the extent possible, on its own merits, superseding and replacing any previously submitted, approved and/or rejected plans.

It was the consensus of the AC to reject the proposed Change Order Grading Plan based upon reasons, including the following:

- The new change order grading plan would create unacceptable increased sizes of the disturbed slope faces. The increased and excessive sizes of the slope faces, in the reasonable judgment of the AC, will result in slope faces that would be inharmonious and out of keeping with the general plan of improvement and harmony of the Canyon.

818.346.9879
818.883.8490 FAX
bellcanyon.com

- Rip-rap pads located in steep slope will not, according to the AC's consulting engineer, sufficiently reduce flow velocity;
- Proposed total graded area is excessive, causing the project to be inharmonious and out of keeping with the general plan of improvement and harmony of the Canyon.
- Northerly slope exposed height in proposed change order to be 22 ft. and is excessive, causing the project to be inharmonious and out of keeping with the general plan of improvement and harmony of the Canyon.
- Southerly slope exposed height is proposed at 58 ft. which is excessive, causing the project to be inharmonious and out of keeping with the general plan of improvement and harmony of the Canyon and unduly impacting views from various locations within the community
- A portion of southerly facing slope is steeper than the allowed 2:1 grade.
- The proposed change order does not address the need for drainage devices at the graded bench located on the southerly slope. Utilization of appropriate drainage devices is necessary.
- Your landscape plan submittal is incomplete.

Attached for your information is a copy of the detailed review of your current submission performed by the Association's consultant, Felix Levitas.   You may wish to, but are not required to, review aspects of your previously approved Change Order #1, as a reference in conjunction with the preparation of a new submission, as CO#1 contains design elements that have been found to be in compliance with the Association's Governing Documents.  Once you have addressed the deficiencies described above in this letter, the AC welcomes your plan resubmittal which addresses the concerns described above.

Please feel free to contact Lulu at the Association Office at 818 346-9879 should you have any questions or comments.

Sincerely,

Architectural Committee
Bell Canyon Association

Attachment: a/s

/lar

*Disclaimer: The Architectural Committee reserves the right to request further documentation following the review of subsequent submittals if it is determined that additional support is required in order to satisfy Architectural Committee Standards.*

818.346.9879
818.883.8460 FAX
bellcanyon.com

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

CASE #: 56-2022-00563049-CU-FR-VTA   Re: CEPEDA v. TOYOTA MOTOR ... DATE PAID: 423.00 FREE ... EFT

# EXHIBIT F

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Page 1 of 4

January 15, 2018

Bell Canyon Architectural Committee
30 Hackmore Lane, Suite 8
Bell Canyon, CA 91307-1001

Attention:      Architectural Committee Members

Re:      AC Letter of January 5, 2018
         Lot 735, 9 Wagon Lane-Change Order grading Plan

Dear Sirs:



This correspondence will serve as a response to your denial, dated January 5th, 2018, of my Change Order Grading Plan.

Please be informed that CC&R Section 21A specifically states the AC's rights/controls over any kind of structures requests for erection or modifications. My Change Order Grading Plan was only regarding the land/earth itself, and did not include any kind of structural plans or requests.

Architectural Standard Section 2.2 specifically discusses any structure erection/modification and maintenance. My Change Order request was only for the actual grading to the land/earth and did not encompass any structures or any other aspects.

Architectural Standard Section 6.8.2 does not apply to my Change Order Grading plan since my plan does not impact any important public or private views, and does not disrupt any key natural amenities.

Please be informed my letter of August 30th, 2017 addressed to the AC and the BCA, specifically informs you that since there was a DUMP on my property which was allowed by the BCA in the 1970s, Ventura County and my Soil Engineer forced me to remove 60 feet of soil, down from the top level of my property (9 Wagon Lane) which was all LOOSE SOIL due to the DUMP, and this fact was NOT DISCLOSED to me at the time I purchased the land.

The expansion of the total area of grading was caused by the fact that I needed to clean up the massive DUMP, which was never disclosed to me prior to purchasing the property and the approval of grading.

In the AC Executive Session meeting (which you recorded, without my permission) of September 12, 2017, my Soil Engineer was present specifically to discuss the issue of the grading expansion, and the fact that the DUMP on my property was in the grading area, and due to the immense cleanup which was necessary, he ordered us to expand the grading area.

However at the time of the meeting of September 12, 2017, you (the AC) wanted to disallow the presence of my Soil Engineer while having 2 of your own consultants present at the meeting. Since you did not want my expert at the meeting, I specifically said that your experts must also immediately vacate the premises. At that time you changed your mind, and allowed my Soil Engineer to stay for the duration of the meeting, but did not allow him to explain why the grading had to be expanded, which is his profession and expertise. His statements and factual details would clear up any issues that you are confused about. As my agent, in my project, you (the AC) must give him the opportunity to speak on my behalf, according to the CC&Rs of Bell Canyon. Instead you chose not to hear the facts when he was available at the meeting, which is now causing additional delays and financial losses to me.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 122030408636B DATE PAID : 03/4/22 2:16 PM TOTAL :435.00 TYPE : EFT

Page 2 of 4

The .25 of an acre change is on my Change Order plan, for the Northerly fill slope, which is facing the property belonging to Boeing Corporation, and in no way is seen or affects any resident in Bell Canyon.

The .18 of an acre change on my Change Order plan, for the Southerly fill slope, is due to needing to have an access road to the bench at the Southerly slope, and the need to elevate a portion of the driveway for a safer access to the property and the future utilities that need to be installed. This slight change is not visible to any resident in Bell Canyon with the naked-eye, and would need to be measured with a special tool in order to see any difference from my previous, approved Grading Plan #1.

Since it's the AC's engineer's opinion that the Rip-rap pads will not sufficiently reduce flow velocity, then he should have addressed this issue with my engineer, who is always available. Instead this unprofessional way of conducting reviews by the AC is continuing to cause delays and financial losses to me. The AC's refusal to have their experts discuss facts with my experts is creating a very difficult and unprofessional situation in the review process of my plans and seems to be biased against me by the AC members.

In the AC meeting of January 9th, 2018, Peter Carniglia (a member of the AC), advised me that the AC engineer discussed the Rip-rap pads with my Civil engineer. When I informed him that there was never any discussions of any kind with my Civil engineer, Mr. Peter Carniglia went on to insist that there was a discussion between them, and that I am the one who is not aware of it. Please be informed, upon confirming with my Civil engineer, he has never had any discussions with any engineers or consultants of the Bell Canyon AC regarding my property at 9 Wagon Lane.

Mr. Peter Carniglia was very rude, aggressive, speaking in a much raised voice, and continually cussing while insisting that I do not know of the discussions made by my own Civil engineer. Furthermore, Mr. Peter Carniglia was screaming at me that I must get the AC's approval of my Change Order Grading plan prior to getting Ventura County to approve, and I failed to follow the rules. Again his statements are wrong and untrue, since I do not have any approval from Ventura County, and followed the orders of Bell Canyon HOA and AC to submit the plan to them first. Also, when I asked Mr. Peter Carniglia to please speak respectfully to the members of Bell Canyon (meaning to me), he responded "respect must be earned". I am appalled by this person's disrespect and do not feel he is mentally equipped to be on the AC due to his unprofessional & abusive behavior and false statements.

