UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELL CANYON ASSOCIATION, INC., a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:22-cv-02608-MCS-AFM<br><br>**ORDER GRANTING DEFENDANT IRONSHORE SPECIALTY INSURANCE COMPANY'S MOTION TO DISMISS (ECF NO. 8)** |

Before the Court is Defendant Ironshore Specialty Insurance Company's ("Ironshore") motion to dismiss Plaintiff Bell Canyon Association, Inc.'s ("BCA") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot., ECF No. 8-2. BCA filed an opposition, and Ironshore filed a reply. Opp'n, ECF No. 9; Reply, ECF No. 10. The Court deems the motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. For the following reasons, the Court **GRANTS** Ironshore's motion.

///

1

## I. BACKGROUND

BCA is a common interest development association. Compl. ¶ 1, ECF No. 1-1. Ironshore is an insurance company. *Id.* ¶ 2. On or about February 1, 2018, BCA purchased an insurance policy with a $1,000,000 policy limit from Ironshore. *Id.* ¶ 5, Ex. A ("Ironshore Policy"). BCA also obtained an excess insurance policy ("Greenwich Excess Policy") from nonparty Greenwich Insurance Company ("Greenwich"). *Id.* ¶ 16. The specific coverage terms of these policies are not relevant to the present dispute.

On April 24, 2018, a lawsuit was filed against BCA in Ventura County Superior Court entitled *Leon Reingold and Marina Reingold v. Bell Canyon Association, Inc., et al.*, Civil Action No. 56-2018-00510717 (the "*Reingold* Action"). *Id.* ¶ 10, Ex. D. Soon afterward, BCA submitted the *Reingold* Action to Ironshore for defense and indemnification pursuant to the Ironshore Policy. *Id.* ¶ 12. On May 17, 2018, Ironshore sent a letter to BCA denying any obligation of defense or indemnity related to the *Reingold* Action. *Id.*

In response to Ironshore's denial of coverage, BCA sued Ironshore in state court. *Id.* ¶ 16. The parties eventually settled the lawsuit, and as part of the settlement agreement, Ironshore agreed to pay BCA $700,000 of the $1,000,000 policy limit in exchange for a release of liability with regard to the *Reingold* Action. *Id.* The settlement agreement also contained the following provision:

> The Parties agree that in the event that Greenwich Insurance Company, which issued Commercial Excess/Umbrella Liability Policy No. PPP7441745 to Bell Canyon (the "Excess Policy"), declines coverage for the Lawsuits solely on the basis that the Excess Policy is not triggered because the Policy is not exhausted, Bell Canyon shall retain the right to re-open the coverage question and pursue a contractual claim against Ironshore for up to $300,000.

O'Neil Decl. Ex. 1 ("Settlement Agreement") ¶ 7, ECF No. 8-1.

After the settlement with Ironshore, BCA tendered the *Reingold* Action to Greenwich pursuant to the Greenwich Excess Policy. Compl. ¶ 16. Greenwich refused coverage based on its belief that: (1) the *Reingold* Action was not covered by the terms of the Greenwich Excess Policy; and (2) the underlying Ironshore Policy had not been exhausted. O'Neil Decl. Ex. 2-A ("Greenwich Denial Letter"), at 24–26.[1]

BCA now seeks to reopen its coverage dispute with Ironshore and recover the remaining $300,000 on the policy limit of the Ironshore Policy. Compl. ¶¶ 18–24. Ironshore argues that the terms of the Settlement Agreement bar the present action. *See generally* Mot.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

---

[1] Pinpoint citations in this Order refer to the page numbers assigned by CM/ECF.

### III. DISCUSSION

#### A. Incorporation by Reference

BCA argues that the Court may not consider the Settlement Agreement without converting Ironshore's motion to dismiss to one for summary judgment. Opp'n 11–14. While a district court considering evidence outside the pleadings must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment, it need not do so when it considers documents incorporated by reference into the complaint. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* at 908.

BCA refers extensively to the Settlement Agreement in its Complaint. Compl. ¶¶ 16, 19–21. Moreover, because BCA does not dispute the authenticity of the Settlement Agreement, and because interpretation of the terms of the Settlement Agreement is dispositive as to whether this case can proceed, the Court deems the Settlement Agreement incorporated by reference into BCA's Complaint. The Court similarly deems the Greenwich Denial Letter incorporated into BCA's Complaint. Together with the Settlement Agreement, Greenwich's denial of coverage, to which BCA refers in the Complaint, Compl. ¶ 16, forms the basis of the present dispute.

BCA additionally argues that the Court may not consider other evidence submitted by Ironshore, including a declaration and other pieces of correspondence between the parties. Opp'n 11–12. Because the Court does not consider these other pieces of evidence in deciding the present motion, BCA's arguments with regard to those documents are moot.

#### B. Settlement Agreement

The parties agree that the Settlement Agreement precludes the present litigation unless Greenwich declined coverage for the *Reingold* Action "solely on the basis that the [Greenwich] Excess Policy is not triggered because the [Ironshore] Policy is not exhausted." Mot. 14; Opp'n 15. BCA alleges that Greenwich denied coverage on the

basis that the Ironshore Policy had not been exhausted. Compl. ¶ 16. However, BCA acknowledges, and the Greenwich Denial Letter confirms, that Greenwich also denied coverage for other reasons. Opp'n 16 ("Greenwich denied coverage 'for a variety of reasons' . . . ."); Greenwich Denial Letter 24–26 (describing two reasons for the denial of coverage).