The graded total area being inharmonious with the harmony plan of Bell Canyon is not clear as to how. When I asked Mr. Peter Carniglia, at the AC meeting of January 9th, 2018, to explain what does the AC feel is inharmonious with my Change Order Grading Plan, so I may address and fix the problem, I was told by him "we will respond to you in writing". When I asked him, when I should expect this written explanation, his answer was "SOON". I asked how soon, he again responded "SOON" and stated "I am not Ray and will not give you a specific date". So as a member of the Bell Canyon AC, Mr. Peter Carniglia, continues to be very evasive, belligerent, and unprofessional. All these delays in not providing clear, concise, and timely answers by members of the AC are continuing to cause me extreme delays and financial losses.

Also, on December 11th, 2017, when I submitted my Grading Plan Change Order to Lulu in the Association Office, I requested to be put on the AC's next meeting agenda of January 9th, 2018. Lulu replied that I do not need to worry, and that there is no one on the AC's agenda at that time, and I will be put on as the 1st to be heard on the AC agenda of January 9, 2018. When Lulu contacted me on December 9th, 2018 to discuss the rain of the day, I asked her what time is my appointment on the AC Agenda that day, and she told me that I was not on the schedule. I was shocked by her statement and immediately informed her, that she told me on Decemeber 11th, 2017 (when I was there in person) that I would be 1st since there was no one scheduled yet. Lulu responded by saying "I do not know why they removed you" and then she said "you can come to the Open

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM
Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

Page 3 of 4

Forum". I said, I requested a month ago to be on the agenda at the AC meeting of January 9, 2018 and was 1st in line, so then Lulu said she will make a request to put me back on the agenda for that evening (January 9, 2018).

When I arrived at the AC meeting that evening, (January 9, 2018), Mr. Peter Carniglia informed me that I was not on the agenda. I replied that as Lulu (who was present at the meeting) advised me, she herself put me on tonight's agenda on December 11th, 2017 and does not know why I was taken off, and that it was discrimination against me by the AC for taking my name off without any notice or explanation, and that I must immediately be placed back on the agenda for tonight (January 9, 2018). At that time the AC members stepped out of the room and had a private discussion. When they returned, a motion was made and I was placed on the agenda. This was another malicious and purposeful attack on me personally and trying to delay my project.

The Northerly slope exposed height is 22 ft. in the Change Order Grading Plan and this slope is visible only from the property belonging to Boeing Corporation and does not change or is visible to anyone in Bell Canyon or its harmony to the general plan of Bell Canyon.

The Southerly slope exposed height is 58 ft. on the Change Order Grading Plan, is incorrect because there are structures/homes that are at least 30 feet high which block the lower Southerly slope from being exposed. Only about 28 feet is actually the exposed height, and when looking from the street you could only see about 14 feet actually being exposed. Due to the massive dump which was on my property that caused to expand the grading and create a bench on the Southerly slope, and an access road to the bench needed to be done, the Southerly slope had to be modified. Also a portion of the driveway had to be elevated for future utilities and safer access to the property. This slight change is not visible to any resident in Bell Canyon with the naked-eye, and would need to be measured with a special tool in order to see any difference from my previous, approved Grading Plan #1. At the AC meeting of January 9th, 2018, Mr. Peter Carniglia refused to look at the pictures I had of the Southerly slope and how it looks from the street, therefore again delaying the process of my approval to move forward with my project.

The portion of the Southerly facing slope that is steeper than the 2:1 grade is due to its connection to the NATURAL SLOPES that are steeper NATURALLY than the 2:1 grade, and in order to be harmonious with and keeping with the harmony of Bell canyon. So there would not be another option to connect that portion of the Southerly facing slope to the natural slopes that exist in the natural topography of my land. Otherwise all NATURAL slopes must be graded to 2:1 grade, so there would not remain any NATURAL SLOPES WHICH ARE STEEPER NATURALLY.

Appropriate drainage devices were placed at 15 feet vertical intervals on the bench facing the Southerly slope and keyways were placed at the bottom of the slope to a depth of at least 3 feet below the lowest adjacent grade. All keyways have a minimum embedment into the bedrock of 3 feet. A drain was placed in the keyways. Enclosed is a copy of the keyways and drainage for the proposed grading area.

Presently I have been called in as a witness in an ongoing lawsuit involving Mr. Peter Carniglia, Mr. Steve Kent, and Mr. Eric Wolf and I feel that there is enormous biased against me and I am being maliciously attacked and caused delays in my project due to personal cruel reasons of the people who hold the power in the HOA & AC of Bell Canyon. Furthermore it is my contention that these people, who are aware that I am a witness involving a lawsuit against them, should not have any ability or right to be involved in any reviews & authorizations of my current construction project in Bell Canyon.

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Page 4 of 4

If there are any disagreements, misunderstandings, or issues regarding the drainage then my consultants, who serve as my agents, and are readily available, should be immediately notified so that all problems can be resolved in the most efficient way, without prolonged, unnecessary, illegal delays.

Until now the AC has used stalling tactics to prolong/delay my construction and have refused to speak to my consultants, who serve as my direct agents on the project, and must be heard. Instead of resolving the issues efficiently and timely the AC has acted inappropriately and maliciously at this time.

Upon your receipt and review of this correspondence and its enclosure, please reverse your decision of January 5th, 2018 and allow me to proceed with my project.

Sincerely,
Leon Reingold

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

# EXHIBIT G

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

Ventura Superior Court Accepted through eDelivery submitted 04-24-2018 at 10:24:57 AM

BELL CANYON ASS   IATION
30 Hackamore Lane, Suite R
Bell Canyon, CA 91307-1001

February 2, 2018

*Letter sent via mail and email*
*leonreingold@gmail.com & fem003@sbcglobal.net*

Leon Reingold
15 Maverick Lane
Bell Canyon, CA  91307



Re:    Lot 735, 9 Wagon Lane

Dear Mr. Reingold:

We are in receipt of your hand delivered letter to the BCA AC dated January 15, 2018.  Please be informed that we disagree with most of your points in the letter and noted plan.  Suffice it to say that your letter has slowed down and altered the response and explanation you hoped to receive from the AC regarding further deliberation on your latest project submittal.

We would like to schedule a meeting with you and your design professional(s), the Association Consultants and members of the AC to try to work with you to resolve the issues.  Notwithstanding that, please note the following portion of this letter for clarity.  Please call the office to schedule this proposed meeting.

Please also refer to the earliest requirements clearly stated in the original preliminary approval letter to which you never complied and be sure to include evidence of satisfactory compliance with those requirements in any future submittals.  These include but may not be limited to:

- Submit a Hardscape Plan that adequately incorporates natural looking rock outcroppings/formations/installations to return disturbed areas (graded portions of the lot) to substantially native looking terrain.
- Landscape Plan that adequately camouflages and plants, irrigates, drains and maintains all disturbed slope faces. (Note that your current landscape plan does not fulfill this requirement nor seemingly even address it adequately).

Further, please refer to the rejection letter of January 5, 2018 for additional details. With respect to the word "inharmonious" for which you requested an explanation, the dictionary defines it as meaning, "not contributing to a pleasing whole; discordant, not congenial or compatible with existing."

At such time that you submit new plans for consideration you will be placed on the AC Agenda.  Until that time you are welcome, as all members are, to address the Committee during open forum at the beginning of each AC meeting. Should you wish to appeal the BCA AC decision you have the right to a hearing before the Board of Directors and may make such a request through the office at any time.

Respectfully,

Bell Canyon Association
Architectural Committee


cc:    Bell Canyon Board of Directors
       Legal Counsel

818.346.9879
818.883.8430 FAX
bellcanyon.com

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

# EXHIBIT E



# IRONSHORE.
### A Liberty Mutual Company

Ironshore Insurance Services LLC.
28 Liberty Street, 5th Floor
New York, NY 10005
Main #646-826-6600

Anny.Mok@LibertyIU.com
Telephone: (212) 208-2811

May 17, 2018

**Via Certified Mail - Return-Receipt Requested 91 7199 999 7036 8109 3988 and Email (gm@bellcanyon.com)**

Bell Canyon Association
c/o Diane Rossiter
30 Hackamore Lane, Suite 8
Bell Canyon, CA 91307

Re:  Insured:          Bell Canyon Association
     Insurer:          Ironshore Specialty Insurance Company
     Type of Policy:   Not-For-Profit Entity and Directors, Officers Liability
                       (w/ Employment Practices Claims Coverage)
     Matter:           Leon and Marina Reingold
     Claim No.:        PRO000073838
     Policy No.:       003047801

Dear Ms. Rossiter:

Ironshore Specialty Insurance Company ("Ironshore") is in receipt of correspondence, dated May 3, 2018, enclosing a copy of complaint filed in the Superior Court of California, Ventura County, captioned: *Leon Reingold and Marina Reingold v. Bell Canyon Association, Inc.; Ray Jadali; Keir Milan; Peter Carniglia; and Does 1 through 20* (the "Complaint").

Ironshore issued a Not-For-Profit Entity and Directors, Officers Liability Insurance Policy with Employment Practices Claims Coverage Policy, No. 003047801 to Bell Canyon Association (the "**Insured**," or the "Association") with a Policy Period effective from February 1, 2018 to February 1, 2019 (the "Policy"). The Policy is subject to a $1,000,000 Limit of Liability, and Claims other than Employment Practice Claims are subject to a Retention of $75,000.

The Complaint

According to the Complaint, Leon and Marina Reingold (the "Plaintiffs") are owners of the property known as 9 Wagon Lane, located within the Association's property. Individual defendants Jadali, Milan, and Carniglia are members of the Association's Architectural Committee (the "AC").

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Pursuant to the Compliant, the Plaintiffs first submitted an application containing construction plans to their property to the AC for the AC's review and approval on or around August 2015. The Association President allegedly interfered with the review and the Association denied approval when it found out that Plaintiff intended to hire David Chai as their contractor. David Chai and the Association are involved in their own litigation pending before the Ventura County Superior Court, Case. No. 56-2016-00486775-CU-WMVTA (the "Chai Litigation"). Plaintiffs and the Association resolved the dispute between November and December of 2016 and the Plaintiff paid the Association a fee of $87,545 to commence work.

In the course of submitting the construction plans to the city of Ventura, the city required changes to the plan. The Plaintiffs allegedly submitted the revised plans to the AC on May 10, 2017, and did not receive any objections. Further revisions were required, and the Plaintiffs submitted a new and revised plan to the AC on August 2, 2017. On August 29, 2017, the AC and the Association ordered Plaintiffs to cease all work. Plaintiff believes the Association and AC's order to stop work and the reasons provided were really a pretext, and that the real reason for the order was because the Plaintiffs were scheduled to give testimony in favor of David Chai in the Chai Litigation.

The Complaint asserts two causes of action: 1) Breach of Fiduciary Duties and 2) Declaratory Relief.

In the first cause of action, the Plaintiffs claim the AC members had a fiduciary duty to reasonably assess the proposed plans and evaluate the plans to determine whether the Plaintiffs' project would be consistent with the community plans, and that such review should be done independent of any influence by the Association and Board President. Plaintiffs assert that the defendants breached this duty by failing to provide a legitimate basis for their denial of the Plaintiffs' revised plans, and by acting solely to coerce Plaintiffs from testifying against the Association in the Chai Litigation or in retaliation for the testimony.

In the second cause of action, the Plaintiffs seek a court declaration concerning the rights, duties, and obligations of the parties under the CC&Rs in relation to approval of the construction plans.

Plaintiffs are also seeking actual damages, punitive damages, attorney's fees, and costs.

<u>Coverage Analysis</u>

Ironshore recognizes that the allegations in the Complaint have not been proven at this time and nothing contained in this letter is intended to imply that Ironshore believes that the allegations have any factual or legal merit whatsoever. Nevertheless, based upon the available information supplied to date, we have determined there is no coverage for this matter under the Policy. Our determination is based on the position set forth herein.

Endorsement # 8 of the Policy (SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT OR ACT EXCLUSION) provides, in relevant part:
    [T]he **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**, notice, event, investigation or action referred to below (hereinafter "Event"); the prosecution, adjudication, settlement, disposition, resolution or defense of any Event; any **Claim** arising from an Event; or any **Claim** alleging the same Wrongful Act or Related Wrongful Acts, *or any fact, circumstance or situation in any way relating to any Event.*

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #: 56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

[*Emphasis added*]

The Chai Litigation is listed as an excluded Event under Endorsement # 8. The Plaintiff's assertion against the Insureds is that they breached their fiduciary duty when they allegedly stopped Plaintiffs' project either as coercion or in retaliation for the Plaintiffs' testimony in favor of David Chai in the Chai Litigation. Thus, the facts and circumstances in the Complaint relates to an excluded Event per Endorsement 8 of the Policy and coverage is fully denied.

We trust that you understand Ironshore's coverage position as set forth above. However, Ironshore reserves the right to supplement and/or to amend this letter to address additional coverage issues as they may arise, based upon all of the provisions, terms, conditions, exclusions, endorsements and definitions set forth in the Policy and any additional facts that may come to our attention. As such, the within discussion does not purport to be a comprehensive analysis of all potentially applicable coverage issues and policy provisions and mention of specific coverage issues or policy provisions herein does not negate the relevance of any others. Similarly, nothing herein should be construed as an admission of coverage or liability by Ironshore, or as a waiver, estoppel or modification of any of the terms, conditions or limitations of the Policy and Ironshore reserves all rights, remedies and defenses, legal and equitable.

If you believe that any other information may be relevant or may provide a basis for Ironshore to withdraw or modify the comments in this letter, please bring all such information to my attention as soon as possible.

We appreciate having you as our customer and your attention in submitting this matter for consideration. Should you have any questions, please do not hesitate to contact me.

Sincerely,

*Anny Mok*

Anny Mok
*Senior Claims Specialist, Management Liability Claims*
Ironshore Insurance Services LLC.

Cc (via email):

jason.miyake@usi.com

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

# EXHIBIT F

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL :435.00 TYPE : EFT



SACRAMENTO, CA
SACRAMENTO OFFICE
TEL: (916) 442-2415

LOS ANGELES, CA
WESTWOOD OFFICE
TEL: (310) 470-1869
FAX: (310) 470-9648

*DAMON M. RIBACOFF*
*(1970-2007)*

**R P N A**

ROXBOROUGH
POMERANCE
NYE & ADREANI

5820 CANOGA AVENUE,
SUITE 250
WOODLAND HILLS, CA 91367
TEL: (818) 992-9999
FAX: (818) 992-9991

NICHOLAS P. ROXBOROUGH
DREW E. POMERANCE
GARY A. NYE
MICHAEL B. ADREANI
MARINA N. VITEK
JOSEPH C. GJONOLA

DAVID R. GINSBURG
BURTON E. FALK
DAVID A. CARMAN
RYAN R. SALSIG
DARON BARSAMIAN
JACLYN D. GROSSMAN
TREVOR R. WITT
VINCENT S. GANNUSCIO

May 25, 2018

*Via E-Mail: anny.mok@libertyiu.com*
*and U.S. Mail*

Ms. Anny Mok
Senior Claims Specialist, Management Liability Claims
IRONSHORE INSURANCE SERVICES LLC
28 Liberty Street, 5th Floor
New York, NY 10005

Re:      *Ironshore's denial of coverage for Bell Canyon Association; demand for coverage*
| | |
|---|---|
| Insured: | Bell Canyon Association, Inc. |
| Insurer: | Ironshore Specialty Insurance Company |
| Type of Policy: | Not-For-Profit Entity and Directors, Officers Liability (w/ Employment Practices Claims Coverage) |
| Policy Period: | February 1, 2018 to February 1, 2019 |
| Matter: | Leon and Marina Reingold |
| Claim No.: | PR000073838 |
| Policy No.: | 003047801 |

Dear Ms. Mok:

This firm represents your insured, Bell Canyon Association, Inc. ("BCA"). I am in receipt of your May 17, 2018 letter to BCA, c/o Ms. Diane Rossiter. Your letter denies both defense and indemnity coverage ("coverage") to BCA and three members of its architectural committee, Ray Jadali, Keir Milan and Peter Carniglia (collectively, the "Insureds").

By this letter, I hereby demand that Ironshore Specialty Insurance Company ("Ironshore") immediately withdraw its denial, and instead accept full coverage under the aforementioned Policy with regard to the lawsuit filed by Leon and Marina Reingold against the Insureds, Ventura Superior Court, Case No. 56-2018-00510717-CU-BT-VTA, which was filed on April 24, 2018 ("Reingold lawsuit"). Failure to do so will result in a bad faith breach of contract lawsuit against Ironshore.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Anny Mok
May 25, 2018
Page | 2

As your letter notes, the Reingold lawsuit alleges that the Reingolds own property at 9
Wagon Lane in Bell Canyon ("Reingold property"), and that the Insureds placed a stop work
order on their project while grading was underway.

The sole basis for Ironshore's denial of coverage is Endorsement # 8 to the Policy, which
states:

> It is hereby understood and agreed that, without limiting the effectiveness of
> exclusions B or C of the Policy, the Insurer shall not be liable to make any
> payment for Loss in connection with any Claim, notice, event, investigation or
> action referred to below (hereinafter "Event"); the prosecution, adjudication,
> settlement, disposition, resolution or defense of any Event; any Claim arising
> from an Event; or any Claim alleging the same Wrongful Act or Related
> Wrongful Acts, *or any fact, circumstance or situation in any way relating to any
> Event*. (Italics and underlining in original.)

The excluded "Event" specifically referenced by your letter and in Endorsement # 8, is the
lawsuit filed by Nissim David-Chai ("Chai"), Ventura County Superior Court, Case. No. 56-
2016-00486775-CU-WMVTA, which was filed on September 19, 2016 (the "Chai Litigation").
The Chai Litigation nowhere alleges any wrongdoing relating to the Reingold property. The
Chai Litigation concerns Mr. Chai's efforts to obtain approvals from the BCA Architectural
Committee for various projects on which Mr. Chai was acting as an owner/developer and/or
contractor. The Chai Litigation and the Reingold Lawsuit therefore concern different properties,
among many other distinctions.

Your letter, however, simplistically concludes its "Coverage Analysis" as follows:

> The Chai Litigation is listed as an excluded Event under Endorsement # 8. The
> Plaintiffs assertion against the Insureds is that they breached their fiduciary duty
> when they allegedly stopped Plaintiffs' project either as coercion or in retaliation
> for the Plaintiffs' testimony in favor of David Chai in the Chai Litigation. Thus,
> the facts and circumstances in the Complaint relate to an excluded Event per
> Endorsement 8 of the Policy and coverage is fully denied. (Emphasis added.)

To summarize, Ironshore has denied coverage to the Insureds because the Reingolds
allege that the denial of certain construction approvals by the Insureds regarding the Reingold
property, is the result of the Reingolds offering possibly favorable testimony as witnesses in the
Chai litigation. Apparently, Ironshore believes that the prospective Reingold testimony in the
Chai Litigation is a "fact or circumstance" that is somehow "related to" the Chai litigation.

This preposterous reasoning is grossly overbroad and in extreme bad faith, because it
would theoretically exclude every conceivable homeowner's lawsuit from the very coverage for
which the Policy is expressly intended, based on the spurious logic that if any Bell Canyon
homeowner supports the Chai Litigation, in any way, the homeowner's distinctly separate
property development claims would be a "fact, circumstance or situation in any way relating" to

Anny Mok
May 25, 2018
Page | 3

the Chai Litigation. This is an absurd application of Endorsement # 8, which renders the Policy essentially illusory.

The exclusionary language at issue here is hopelessly vague, extremely overbroad, and not capable of being understood by a reasonable insured. It is hornbook law that all exclusionary clauses must be plain and clear. As explained by the California Supreme Court: "An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear… The burden rests on the insurer to phrase exceptions in clear and unmistakable language … The exclusionary clause must be conspicuous, plain and clear." *State Farm Mut. Auto. Ins. Co. v. Jacober* (1973) 10 Cal.3d 193, 201-202 (emphasis added). To be "plain and clear," the policy language must be "precise and understandable" to the average layperson. *Brown v. Mid-Century Ins. Co.* (2013) 215 Cal.App.4th 841, 857. "This means more than the traditional requirement that contract terms be 'unambiguous.'" *Ponder v. Blue Cross of Southern Calif.* (1983) 145 Cal.App.3d 709, 723. A "fact, circumstance or situation in any way relating" to the Chai Litigation (emphasis added), is the exact opposite of "precise and understandable." The applications of this grossly ambiguous endorsement language are literally limitless.

The "plain and clear" mandate "applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for a claim purportedly excluded." *MacKinnon v. Truck Ins. Exch.* (2003) 31 Cal.4th 635, 648. For example, in *Safeco Ins. Co. of America v. Robert S.* (2001) 26 Cal.4th 758, 764, a homeowner's policy excluded liability arising from the insured's "illegal acts." The Court found that "illegal" could reasonably be interpreted to mean either criminal acts or acts violating any law, criminal or civil. Therefore, the Court held that the latter interpretation rendered the exclusion invalid because it defeated the parties' reasonable expectations of coverage for accidental injury. Although a "criminal acts" exclusion could have been upheld on its own, the Court refused to interpret the "illegal acts" exclusion as limited to criminal acts. Because the exclusion was invalid, liability resulting from the insured's criminal acts was therefore covered. In the instant case, the Insureds obviously expected the Policy to cover disputes and lawsuits regarding any and all denials of construction permits by the architectural committee of the BCA because the primary function of the architectural committee is to grant, deny, or impose conditions upon construction permit requests. The Endorsement # 8 language relied upon by Ironshore – "any fact, circumstance or situation in any way relating to any Event" – is the exact opposite of "precise and understandable." Rather, it is vague, ambiguous, and overbroad. An ambiguous exclusion is certainly not precise and understandable.

It is also well-established that insurance coverage, particularly the broader duty to defend, is "interpreted broadly so as to afford the greatest possible protection to the insured," whereas "exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exch.* (2003) 31 Cal.4th 635, 648 (emphasis added) (held that environmental pollution exclusion did not apply to landlord's spraying of pesticides). As with the "plain and clear" requirement above, this rule of narrow construction of exclusionary clauses also applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded. *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 272–273; *MacKinnon, supra, at 648.*

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Anny Mok
May 25, 2018
Page | 4

Finally, courts strictly construe ambiguities against the insurer. "[O]ur past decisions have consistently embraced the notion that ambiguities in an insurance policy are to be strictly construed against the insurer. This rule applies with particular impact to the text of exclusions." *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 811 (held that the insured's stepson was not within scope of the "family" exclusion, since that exclusion was to be construed narrowly, and the ambiguity in the use of the term "family" was construed against the insurer). *See also State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94, in which the California Supreme Court held that the exclusionary clause of a homeowner's policy, which denied coverage for injuries "arising out of the . . . use . . . of a motor vehicle," did not preclude coverage for injuries sustained by a passenger in the insured's vehicle when his gun, which the insured had modified to have a hair-trigger and was holding on his lap, discharged as the insured drove his vehicle off a paved portion of the roadway in pursuit of a running jackrabbit. The Court simultaneously held that the same insurer was liable under its automobile policy as well.

> [T]he insurer overlooks the fact that although the language in the two policies is substantially similar, past authorities have made it abundantly clear that an entirely different rule of construction applies to exclusionary clauses as distinguished from coverage clauses. Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations omitted], exclusionary clauses are interpreted narrowly against the insurer. [Citations omitted.] These differing canons of construction, both derived from the **fundamental principle that all ambiguities in an insurance policy are construed against the insurer-draftsman**, mean that in ambiguous situations an insurer might be found liable under both insurance policies. [Citations omitted.]

*Id.* at 101-102 (emphasis added).

The specific language that Ironshore relies upon in Endorsement # 8 – "any fact, circumstance or situation in any way relating to any Event" – is hopelessly vague and potentially limitless. According to Ironshore, any lawsuit brought by a Bell Canyon homeowner regarding any kind of dispute, would be excluded from coverage by the language of this endorsement if there were even the mere mention of the Chai Litigation in some allegation. No court will permit this exclusionary language to be applied as you have done here. The inclusion of this unclear, imprecise and abstruse language is the very definition of bad faith.

Anny Mok
May 25, 2018
Page | 5

      I therefore expect Ironshore to reconsider its ill-advised and bad faith denial of coverage
to its Insureds.  I will look for Ironshore's written acceptance of both its defense and indemnity
obligations to the Insureds, no later than June 8, 2018.

                Very truly yours,

                ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP

                DREW E. POMERANCE

DEP/sg
cc: Burton E. Falk, Esq.
     Bell Canyon Association

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 122030 4D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

# EXHIBIT G



Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID:03/4/22 2:16 PM TOTAL:435.00 TYPE:EFT

E. JOSEPH O'NEIL
[617] 951-4705
eonell@peabodyarnold.com

June 15, 2018

*Via Email [dep@rpnalaw.com]*

Drew E. Pomerance, Esq.
Roxborough, Pomerance Nye & Adreani, LLP
5820 Canoga Avenue, Suite 250
Woodland Hills, CA 91367

Re:   **Insured:**    ***Bell Canyon Association***
      **Insurer:**    ***Ironshore Specialty Insurance Company***
      **Matter:**     ***Leon and Marina Reingold***
      **Claim No.:**  *PRO00073838*
      **Policy No.:** *003047801*

Dear Mr. Pomerance:

As I previously advised, this firm represents Ironshore Specialty Insurance Company ("Ironshore") with respect to the above-captioned matter which has been submitted for coverage under Policy No. 003047801 issued by Ironshore to Bell Canyon Association ("BCA"). By letter dated May 17, 2018 (which is fully incorporated herein by reference), Ironshore declined coverage under the Policy for the action captioned *Leon Reingold, et al. v. Bell Canyon Association, et al.*, Civil Action No. 56-2018-00510717-CU-BT-VTA, filed in the Superior Court of California in and for Ventura County (the "*Reingold Action*") based on Endorsement No. 8 of the Policy, the Specific Investigation/Claim/Litigation/Event or Act Exclusion.

By letter dated May 25, 2018, you advised Ironshore of BCA's disagreement with its declination of coverage and demanded that Ironshore immediately withdraw its denial of coverage and accept full coverage for the *Reingold Action* under the Policy. Ironshore has carefully considered the arguments in your letter. However, Ironshore maintains its declination of coverage for the *Reingold Action*. In addition, please note that Ironshore expressly denies any assertion in your letter that it has in any way engaged in bad faith in connection with this matter.

I.   The *Reingold Action*

The *Reingold Action* involves a dispute between the Reingolds, who are members of the BCA, and the BCA regarding construction by the Reingolds on their lot, which is subject to BCA's Covenants, Conditions and Restrictions. Plaintiffs contend that they submitted plans to the BCA's Architectural Committee (the "Committee") in or about August 2015, and thereafter received preliminary approval to begin construction. However, once the BCA learned that David Chai was the plaintiffs' contractor, it allegedly instructed the Committee to refuse to accept plaintiffs' fee deposit and refuse to permit submission of the plans that had allegedly been preliminarily approved by the BCA and Ventura County. Plaintiffs further allege that, as a result of the BCA's position, they drafted a letter to the BCA Board of Directors outlining interference

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

PEABODY & ARNOLD LLP
Drew E. Pomerance, Esq.
June 15, 2018
Page 2

by the BCA's president and thereafter settled the dispute with the BCA in November 2016 via written agreement pursuant to which plaintiffs were allowed to proceed with construction.

The *Reingold Action* then alleges that in August 2017, a new and revised plan was submitted by plaintiffs to the BCA regarding a proposed grading change because the property had previously been used as a dumping site. The Committee then issued a stop work order which plaintiffs allege was the result of instructions from the Board of Directors. Plaintiffs allege that the stop work order was a pretext and that the true reason was that plaintiffs were scheduled to give favorable testimony on behalf of David Chai in litigation against BCA and others filed by Chai in Case no. 56-2016-00486775-CU-WMVTA (the "Chai Lawsuit"). Plaintiffs contend that plaintiffs' testimony would be detrimental to the BCA and that therefore the BCA tried to pressure them into not supporting Chai in the Chai Lawsuit. Moreover, plaintiffs allege that despite additional submissions by plaintiffs to the Committee, the BCA has continued to deny plaintiffs' plans in retaliation for plaintiffs' support for Chai's position in the Chai Lawsuit.

The *Reingold Action* names as defendants the BCA and three Committee members, Ray Jadali, Keir Milan and Peter Carniglia. The *Reingold Action* asserts the two counts: Count I - Breach of Fiduciary Duties against BCA; and Count II – Declaratory Relief. Plaintiffs seek declaratory relief, compensatory and punitive damages, attorneys' fees and costs.

II.   The Policy and Ironshore's Coverage Position

Ironshore issued the Policy to Bell Canyon Association for the Policy Period of February 1, 2018 to February 1, 2019. The Policy has an aggregate Limit of Liability of $1 million subject to a $75,000 self-insured retention applicable to Employment Practices Claims and a $75,000 self-insured retention applicable to Claims other than Employment Practices Claims. Please refer to the Policy for its complete terms and conditions.

We refer you to Endorsement No. 8 of the Policy which provides in relevant part as follows:

It is hereby understood and agreed that, without limiting the effectiveness of exclusions B or C of the Policy, the Insurer shall not be liable to make any payment for Loss in connection with any Claim, notice, event, investigation or action referred to below (hereinafter "Event"); the prosecution, adjudication, settlement, disposition, resolution or defense of any Event; any Claim arising from an Event; or any Claim alleging the same Wrongful Act or Related Wrongful Acts, or any fact, circumstance or situation in any way relating to any Event.

Event:...

| Claim Number | Claimant Name | Date of Loss | Loss Type | Status |
|---|---|---|---|---|
| 7030104537 | David, Chai, Nissim | 9/19/2016 | Breach of fiduciary duties | Open |

CASE #: 56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

PEABODY & ARNOLD LLP
Drew E. Pomerance, Esq.
June 15, 2018
Page 3

As Ironshore previously advised in its May 17, 2018 letter, the Chai Lawsuit is listed in
Endorsement No. 8 as an Event. Because the *Reingold Action* alleges Related Wrongful Acts to
those alleged in the Chai Lawsuit, arises from the Chai Lawsuit and/or alleges facts,
circumstances or situations relating to the Chai Lawsuit, the Policy does not cover the *Reingold
Action*.

You argue that the *Reingold Action* is not excluded by Endorsement No. 8 because the
Chai Lawsuit does not allege any wrongdoing relating to the Reingold property. Rather, it arises
from Mr. Chai's efforts to obtain approvals from the BCA Committee for projects on which he
was the owner/developer or contractor and concerns different properties. Ironshore disagrees.
As an initial matter, courts generally uphold policy exclusions similar to Endorsement No. 8,
which exclude coverage for claims arising out of or related to specifically identified events,
matters or litigations. *See e.g., UBS Financial Services Inc. of Puerto Rico v. XL Specialty Ins.
Co.*, 289 F.Supp.3d 335 (D. Puerto Rico 2018); *RSUI Indemnity Co v. World Wide Wagering,
Inc.*, 2017 Westlaw 3023748 (N.D. Ill. 2017); *Millennium Laboratories, Inc. v. Allied World
Assur. Co.*, 165 F.Supp.3d 931 (S.D. Cal. 2016), *aff'd*, 2018 Westlaw 1179601 (9th Cir. 2018);
*The One James Plaza Condominium Ass'n, Inc. v. RSUI Group, Inc.*, 2015 Westlaw 7760179
(D.N.J. 2015).

Endorsement No. 8 is a broad exclusion. First, it excludes from coverage any Claim
alleging Related Wrongful Acts to those alleged in the Chai Lawsuit. The Policy defines Related
Wrongful Acts as "Wrongful Acts which are the same, related or continuous, or Wrongful Acts
which arise from a common nucleus of facts. Claims can allege Related Wrongful Acts
regardless of whether such Claims involve the same or different claimants, Insureds or legal
causes of action." As you note in your letter, the Chai Lawsuit concerns Chai's efforts to get
BCA Committee approval on projects when he is the contractor. The *Reingold Action* likewise
concerns the Reingolds' efforts to obtain Committee's approval on a project where Mr. Chai is
the contractor. In addition, the *Reingold Action* alleges that BCA's refusal to give the approvals
is directly related to the fact that Mr. Chai is the plaintiffs' contractor and that they were
scheduled to testify on Mr. Chai's behalf in the Chai Lawsuit. Thus, the *Reingold Action* and the
Chai Lawsuit allege Related Wrongful Acts.

Plaintiffs contend that their plans would have been approved by the BCA Committee
absent their testimony in the Chai Lawsuit. Accordingly, the *Reingold Action* arises from the
Chai Lawsuit. *See Traveler's Prop. Cas. Co. of America v. Actavis, Inc.*, 16 Cal. App.5th 1026,
1045-46 (noting that California courts broadly interpret the term arising out of broadly in the
context of both coverage provisions and exclusions).

Finally, Endorsement No. 8 also excludes coverage for any Claim alleging any fact,
circumstance or situation in any way relating to the Chai Lawsuit. The *Reingold Action* alleges
that plaintiffs' scheduled testimony in the Chai Lawsuit is the reason why the Committee issued
the stop work order and refused to approve their plan submissions and that any other reasons
provided by the Committee for its decisions are a pretext. Therefore, the *Reingold Action*
alleges facts, circumstances and situations relating to the Chai Lawsuit.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #: 56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

PEABODY & ARNOLD LLP
Drew E. Pomerance, Esq.
June 15, 2018
Page 4

You argue in your letter that Ironshore's interpretation of Endorsement No. 8 is grossly overbroad because it would theoretically exclude every conceivable homeowner's lawsuit from the very coverage intended based on the logic that if any Bell Canyon homeowner supports the Chai Lawsuit in any way, the homeowner's claim against the Insured would be excluded. This is an incorrect characterization of Ironshore's position. The plaintiffs expressly allege that the sole reason that they were denied approvals and were forced to stop work on their project is because defendants knew that they were scheduled to provide testimony in the Chai Lawsuit that was detrimental to the BCA's president and Board of Directors. Thus the Wrongful Acts alleged in the *Reingold Action* are directly related to plaintiffs' involvement in the Chai Lawsuit.

Moreover, Ironshore disagrees with your contention that the exclusionary language in Endorsement No. 8 is "hopelessly vague, extremely overbroad, and not capable of being understood by a reasonably insured." Courts have found similar exclusions to be unambiguous and have consistently upheld similar exclusions despite their broad language and expansive reach. *See UBS Financial Services, Inc. of Puerto Rico*, 289 F.Supp.3d at 345 (upholding specific litigation exclusion that "employs expansive language, denying coverage for 'any Claim...based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving [the prior matters] or any fact, circumstance or situation underlying or alleged therein."); *Millennium Laboratories, Inc.*, 165 F.Supp.3d at 934 (upholding specific claims exclusion that precluded coverage for Claims "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving [the prior litigations]."); *RSUI Indemnity Co.*, 2017 Westlaw 3023748 at * 7 (applying specific litigation exclusion to preclude coverage while acknowledging that provision was "clear, unambiguous and broad" plainly stating that insurer "is not liable for any claims arising out of or based upon, *in whole or in part*, the [excluded matter]."). In fact, the court in *UBS Financial Services* expressly noted that "[t]he broad language of the bargained-for [specific litigation] exclusion is also no reason to deny enforcement of the unambiguous provision."

For all of the foregoing reasons, Endorsement No. 8 excludes coverage for the *Reingold Action*.

Because Ironshore believes the foregoing coverage issues to be dispositive, this letter does not address all potential coverage issues arising under the Policy. Ironshore calls your attention to the following additional Policy provisions which could operate to limit or exclude coverage for the *Reingold Action*: The Policy's Insuring Agreement [which requires that the Claim be first made during the Policy Period]; Exclusion III.A.1. [illegal profit/advantage]; Exclusion III.A.2. [deliberately fraudulent or criminal acts]; Exclusion III.B. [notice under prior policy]; Exclusion III.D., as amended by Endorsement No. 14 [bodily injury/property damage]; Exclusion III.L. [claims insured under another policy or policies]; Exclusion III.N. [contractual liability]; and the Policy's definition of Loss, as amended by Endorsement Nos. 13 and 14].

Ironshore's supplemental coverage position is based on the information presently available to us. This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the Policy, or any other policies of insurance issued

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

PEABODY & ARNOLD LLP
Drew E. Pomerance, Esq.
June 15, 2018
Page 5

by Ironshore or any of its affiliates. Ironshore expressly reserves all of its rights under the Policy, including the right to assert additional defenses to any claims for coverage, if subsequent information indicates that such action is warranted.

Although we encourage you to discuss any questions or concerns you may have with Ironshore, California insurance regulations require us to inform you that if you believe an insurance claim has been wrongfully denied or rejected, in whole or in part, you may have the matter reviewed by the California Department of Insurance at the following address:

California Department of Insurance
Claims Service Bureau
300 South Spring Street
Los Angeles, CA 90013
1-800-927-4357 (in state)
1-213-897-8921 (out of state)

Thank you for your attention to the above. Please feel free to contact us should you have any questions regarding this matter or Ironshore's position as outlined herein.

Sincerely,

E. Joseph O'Neil

1411864_1

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

# EXHIBIT H

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

SACRAMENTO, CA
SACRAMENTO OFFICE
TEL: (916) 442-2415

LOS ANGELES, CA
WESTWOOD OFFICE
TEL: (310) 470-1869
FAX: (310) 470-9648

*DAMON M. RIBAKOFF
(1970-2007)*



R P N A

ROXBOROUGH
POMERANCE
NYE & ADREANI

NICHOLAS P. ROXBOROUGH
DREW E. POMERANCE
GARY A. NYE
MICHAEL B. ADREANI
MARINA N. VITEK
JOSEPH C. GJONOLA

DAVID R. GINSBURG
BURTON E. FALK
DAVID A. CARMAN
RYAN R. SALSIG
DARON BARSAMIAN
TREVOR R. WITT
VINCENT S. GANNUSCIO

5820 CANOGA AVENUE,
SUITE 250
WOODLAND HILLS, CA 91367
TEL: (818) 992-9999
FAX: (818) 992-9991

June 27, 2018

*Via E-Mail: eoneil@peabodyarnold.com*

E. Joseph O'Neil
PEABODY & ARNOLD
600 Atlantic Avenue
Boston, MA 02210

Re:   Insured:      Bell Canyon Association, Inc.
      Insurer:      Ironshore Specialty Insurance Company
      Matter:       Leon and Marina Reingold
      Claim No.:    PRO00073838
      Policy No.:   003047801

Dear Mr. O'Neil:

This letter responds to your June 15, 2018 supplemental coverage opinion letter, which again denied defense and indemnity coverage to Bell Canyon Association, Inc. ("BCA") and other named insureds. This letter demands one final time that Ironshore rescind its denial of coverage and acknowledge, at a minimum, its duty to defend. Failure to do so will be in bad faith, and treated accordingly.

## 1.  Ironshore's Endorsement No. 8 Does Not Apply To The Reingold Lawsuit

Your June 15, 2018 letter attempts to expand the factual basis for invoking the exclusion in Endorsement No. 8. ("Exclusion"), but none of your grounds have merit. The first ground – that the insureds wrongfully withdrew approval of the Reingolds' project either as coercion or in retaliation for the Plaintiffs' testimony in favor of David Chai in the Chai Litigation – cannot withstand scrutiny. This is because your argument is premised on defining Mr. Chai himself as the allegedly related "Event," which is specious because it does not remotely demonstrate that the Reingold Lawsuit*'s allegations of wrongdoing* arose out of or related to the Chai Lawsuit's *allegations of wrongdoing*. The Reingolds' alleged desire to help Mr. Chai *personally* is <u>not</u> the same thing as "arising out of" the allegations in the Chai Lawsuit itself. Nothing set forth in the Reingold Lawsuit is related to any of the events or circumstances which allegedly occurred in

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

E. Joseph O'Neil
June 27, 2018
Page | 2

Chai's case. The Reingold Lawsuit, therefore, does not "arise out of" any of the allegations in Mr. Chai's lawsuit.

Your June 15 letter, however, for the first time raises an additional ground for invoking the exclusion. Your letter now also alleges that the Reingold Lawsuit and the Chai Lawsuit are "Related Wrongful Acts" under the exclusion because both lawsuits concern efforts to obtain "approval on a project where Mr. Chai is the contractor." This is a misleading statement regarding the Reingold Lawsuit, and it is insufficient legally as well. It is misleading because the Reingold Lawsuit alleges that the fact that Mr. Chai was their contractor, was not the basis for the insureds' alleged wrongdoing. Rather, they allege that the issues pertaining to using Chai as their contractor were "resolved" with the insureds in November 2016, by written agreement, which permitted the Reingolds "to proceed with their project." *Id.* Therefore, the Reingolds have actually alleged that their mere retention of Mr. Chai as a contractor caused them no harm. The Reingolds Lawsuit instead alleges that the "true reason" for the insureds' August 2017 letter ordering them to stop construction was "the fact that plaintiffs were scheduled to give testimony on behalf of Mr. David Chai in connection with litigation against the BCA, and others, filed by Mr. David Chai…" (Reingold Lawsuit, ¶ 14.) The fact that the Reingolds might give favorable testimony on behalf of Mr. Chai simply does not support the application of Ironshore's exclusion because there is no virtual identity of allegations between the Reingold and Chai Lawsuits.

The argument that the Reingold Lawsuit and the Chai Lawsuit are "related wrongful acts" is without merit because the allegations of the two lawsuits are not virtually identical nor do they allege the same wrongful conduct. For example, the Reingold Lawsuit alleges that the Reingolds did not know until August 2017 that their property required "additional grading, fill and compaction" because it "had been used as a dumping site for earlier construction in the community," and that the insureds stopped construction because of the Reingolds' revised plans. (Reingold Lawsuit, ¶¶ 11-13.) By comparison, the Chai Lawsuit alleges that the insureds breached their fiduciary duties to him by extorting money and services from Mr. Chai, granting illegal favors to other residents, and retaliating against Mr. Chai for refusing to perform free work for one or more of the insureds. There is thus no similarity, much less any virtual identity of allegations of wrongful conduct between the Reingold and Chai Lawsuits, as the two events involve wholly distinct facts and circumstances. In fact, the only similarity is that they involve construction within the Bell Canyon community. This is insufficient to enforce the exclusion under California law.

## 2. Exclusionary Clauses Are Interpreted Narrowly Under California Law.

Your June 15, 2018 letter cites only federal district court cases for the proposition that exclusions similar to Endorsement No. 8 should be upheld "despite their broad language and expansive reach." However, California law holds that exclusions are to be interpreted narrowly, not broadly, and that ambiguities are to be construed against the insurer. *Mitroff v. United Service Auto Assn.* (1999) 72 Cal.App.4th 1230, 1238. Moreover, "an insurer may rely on an exclusion to deny coverage only if it provides conclusive evidence that the exclusion applies." *Atlantic Mutual Ins. Co. v. J. Lamb Inc.* (2002) 100 Cal.App.4th 1017, 1038-39 (emphasis in original). The cases you cite do not hold that exclusions should be interpreted broadly, but rather, that related litigation exclusions will be enforced only if they are (1) unambiguous and

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

E. Joseph O'Neil
June 27, 2018
Page | 3

clear, and (2) applied only to virtually identical claims and allegations. The Reingold Lawsuit
and the Chai Lawsuit do not share virtually identical claims and allegations (as discussed above
and more fully below). Your factually inapposite cases thus support BCA's demand for
coverage.

For example, in *Millennium Laboratories, Inc. v. Allied World Assurance Company
(U.S.), Inc.* (S.D. Cal. 2016) 165 F.Supp.3d 931("*Millennium v. Allied*"), the only California case
your letter cites, the district court granted summary judgment to the insurer based on a "Specific
Claims Exclusion" in a D&O policy that was applied to a DOJ investigation. The three
specifically excluded earlier filed lawsuits alleged that Millennium engaged in unlawful business
practices by encouraging health care providers to submit false and/or fraudulent claims to health
insurers, and that it provided unlawful kickbacks to those health care providers. Similarly, the
subsequent DOJ action also alleged that "'Millennium formed a business plan to increase its
market share…through an improper and illegal scheme including illegal kick-backs and
encouraging false billings to Medicare." *Id.* at 934. After analyzing the allegations of the three
excluded actions, the court concluded that "These are exactly the same allegations listed in the
Complaint filed by the DOJ against Millennium…" *Id.* (emphasis added). Thus, the court
concluded that the DOJ allegations directly arose out of the three excluded actions. As noted
above, the Reingold and Chai Lawsuits do not remotely contain "exactly the same allegations,"
and your letter makes no argument to the contrary. Thus, Ironshore's exclusion, however broadly
worded, cannot apply to the Reingold Lawsuit under California Law.

*UBS Financial Services Incorporated of Puerto Rico v. XL Specialty Insurance Company*
(D.P.R. 2018) 289 F.Supp.3d 335 ("*UBS v. XL Ins.*"), also cited in your letter, was decided under
Puerto Rican law, which makes it legally inapplicable. For example, Puerto Rican law narrowly
construes exclusionary clauses only when they are ambiguous. *Id.* at 345-346. This is contrary
to California law, which construes exclusionary clauses narrowly, especially when they defeat
the reasonable expectations of the insured for coverage and/or are ambiguous. *See, e.g.,
MacKinnon v. Truck Ins. Exch.* (2003) 31 Cal.4th 635, 648.

Further, *UBS v. XL Ins* actually supports the inapplicability of the Ironshore exclusion.
The specific litigation exclusion in *UBS v. XL Ins.* identified an SEC investigation and order
("SEC action") and a virtually identical shareholders' derivative suit against UBS ("Union suit"),
for securities fraud, as the excluded actions. Subsequent to UBS obtaining insurance coverage,
UBS was subjected to two civil actions, two regulatory investigations, and hundreds of Financial
Institutions Regulatory Authority ("FINRA") arbitrations (collectively, "disputed matters"), all
based upon the same securities fraud claims alleged in the SEC action and the Union suit. UBS
conceded that some of the disputed matters mimicked each other's allegations, "sometimes word
for word." *Id.* a 341. The court found a virtual identity of allegations between the SEC action
and the Union suit on the one hand, and the subsequent disputed matters on the other hand:

> The insurers state that the disputed matters involve identical facts, circumstances,
> and situations as the prior matters. … The insurers emphasize that the
> connection between the prior and disputed matters "goes well beyond what the
> Policies require because they share specific factual commonalities and
> allegations." *Id.*

E. Joseph O'Neil
June 27, 2018
Page | 4

*UBS v. XL Ins.*, *supra* at 345 (emphasis added.)  There are no "identical facts, circumstances, and situations" between the Reingold and Chai Lawsuits.  Mr. Chai, the person, simply cannot be the "Event" nor constitute the "Related Wrongful Act," as your letter really asserts.

Finally, *RSUI Indemnity Company v. WorldWide Wagering, Inc.* (N.D. Ill., July 17, 2017) 2017 WL 3023748 ("*RSUI v. WorldWide*"), another non-California case you cite, is the least applicable case of them all.  There, the court granted the insurer's motion for judgment on the pleadings and found that it had no duty to defend or indemnify certain directors under a D&O policy, based upon a related claims exclusion. The excluded "Riverboat Matter" concerned allegations that one or more directors bribed a politician to obtain favorable legislation. The Riverboat Matter resulted in a $78 million judgment against the defendants. The underlying litigation for which the directors sought coverage alleged that the same directors "engaged in a deliberate scheme to manipulate [their debtor entities'] assets so as to conceal [those assets] from the Judgment Creditors and other creditors." *Id.*  The Illinois district court found that "All the claims in the Underlying Litigation related to Defendants' attempts to extract and transfer funds that were owed to various creditors as a result of the Riverboat Matter." *Id.* (emphasis added). Thus, the court found that the judgment in the Riverboat matter actually caused the wrongful acts alleged in the Underlying Litigation. You do not cite, nor have we found, any similar causation test under California law.  This causation test for a related lawsuit exclusion is particularly inapplicable to the Reingold Lawsuit because there is no judgment against the BCA officers in the Chai Lawsuit that caused harm to the Reingolds, and there nothing that could happen in the Chai Lawsuit which could possibly cause any harm to the Reingold's property interests. Therefore, Ironshore's exclusion is not supported by *RSUI v. WorldWide* either.

### 3.  California Courts Consider How Allegations Could Be Amended To Enforce The Broader Duty to Defend

An insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 275 (emphasis in original). A defense is excused only when "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Montrose Chem. Corp. of Calif. v. Sup.Ct. (Canadian Universal Ins. Co., Inc.)* (1993) 6 Cal.4th 287, 295.  "[T]he insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it *cannot*." *Montrose Chem. Corp. of Calif. v. Sup.Ct.*, *supra*, 6 Cal.4th at 300 (emphasis in original).  An insurer must defend a third party complaint unless the complaint "can by *no conceivable theory* raise a single issue which could bring it within the policy coverage." *Gray v. Zurich Ins. Co.*, *supra* at p. 276, fn. 15 (italics added).

Your letter assumes that the Reingolds' allegedly favorable testimony somehow makes the Reingold Lawsuit arise out of or relate to the Chai Lawsuit.  But your letter fails to consider that the Reingold Lawsuit can be amended at any time, either based on discovery or to conform to proof at trial, and that other facts having nothing to do with Mr. Chai or his lawsuit, may turn out to be alleged in support of the Reingolds' breach of fiduciary duties claim against the insureds. There could be any number of reasons – having nothing to do with David Chai – that may have factored into your insureds' decision to stop the Reingold project.

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #:1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 02-08-2022 at 02:55:13 PM

E. Joseph O'Neil
June 27, 2018
Page | 5

An insurer's duty to defend exists where a complaint could be amended to allege covered claims. *Montrose Chem. Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299-300 ("As a distinct, separate, and alternative basis for our decision, we recognized that the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy[,]" citing *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275-276); *Bikram's Yoga College of India, L.P. v. Philadelphia Indemnity Insurance Company* (C.D. Cal., 2015) 2015 WL 11199157("[T]he insured is entitled to a defense [if] ... the complaint might be amended to give rise to a liability that would be covered under the policy.").

Accordingly, even assuming *arguendo* that the Reingolds' favorable testimony in the Chai Lawsuit could ever be enough to invoke Ironshore's related lawsuit exclusion (which it isn't), Ironshore must, at a minimum, defend the lawsuit because the Reingolds could easily amend their lawsuit at any time such that their favorable testimony turns out not to be the basis, or the sole basis, for the insureds' allegedly wrongful acts.

In sum, your supplemental coverage opinion letter merely re-emphasizes its specious "favorable testimony" nexus between the Reingold and Chai Lawsuits, which is unsupported by California law. Your reliance upon non-California cases and non-precedential federal district court opinions evidences your inability to support Ironshore's denial of coverage, particularly its duty to defend, with any relevant California law. No California court, or even any non-California court, has held that a broad and ambiguous related lawsuit exclusion such as Ironshore's Endorsement No. 8, applies based on one litigant's potential testimonial support for another litigant's own distinct lawsuit. California and other courts have clearly held that related lawsuit exclusions must be unambiguous, interpreted narrowly, and based on virtually identical allegations of wrongdoing for the exclusion to apply. Ironshore's factual arguments fail to meet this legal standard, and are therefore in bad faith.

If Ironshore does not rescind its denial of coverage, particularly its denial of its very broad duty to defend, BCA will enforce its rights and claims against Ironshore for bad faith denial of coverage, including the right to recover attorneys' fees under *Brandt v. Superior Court* (1985) 37 Cal.3d 813. We will need Ironshore's prompt response.

Very truly yours,

ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP

DREW E. POMERANCE

DEP/sg
18013.02
cc: Burton E. Falk, Esq.

CASE #:56-2022-00563049-CU-IC-VTA RECEIPT #: 1220304D86368 DATE PAID : 03/4/22 2:16 PM TOTAL : 435.00 TYPE : EFT