Ironshore argues that because Greenwich denied coverage for other reasons, Greenwich did not deny coverage "solely" because of nonexhaustion of the underlying Ironshore Policy. Mot. 13–15. The Court agrees. The use of the limiting word "solely" in the Settlement Agreement restricts the circumstances in which BCA may reopen the coverage issue to that in which Greenwich denies coverage for a *single* reason. Because Greenwich denied coverage for *multiple* reasons, the conditions of the Settlement Agreement have not been met. *Cf. Moustafa v. Bd. of Registered Nursing*, 29 Cal. App. 5th 1119, 1133–35 (2018) (a statute prohibiting the Board of Registered Nursing from denying a nursing license "solely on the basis" of a conviction that has been dismissed did not prevent the Board from denying a license on the basis of such a conviction in conjunction with other reasons).

BCA nevertheless offers an alternative interpretation of the Settlement Agreement, namely, that "the failure to exhaust the underlying limits of coverage could be the *only* or *sole* basis upon which BCA would be permitted to reopen coverage." Opp'n 14. The Settlement Agreement is not reasonably susceptible to such an interpretation. The word "solely" in the Settlement Agreement modifies the basis for which Greenwich must deny coverage before BCA can relitigate the coverage issue against Ironshore, not the basis for which BCA would be permitted to relitigate the coverage issue.

Put another way, the Settlement Agreement states that BCA may relitigate the coverage issue against Ironshore "in the event that Greenwich Insurance Company . . . declines coverage for the Lawsuits *solely* on the basis of [nonexhaustion]." Settlement Agreement ¶ 7 (emphasis added). BCA would have the

Court interpret the clause as stating that BCA may relitigate the coverage issue against Ironshore *only* "in the event that Greenwich Insurance Company . . . declines coverage for the Lawsuits . . . on the basis of [nonexhaustion]." But because the clause already describes the only condition under which BCA may relitigate the coverage issue against Ironshore, the primary effect of BCA's interpretation is the addition of the word "only" and the deletion of the word "solely." The Court declines to rewrite the Settlement Agreement in this manner. *See Est. of Newmark*, 67 Cal. App. 3d 350, 356 (1977) ("An interpretation of any written instrument requires that every word be examined and given some effect, if possible.").

BCA submits extrinsic evidence that it claims demonstrates its subjective belief that the Settlement Agreement permitted the filing of the present action even if Greenwich denied coverage for reasons other than the lack of exhaustion of the underlying Ironshore Policy. *See* Opp'n 14–16; Pomerance Decl., ECF No. 9-1. Such evidence exceeds the scope of the Complaint and documents incorporated by reference therein. Even if the Court were to consider such evidence,[2] however, the result would not change. "California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Founding Members of Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) (cleaned up). It is irrelevant that BCA believed the Settlement Agreement to say something it did not. *See id.* The words of the Settlement Agreement evidence a clear, objective intent to prohibit the reopening of BCA's coverage dispute with Ironshore unless Greenwich denied coverage *solely* on the basis of nonexhaustion, and it is this objective intent that controls.[3]

---

[2] The Court has considered this evidence for the purpose of evaluating whether to grant leave to amend.

[3] The extrinsic evidence also supports Ironshore's interpretation. If BCA wanted to remove the word "solely" from the Settlement Agreement, it could have negotiated the

1       BCA additionally argues that Ironshore's interpretation of the Settlement Agreement would lead to an absurd result. Opp'n 15–16. BCA contends that because "insurers almost universally cite multiple reasons for denying coverage," the condition in the Settlement Agreement is "virtually impossible to meet." *Id.* at 5. However, because the purpose of a settlement is to provide a final resolution to a dispute, a settlement agreement is not absurd simply because its terms are difficult to meet in order to overturn it. In fact, parties often enter into a settlement agreement expecting that the settlement will be nullified only in exceptional circumstances. Moreover, even if insurers often cite multiple reasons for denying coverage, insurers in California are still subject to a heightened implied duty of good faith enforceable in tort. *See Tilbury Constructors, Inc. v. State Comp. Ins. Fund*, 137 Cal. App. 4th 466, 475 (2006). Insurers therefore have an incentive to deny coverage only for those reasons they believe have merit, and it is conceivable that an insurer may deny coverage solely because it believes that the underlying insurance policy has not yet been exhausted. The fact that the Settlement Agreement anticipated such a circumstance does not render it absurd.

      The Settlement Agreement precludes BCA from pursuing this action. Because the Court's decision is based on a legal determination with respect to the terms of the Settlement Agreement, leave to amend would be futile. The Court therefore dismisses the Complaint without leave to amend. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

///

---

word's exclusion. BCA admits that Ironshore's initial written proposal of settlement terms omitted the word "solely," indicating that the eventual inclusion of the word "solely" in the final Settlement Agreement was deliberate. *See* Opp'n 9; Pomerance Decl. ¶ 5.

7

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Ironshore's motion to dismiss BCA's Complaint. The Court directs the Clerk to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: July 7, 2022

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE